UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GREATER HOUSTON | § | |
| TRANSPORTATION, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:14-cv-00941 |
| | § | |
| UBER TECHNOLOGIES, INC. and | § | |
| LYFT INC., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT LYFT, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

## TABLE OF CONTENTS

Table of Authorities ..................................................................................................... ii

I.      Summary of the Argument ................................................................................. 1

II.     Nature and Stage of the Proceeding ................................................................. 3

III.    Standard of Review ........................................................................................... 4

IV.     Argument and Authorities ................................................................................. 6

        A.      Plaintiffs have failed to demonstrate a likelihood of success on the merits............6

                1.      Plaintiffs fail to state a viable claim for a declaratory judgment. ...............6

                2.      Plaintiffs fail even to plead a viable claim for RICO violations, let alone establish a likelihood of success on the merits of any such claim......................................................................................................7

                3.      Plaintiffs fail to show a likelihood of success on their Lanham Act and unfair competition claims......................................................................8

        B.      Plaintiffs have failed to establish irreparable injury from the denial of a TRO.......................................................................................................11

                1.      Plaintiffs must demonstrate an irreparable injury to get a TRO. ...............11

                2.      Plaintiffs' allegations do not establish irreparable injury. ........................12

        C.      Plaintiffs have not shown that the threatened injury outweighs any damage that the injunction might cause Lyft...............................................................14

        D.      Plaintiffs fail to demonstrate that an injunction will serve the public interest. ....................................................................................................15

        E.      A temporary restraining order will not preserve the status quo. ...........................17

V.      Conclusion ....................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Apple Barrel Prods., Inc. v. Beard*,
   730 F.2d 384 (5th Cir. 1984) ...................................................................................15

*Bd. of Adjustment of City of San Antonio v. Wende*,
   92 S.W.3d 424 (Tex. 2002)........................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955 (2007).....................................................................11

*Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*,
   577 F.3d 250 (5th Cir. 2009) .....................................................................................5

*Bradley v. Phillips Petroleum Co.*,
   527 F. Supp. 2d 625 (S.D. Tex. 2007), *aff'd*, 337 F. App'x 397 (5th Cir. 2009) ......................7

*Brown v. De La Cruz*,
   156 S.W.3d 560 (Tex. 2004).......................................................................................6

*Burford v. Sun Oil Co.*,
   319 U.S. 315 (1943)....................................................................................................7

*C.A.B. v. Modern Air Transport*,
   81 F. Supp. 803 (S.D.N.Y. 1949) ...........................................................................12

*Dennis Melancon, Inc. v. City of New Orleans*,
   703 F.3d 262 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 2396 (2013).................................13, 14

*Dial A Car, Inc. v. Transp., Inc.*,
   82 F.3d 484 (D.C. Cir. 1996) ................................................................................7, 10

*Eisman v. Pan Am. World Airlines*,
   336 F. Supp. 543 (E.D. Pa. 1971) ...........................................................................12

*Esfeller v. O'Keefe*,
   391 F. App'x 337 (5th Cir. 2010) ..............................................................................5

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*,
   415 U.S. 423 (1974)..................................................................................................17

*Heideman v. S. Salt Lake City*,
   348 F.3d 1182 (10th Cir. 2003) ...............................................................................15

*Hinojosa v. City of Kingsville*,
    266 F. Supp. 2d 562 (S.D. Tex. 2003) ................................................................16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014) ................................................................................................9

*Logan v. Burgers Ozark Country Cured Hams Inc.*,
    263 F.3d 447 (5th Cir. 2001) ......................................................................................9

*Miami Beach Fed. Sav. & Loan Ass'n v. Callander*,
    256 F.2d 410 (5th Cir. 1958) ...............................................................................5, 17

*Nichols v. Alcatel USA, Inc.*,
    532 F.3d 364 (5th Cir. 2008) ......................................................................................5

*Paulsson Geophysical Servs., Inc. v. Sigmar*,
    529 F.3d 303 (5th Cir. 2008) ....................................................................................14

*Petri v. Kestrel Oil & Gas Props., L.P.*,
    Civ. A. H-09-3994, 2011 WL 2181316 (S.D. Tex. June 3, 2011) ..............................9

*Porter v. Shearson Lehman Bros, Inc.*,
    802 F. Supp. 41 (S.D. Tex. 1992) ..............................................................................8

*RBIII, L.P. v. City of San Antonio*,
    SA-09-CV-119-XR, 2010 WL 3516180 (W.D. Tex. Sept. 3, 2010) ...........................6

*S. Monorail Co. v. Robbins & Myers, Inc.*,
    666 F.2d 185 (5th Cir. 1982) ....................................................................................11

*SCI Tex. Funeral Servs., Inc. v. Hijar*,
    214 S.W.3d 148 (Tex. App.—El Paso 2007, pet. denied) .........................................9

*Sierra Club v. City of San Antonio*,
    112 F.3d 789 (5th Cir. 1997) ......................................................................................7

*Taylor Publ'g Co. v. Jostens, Inc.*,
    216 F.3d 465 (5th Cir. 2000) ......................................................................................9

*United States v. Caribbean Ventures, Ltd.*,
    387 F. Supp. 1256 (D.N.J. 1974) ..............................................................................12

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) ......................................................................................8

*Winter v. Natural Res. Def. Council, Inc.*,
    555, U.S. 7, 20, 129 S. Ct. 365 (2008) ....................................................................14

*Witkowski v. Brian, Fooshee & Yonge Props.*,
    181 S.W.3d 824 (Tex. App.—Austin 2005, no pet.) ...............................................................6

**STATUTES**

28 U.S.C. § 1404(a) .................................................................................................................5

**OTHER AUTHORITIES**

FED. R. CIV. P. 9 .....................................................................................................................8

## I.   SUMMARY OF THE ARGUMENT

This lawsuit boils down to a complaint about the scope and fairness of municipal ordinances.  Plaintiffs—private parties in the taxicab and limousine business in Houston and San Antonio—are unhappy that a new ridesharing option is not subject to the same regulations as Plaintiffs.  That unhappiness raises political questions concerning the appropriateness of regulating ridesharing platforms, but these questions are being considered by elected officials in the City of Houston and City of San Antonio, and they do not give rise to a cause of action or give Plaintiffs the right to enjoin Lyft's business.

Plaintiffs seek a temporary restraining order to stop Lyft from continuing to operate its mobile-based ridesharing platform in Houston and San Antonio.  Such unprecedented and extraordinary relief not only would fail to preserve the status quo; it would put Lyft out of business in Houston and San Antonio.  No other court has granted such extraordinary relief against a ridesharing platform like Lyft, and for good reason—the standard for preliminary injunctive relief is extremely high, particularly where the requested relief would put the defendant out of business.  Plaintiffs fall woefully short of meeting that standard here.

First, Plaintiffs cannot demonstrate a substantial likelihood of success on the merits against Lyft.  At their core, Plaintiffs' claims all rest on bare allegations that Lyft has violated Houston and San Antonio ordinances.  But Plaintiffs have no standing to sue Lyft for alleged municipal ordinance violations in federal court when the ordinances themselves do not provide a private cause of action.  Whether Lyft is subject to the ordinances and whether Lyft has violated the ordinances are issues properly left to the City of Houston and the City of San Antonio.  Moreover, Plaintiffs' claims against Lyft are based on unproven conjecture, hypothetical consumer harms, and mischaracterizations of Lyft's services.  In short, Plaintiffs

have failed to plead claims against Lyft that will survive even the dismissal stage, let alone on which they are substantially likely to prevail after a trial on the merits.

Second, Plaintiffs are not entitled to a temporary restraining order because they have not alleged and cannot establish an irreparable injury, which Fifth Circuit law requires them to do.  As a matter of law, none of Plaintiffs' alleged losses are irreparable because they are all compensable with money damages, as evidenced by the express request for money damages in Plaintiffs' own Complaint.  As a matter of fact, the potential harms that Plaintiffs invoke are unsubstantiated and illusory, given the utter lack of evidence that Plaintiffs risk losing their businesses or that users of Lyft's ridesharing platform are in physical or financial danger if Lyft continues to operate through trial.  Accordingly, the alleged injuries are not legally appropriate bases for an injunction.

Third, the balance of the hardships weighs heavily against a temporary restraining order.  Unlike Plaintiffs' alleged harms—which are unsubstantiated, illusory, and, in any event, remediable by money damages—the harm to Lyft from an order restraining it from operating would be very real—it would put Lyft out of business in both San Antonio and Houston, with unquantifiable consequences for Lyft and the peer-to-peer ridesharing industry generally.

Fourth, the public interest also weighs heavily against injunctive relief.  Lyft is already working with municipal authorities in both Houston and San Antonio to determine whether their respective ordinances should be amended to address ridesharing platforms like Lyft.  In fact, revisions to the City of Houston's transportation ordinances have already been proposed and are scheduled to be considered next Tuesday, April 22.  Against this backdrop, Plaintiffs' request for a temporary restraining order against Lyft can only be viewed as an effort to hijack the ongoing political process and prevent the citizens of Houston and San Antonio from

choosing transportation network companies like Lyft.  In short, the public would be disserved if Plaintiffs were successful in interrupting Lyft's business in Houston and San Antonio.

## II.    NATURE AND STAGE OF THE PROCEEDING

Lyft is a mobile-based ridesharing platform.  Ex. A, Aff. of Jim Black, ¶ 2.  It is designed to provide customers with a friendly, safe, and affordable transportation option that matches people who need rides with people who have cars.  *Id.*  Lyft launched its real-time ridesharing platform in 2012.  *Id.*  It is now utilized in over 30 cities, including Houston, San Antonio, Pittsburgh, San Francisco, Los Angeles, Chicago, Boston, and Washington DC.  *Id.*

Lyft itself does not provide transportation services.  *Id.* ¶ 4.  Through Lyft's ridesharing platform, passengers can connect with fellow community members, providing passengers with a transportation alternative that is safe and sustainable.  *Id.* ¶ 4.  In Houston and San Antonio, the rider, in his or her sole discretion, may voluntarily elect to make a suggested donation to the driver or to reduce or increase the suggested amount to as low as zero.  *Id.* ¶ 5.  It is the rider's sole responsibility to decide whether and how much to donate to the driver.  *Id.*  In cities where the Lyft platform provides a suggested donation amount, neither Lyft nor the driver has the right to demand that a rider donate any money to the driver.  *Id.* ¶ 6.  Lyft receives an administrative fee of up to 20% of any donation received from a rider.  *Id.* ¶ 7.

Plaintiffs have alleged that Lyft's operations are not safe, but as described more fully in the attached affidavit of Jim Black, Lyft has implemented numerous safety policies.  *See id.* ¶¶ 8–12.  Plaintiffs also incorrectly speculate that Lyft and the drivers who use the Lyft platform are uninsured, when Lyft holds insurance providing up to $1 million in liability coverage on top of the personal insurance that is required of any driver who uses Lyft.  *Id.* ¶¶ 13– 17.

As detailed in paragraphs 18–22 of Mr. Black's affidavit, Lyft is committed to the community, and its objective is to make available to those individuals who use its platform a viable and convenient alternative in transportation.  *See id.* ¶¶ 18–22.  Achieving this objective will contribute to a reduction in individual car ownership and use of single-occupancy vehicles. *Id.* ¶ 18.   Taken to its logical progression, Lyft can contribute to the reduction of urban congestion, drunk driving, greenhouse gas emissions, and other problems associated with single-occupant driving.   *Id.*   Moreover, it is ironic that Plaintiffs accuse Lyft of fostering discrimination.   While denial of service on the basis of discriminatory practices "is not uncommon in taxi and limo systems," *see* Dkt. No. 1–8 at 149 (Ex. J to Aff. of Michael Spears at 2), such practices are completely unacceptable to Lyft.  Ex. A, Black Aff. ¶ 20.  Each ride is tracked, which allows for accountability in the event of an inappropriate denial of service.   *Id.*

There has been no adjudicated finding by the City of Houston or the City of San Antonio that Lyft or the activities of drivers using the Lyft platform contravene city ordinances. *Id.* ¶ 23.  While some transportation companies like Plaintiffs have complained about Lyft and have lobbied the mayors, city councils and law enforcement authorities in Houston and San Antonio, Lyft is working closely with city officials—including the Office of the Mayor, City Council, and the ARA—to address any concerns about Lyft's services or drivers who use Lyft. *Id.* ¶ 24.  Changes to municipal ordinances are already being proposed for consideration by Houston's Mayor and City Council.  *Id.* ¶ 25.  Lyft is also meeting with city officials is San Antonio the week of April 21, 2014 to address any concerns and discuss potential changes to municipal ordinances.  *Id.*

## III.   STANDARD OF REVIEW

A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries a burden of persuasion"

on four elements. *Esfeller v. O'Keefe*, 391 F. App'x 337, 340 (5th Cir. 2010) (quoting *Black Fire Fighters Ass'n v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990) (per curiam)); *see Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009) ("We have cautioned repeatedly that a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195–96 (5th Cir. 2003))).   Moreover, the purpose of injunctive relief is to maintain the status quo pending trial on the merits. *See Miami Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958) (noting that a preliminary injunction "by its nature has the purpose of preserving the status quo to prevent irreparable injuries until the merits of the issues can be decided").

To obtain injunctive relief, the movant must demonstrate "(1) a substantial likelihood of success on the merits, (2) a substantial threat that plaintiffs will suffer irreparable harm if the injunction is not granted, (3) that the threatened injury outweighs any damage that the injunction might cause the defendant, and (4) that the injunction will not disserve the public interest." *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).   As shown below, Plaintiffs have failed to carry their burden for obtaining injunctive relief.[1]

---

[1]     Lyft asserts, and reserves the right to brief and argue, that the San Antonio Plaintiffs and their claims against Lyft should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) because the Southern District of Texas is not the proper venue for complaints about San Antonio ordinances, Lyft's San Antonio operations, and the interests of San Antonio citizens.   Alternatively, Lyft asserts, and reserves the right to brief and argue, that the San Antonio Plaintiffs' claims should be transferred to the United States District Court for the Western District of Texas, which embraces San Antonio, "[f]or the convenience of parties and witnesses, [and] in the interest of justice."  *See* 28 U.S.C. § 1404(a).

**IV.   ARGUMENT AND AUTHORITIES**

**A.   Plaintiffs have failed to demonstrate a likelihood of success on the merits.**

Plaintiffs' motion suffers from a fatal flaw:  Plaintiffs cannot demonstrate any probability—much less a substantial likelihood—that they will succeed on any of their claims.  Thus, they cannot obtain injunctive relief of any kind.

**1.   Plaintiffs fail to state a viable claim for a declaratory judgment.**

Plaintiffs ask the Court to declare that Lyft is operating in violation of Houston and San Antonio ordinances.  Critically, however, Plaintiffs have no standing to enforce these ordinances because neither ordinance grants a private cause of action.

Under Texas law, ordinances are construed in the same way as statutes.  *Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002).  Texas courts "apply a 'strict rule of construction' to statutory enforcement schemes and imply causes of action only when the drafters' intent is clearly expressed from the language as written.'"  *Witkowski v. Brian, Fooshee & Yonge Props.*, 181 S.W.3d 824, 831 (Tex. App.—Austin 2005, no pet.).  "[T]he Legislature may grant private standing to bring such actions [under a penal statute], but it must do so clearly."  *Brown v. De La Cruz*, 156 S.W.3d 560, 566 (Tex. 2004).

Neither the Houston ordinances nor the San Antonio ordinances create a private cause of action.  *See RBIII, L.P. v. City of San Antonio*, SA-09-CV-119-XR, 2010 WL 3516180, at *4-5 (W.D. Tex. Sept. 3, 2010) (holding that a private cause of action could not be inferred from a local ordinance that did not expressly provide one).  Recognizing as much, Plaintiffs attempt to disguise their impermissible enforcement action as a declaratory judgment action.  But they are not seeking a declaration with respect to their own legal rights or obligations; they are seeking a declaration of Lyft's and Uber's legal rights and obligations under municipal ordinances that Plaintiffs have no right to enforce.  Use of a declaratory judgment in this manner

would be unprecedented.  The determination of whether Lyft's service platform is subject to or violative of city ordinances is an issue to be prosecuted by the City of Houston or the City of San Antonio and adjudicated by the appropriate municipal or state court.  Because Plaintiffs are not the proper parties to bring such claims, this Court is not the proper forum for resolving the question of whether Lyft's transportation network platform is subject to or violative of existing city ordinances.[2]

### 2. Plaintiffs fail even to plead a viable claim for RICO violations, let alone establish a likelihood of success on the merits of any such claim.

Plaintiffs vaguely allege that Lyft has violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, but they plead no facts in support of that claim.  For example, Plaintiffs assert that Lyft has committed wire fraud, but they fail to specify what conduct constituted the wire fraud.  Instead, they merely recite the language of the statute.  *See* Compl. ¶¶ 102-105.

As a result, Plaintiffs' claim does not come close to satisfying federal pleading requirements.  *See Bradley v. Phillips Petroleum Co.*, 527 F. Supp. 2d 625, 636 (S.D. Tex. 2007) ("[A] plaintiff is obligated to provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007))), *aff'd*, 337 F. App'x 397 (5th Cir. 2009).

---

[2]     "[A]bstention is appropriate whether jurisdiction is premised on diversity jurisdiction or otherwise, if the federal courts should, consistent with our federal system, afford comity to state governments in carrying out their domestic policy."  *Sierra Club v. City of San Antonio*, 112 F.3d 789, 795 (5th Cir. 1997); *see also Burford v. Sun Oil Co.*, 319 U.S. 315, 332 (1943) (exercising discretion to abstain from deciding "basic problems of Texas policy" where question presented was state agency's application of complex state regulatory scheme subject to state judicial review).  The regulation of local taxicabs and limousines, and the applicability of such regulations to ridesharing platforms, are questions of local law that local authorities are already actively analyzing and addressing.  *Cf. Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484, 488–89 (D.C. Cir. 1996) ("[W]e see no reason to reach out and apply federal law to this quintessentially local dispute, and neither appellant nor our dissenting colleague cites to any Supreme Court or federal appellate decision that authorizes us to do so.").  As such, this case presents the classic case for abstention.

Plaintiffs have also failed to meet the heightened pleading standards of Rule 9(b), which is required for a RICO claim premised on fraud.  *See* FED. R. CIV. P. 9 ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) ("[Rule] 9(b) applies to . . . RICO claims resting on allegations of fraud.").

Indeed, because of the complexity and high legal costs of litigating civil RICO claims, courts around the country, including this one, have required parties asserting RICO claims to provide RICO case statements as a way of clarifying and providing greater detail on the nature of the claim.  *See, e.g.*, *Porter v. Shearson Lehman Bros, Inc.*, 802 F. Supp. 41, 64–66 (S.D. Tex. 1992) (noting that the court had ordered plaintiff to file a RICO case statement and dismissing the RICO claim after the statement failed to provide substantive details for the fraud based claims).  Plaintiffs have made no such filing to substantiate their already inadequate pleadings.

Because Plaintiffs have not pleaded a RICO claim that will survive dismissal under Rule 12(b)(6), they have come nowhere close to establishing a likelihood of success on the merits of their RICO claim.

**3.      Plaintiffs fail to show a likelihood of success on their Lanham Act and unfair competition claims.**

As with their RICO claim, Plaintiffs fail to allege facts sufficient to state a claim based on the Lanham Act or state unfair competition law.  In order to establish a claim of false advertising under the Lanham Act, a plaintiff must show:  "(1) that the defendant made a false statement of fact about its product in a commercial advertisement; (2) that the statement actually deceived or has a tendency to deceive a substantial segment of its audience; (3) the deception is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter

interstate commerce; and (5) the plaintiff[] ha[s] been or [is] likely to be injured as a result." *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001) (internal quotation marks omitted and alterations in original). With respect to the injury element, Plaintiffs must "show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1391 (2014) (explaining that proximate cause between the injury and the deception must exist). Plaintiffs fail to adequately plead—let alone show a likelihood of proving—any of these elements.[3]

For example, although Plaintiffs baldly assert that "Defendants have made false and misleading statements of fact about their products/services," Compl. ¶ 107, Plaintiffs do not identify what statements purportedly were made or how those statements were false and misleading. Moreover, Plaintiffs improperly lump together both Defendants, *see, e.g.*, *id.*, which are two different companies operating different businesses. As a result, the factual basis for Plaintiffs' Lanham Act and unfair competition claims *against Lyft* is far from clear. *Cf. Petri v. Kestrel Oil & Gas Props., L.P.*, Civ. A. H-09-3994, 2011 WL 2181316, at *7 (S.D. Tex. June 3, 2011) (stating that defendants are "entitled to a more definite statement to provide them with

---

[3]     The same facts that doom Plaintiffs' Lanham Act claims will doom Plaintiffs' unfair competition claims. "The tort [of unfair competition] requires that the plaintiff show an illegal act by the defendant which interfered with the plaintiff's ability to conduct its business." *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000). Plaintiffs cannot create a private cause of action under the City of Houston and San Antonio ordinances by alleging their violation as the predicates for an unfair competition claim. *Cf. SCI Tex. Funeral Servs., Inc. v. Hijar*, 214 S.W.3d 148, 154–55 (Tex. App.—El Paso 2007, pet. denied) ("Nor may a plaintiff create a private cause of action by alleging a violation of an FTC regulation to satisfy an element of a state common law claim."). But even if the alleged municipal ordinance violations could somehow give rise to an unfair competition claim, Plaintiffs have offered no evidence that the alleged violations actually interfered with Plaintiffs' businesses. Accordingly, Plaintiffs have not showed a substantial likelihood of success on their unfair competition claims.

adequate notice of the claims against them, as well as factual pleading distinguishing plausible claims against each Defendant individually").

    To the extent that Plaintiffs are basing their Lanham Act and unfair competition claims on purported misrepresentations by Lyft about its insurance, its ability to operate legally in Houston and San Antonio, the safety of users of Lyft's ridesharing platform, or that Lyft offers a ridesharing platform, Plaintiffs have provided this Court with nothing more than unsupported, speculative allegations.  In fact, Lyft has made no false representations.  First, Lyft has the insurance that it claims to have in its policies, and that insurance is bona fide.  *See* Ex. A, Black Aff., ¶¶ 13–17.  Second, there has been no adjudicated finding by the City of Houston or the City of San Antonio that Lyft's activities in fact contravene city ordinances.  *Id.* ¶ 23.  Regardless, any representations about Lyft's ability to operate legally in those markets are, at most, legal opinions, not actionable representations of fact.  *See Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484, 485 (D.C. Cir. 1996) ("[T]he alleged misrepresentation of fact upon which Dial A Car has premised its Lanham Act claim is more appropriately viewed as a disagreement about the proper interpretation of local taxicab regulations promulgated by the D.C. Taxicab Commission. Because the Commission itself has not resolved this disagreement, we find that appellees' legal status as on-call providers of corporate account services within the District is a contested question of statutory interpretation rather than a clearly established fact.  Therefore, the statements at issue cannot form the basis of a Lanham Act claim.").  Third, Lyft's commitment to safety is real.  Ex. A, Black Aff., ¶¶ 8–12.  Fourth, Lyft does, in fact, provide a ridesharing platform.  *Id.* ¶ 2.  In light of this evidence, Plaintiffs simply have not met their burden of establishing a likelihood of proving that Lyft made representations that are false.

Plaintiffs also have not met their burden of establishing a likelihood of proving that anyone was deceived by any purported misrepresentations by Lyft, let alone that Plaintiffs suffered economic or reputational injury flowing directly from Lyft's purported misrepresentations. For example, Plaintiffs have come forward with no evidence that Lyft's advertising of its $1,000,000 in insurance coverage caused a customer to choose Lyft, let alone caused a customer to withhold trade from any Plaintiff.

In sum, Plaintiffs have not stated facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955, 1974 (2007). As a result, Plaintiffs have not pleaded Lanham Act and unfair competition claims that will survive dismissal at the pleading stage, and they have not established a likelihood of success on those claims. As such, those claims provide no basis for a temporary restraining order.

**B.      Plaintiffs have failed to establish irreparable injury from the denial of a TRO.**

In addition to failing to establish a likelihood of success on the merits, Plaintiffs fail to demonstrate the irreparable injury necessary for a temporary restraining order.

**1.      Plaintiffs must demonstrate an irreparable injury to get a TRO.**

As a threshold matter, Plaintiffs incorrectly assert that a showing of irreparable injury is unnecessary in light of their allegations that Lyft's conduct violates city ordinances. *See* Compl. ¶ 116 ("[I]n cases where a violation of a statute is alleged, as in this case, a showing of irreparable injury is not required."). Allowing a plaintiff to circumvent the irreparable injury requirement by merely *alleging* the violation of a statute or ordinance would create an expansive exception to longstanding Fifth Circuit precedent requiring that all four factors for injunctive relief be met. *See, e.g.*, *S. Monorail Co. v. Robbins & Myers, Inc.*, 666 F.2d 185, 186 (5th Cir. 1982) ("A preliminary injunction may not issue unless the movant carries the burden of persuasion as to *all four prerequisites*.") (emphasis added). Such an exception would be

particularly unwarranted where, as here, the statute or ordinance does not create a private cause of action and, thus, could never be enforced by the Plaintiffs.  *See supra* Part IV.A.1.

Indeed, it is precisely for this reason that the only cases cited by Plaintiffs—*United States v. Caribbean Ventures, Ltd.*, 387 F. Supp. 1256, 1257 (D.N.J. 1974), and *C.A.B. v. Modern Air Transport*, 81 F. Supp. 803, 806 (S.D.N.Y. 1949)—do not excuse them from showing irreparable injury.  In both cases, *government agencies* sought injunctions to enforce aviation regulations that specifically empowered those agencies to seek injunctive relief as part of their administrative authority.  *See Caribbean Ventures*, 387 F. Supp. at 1261–62 (denying in part the federal government's application to enjoin noncompliance with the Federal Aviation Act because it could not demonstrate a likelihood of success on the merits); *C.A.B.*, 81 F. Supp. at 806 ("It is not necessary for the plaintiffs to show irreparable injury to entitle them to an injunction, for *the right to an injunction is specifically conferred by the statute*.") (emphasis added).  Private litigants had no authority to enforce the statutes other than through the administrative complaint process set forth in the statutes.  *Eisman v. Pan Am. World Airlines*, 336 F. Supp. 543, 554 (E.D. Pa. 1971) ("[T]he Federal Aviation Act provides that only the C.A.B. can seek an injunction against unduly preferential, discriminatory, or prejudicial tariffs, and it does not contemplate a private cause of action demanding injunctive relief.").  Nothing in those case even suggests, let alone holds, that a private litigant can escape the irreparable injury requirement simply by alleging that the defendant has violated a statute or ordinance that does not give private litigants an express or implied cause of action.

## 2.      Plaintiffs' allegations do not establish irreparable injury.

Plaintiffs attempt to circumvent the irreparable injury requirement for a reason— because they cannot establish irreparable injury as a matter of law or fact.  To begin with, Plaintiffs' own Complaint—in which Plaintiffs expressly seek money damages, Compl. ¶ 114—

confirms that their alleged injuries can be remedied through monetary damages.  Accordingly, no grounds for injunctive relief exist as a matter of law.  *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) ("It is thus well-established that an injury is irreparable only if it cannot be undone through monetary remedies.") (internal quotation marks omitted), *cert. denied*, 133 S. Ct. 2396 (2013).

Moreover, Plaintiffs' factual allegations and supporting evidence do not establish irreparable injury.  First, Plaintiffs have provided no evidence that they have lost business or suffered damages as a result of Lyft's services, but even if there were such evidence, any such injury would be compensable with monetary damages.  Likewise, no taxicab company or limousine service has gone "extinct" as a result of Lyft's services, nor is it likely that any extinction would occur before a trial on the merits can be held, so injunctive relief is clearly unwarranted.

Second, Plaintiffs provide no support for their assertions that the physical safety of Lyft users will be jeopardized if Lyft continues to operate through trial.  There is no evidence that any Lyft rider has suffered personal injuries in Houston or San Antonio as a result of any alleged safety issue.  Moreover, the alleged risk of injury to Lyft riders from automobile accidents is the same risk faced by any passenger riding in any motor vehicle, including taxis and limousines.

Third, Plaintiffs provide no evidence that any consumer has been harmed financially by using Lyft's services.  Plaintiffs' allegations about the inadequacy of Lyft's insurance are nothing more than rank speculation, which is completely rebutted by Lyft's evidence about its insurance.  *See* Ex. A, Black Aff., ¶¶ 13–17.

In short, Plaintiffs' alleged injuries are illusory and unsubstantiated.  They are also, at their core, financial or economic injuries that can be remedied through monetary damages.  As a result, Plaintiffs have not shown that if Lyft continues to operate during the pendency of this lawsuit, Plaintiffs will suffer the kind of irreparable injury that warrants a temporary restraining order.  *Cf. Dennis Melancon*, 703 F.3d at 279 ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction], are not enough." (quoting *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975))).  A temporary restraining order would, therefore, be inappropriate.

**C.**     **Plaintiffs have not shown that the threatened injury outweighs any damage that the injunction might cause Lyft.**

Plaintiffs must also show that the balance of equities tilts in their favor.  *Winter v. Natural Res. Def. Council, Inc.*, 555, U.S. 7, 20, 129 S. Ct. 365, 374 (2008).  "The irreparable injury element is inherently related to the balance-of-harms analysis."  *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 313 (5th Cir. 2008).  As shown above, Plaintiffs' alleged harms are speculative and illusory.  The effect of an order restraining Lyft from operating, on the other hand, would be very real—it would put Lyft out of business in both San Antonio and Houston.

Plaintiffs cannot establish that they will suffer irreparable harm over the next two weeks if the restraining order is not granted; their claims of harm are conjectural and speculative.  For example, Plaintiffs allege that drivers utilizing the Lyft platform are unsafe and place customers at risk, but there is no evidence that any customer of Lyft has been harmed either financially or physically.  Compl. ¶ 94.  Plaintiffs further argue that Lyft's business model "render[s] valueless the licenses/permits owned by the Plaintiffs" and that, in essence, the Court should prefer the Plaintiffs' model and exclude Lyft.  Compl. ¶ 99.  Once again, however, there

is no evidence that Plaintiffs' licenses and permits no longer have value or that any Plaintiff has gone out of business.  No Plaintiff has provided the Court with any reliable evidence of actual financial harm.

Thus, Plaintiffs fail to demonstrate that the harm they would suffer is greater than the impact on Lyft, whom they seek to completely exclude from the market.  In an analogous case, the Fifth Circuit noted that where plaintiffs are attempting to restrain defendants from marketing a competing product, "the harm to defendants is at least as great as the harm to plaintiffs" because defendants would lose the opportunity to market themselves and compete with plaintiffs.  *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 390 (5th Cir. 1984).

Given the speculative nature of the injuries alleged by Plaintiffs and the improbability that they will prevail on the merits, the hardships that Lyft would suffer as a result of the injunction are all the more significant.  Plaintiffs would suffer at most monetary losses from alleged lost business if Lyft is allowed to continue competing—a fact that Plaintiffs' claim for monetary damages claim makes clear.  Compl. ¶ 114.  Plaintiffs thus have an adequate remedy at law, barring any injunctive relief.  In contrast, Lyft would lose the ability to do business in Houston at all pending a trial on the merits—a harsh and unprecedented penalty with unquantifiable consequences for Lyft and for the peer-to-peer ridesharing industry.

**D.      Plaintiffs fail to demonstrate that an injunction will serve the public interest.**

Finally, Plaintiffs also cannot show that enjoining Lyft's operations would serve the public interest.  On the contrary, issuing a temporary restraining order in this context would significantly *disserve* the public interest.  As one federal court has noted, "[t]he courts' peculiar function is to say what the law is, not to second-guess democratic determinations of the public interest."  *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1191 (10th Cir. 2003).  The vast majority of Plaintiffs' complaints concern the alleged unfairness of being forced to compete with

new transportation options like Lyft, which Plaintiffs claim are inadequately regulated.  As one of Plaintiffs' own experts acknowledges, because a company like Lyft "does not provide actual transportation services, [it] is not licensed as a transportation service provider, and, thus, is not regulated by State or local authorities as traditional customer transportation companies, such as taxi or 'black car' businesses."  Dkt. No. 1–7 at 6, Aff. of Gregory Serio, ¶ 2.  "As an 'unlicensed transportation company UBER does not have to follow the rules of State or Local authorities for licensed transportation companies . . . ."  *Id.* ¶ 3.

Lyft agrees that it is not governed or regulated by the same ordinances that cover traditional transportation companies, and it denies that its operations violate any city ordinances. Nevertheless, Lyft has been working closely with city officials to address any concerns about Lyft's services, and if necessary to develop new ordinances covering new transportation options like ridesharing.  Ex. A, Black Aff., ¶ 24.  A special joint meeting and hearing on the proposed revisions to Chapter 46 of the Code of Ordinances Related to Vehicles for Hire is scheduled for Tuesday, April 22, 2014 before the City of Houston's Public Safety & Homeland Security and the Transportation Committee Technology & Infrastructure Committees  *See* Ex. A, Black Aff., at Ex. 2.  Lyft is also meeting with city officials in San Antonio the week of April 21, 2014 to address any concerns and discuss potential changes to its municipal ordinances.  Ex. A, Black Aff., ¶ 24.

The remedy of injunction is "of the least merit" compared to the ongoing political process; elected bodies "should be given the opportunity to operate without judicial intrusion." *Hinojosa v. City of Kingsville*, 266 F. Supp. 2d 562, 565, 566 (S.D. Tex. 2003).[4]  Plaintiffs have

---

[4]      As Plaintiffs' own expert opines, "[t]here may well be a place for UBER-type services in the digital age, and traditional transportation service providers may well have to revisit their business plans to compete in the 21st-century taxi/livery marketplace."  Dkt. No. 1–7 at 13, Serio Aff., ¶ 19.  Despite recognizing the need to accommodate new transportation options in the digital age, Plaintiffs would have

an opportunity to provide input into the proposed new regulations and, indeed, are doing so. Plaintiffs may be frustrated with democratic process or the manner in which the City of Houston and the City of San Antonio are addressing these issues, but that is an insufficient basis on which to issue a temporary restraining order.

In sum, while Plaintiffs accuse Lyft of operating anti-competitively, Plaintiffs are the true opponents of competition, seeking to maintain their domination of the market and curtail consumer choice.  Plaintiffs make unfounded accusations that Lyft will operate to discriminate against passengers and fail to serve the City's population.  Compl. ¶ 77.  But Plaintiffs fail to present any evidence that Lyft's platform is discriminatory or anything other than equitable in providing services.  Indeed, Lyft has a competitive advantage over Houston's existing taxicab services because Lyft provides a safe ride environment, serves underserved areas, and does so quickly—all without charging a fee.  As a result, issuing a temporary restraining order would entail an irreparable loss of competition and harm the public interest by depriving the public of new 21st-century transportation alternatives for our digital age.

**E.**      **A temporary restraining order will not preserve the status quo.**

Finally, the Court should deny Plaintiffs' request for a temporary restraining order because it fails to preserve the status quo pending trial on the merits.  *Cf. Miami Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958) (noting that a preliminary injunction "by its nature has the purpose of preserving the status quo to prevent irreparable injuries until the merits of the issues can be decided").  A temporary restraining order "should be restricted to serving [the] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose*

---

this Court deprive consumers in Houston and San Antonio of the ridesharing platforms offered in over two dozen other U.S. cities before there is even a trial on the merits.

*Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974). Here, Plaintiffs are not seeking a temporary restraining order to preserve the status quo, but rather to end Lyft's business in Houston and San Antonio before a trial on the merits.

## V.  CONCLUSION

For each of the foregoing reasons, Lyft respectfully requests that the Court deny Plaintiffs' request for a temporary restraining order and afford Lyft such other and further relief to which it may be entitled.

Dated:  April 21, 2014                                  Respectfully submitted,

                                                       BAKER BOTTS L.L.P.


                                                       By :*/s/ Danny David*_____
                                                           Danny David
                                                           State Bar No. 24028267
                                                           danny.david@bakerbotts.com
                                                           One Shell Plaza
                                                           910 Louisiana Street
                                                           Houston, Texas  77002
                                                           Telephone:  713.229.4055
                                                           Facsimile:  713.229.2855

                                                       ATTORNEY-IN-CHARGE FOR LYFT INC.

OF COUNSEL

Paul R. Elliott
State Bar No. 06547500
paul.elliott@bakerbotts.com
Amy Pharr Hefley
State Bar No. 24046046
amy.hefley@bakerbotts.com
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas  77002
Telephone:  713.229.1234
Facsimile:  713.229.1522

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of April, 2014, a true and correct copy of the foregoing was served by the Court's Electronic Case Filing System on all counsel of record.


*/s/ Danny David*_____
Danny David