**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| Greater Houston Transportation Company; Fiesta Cab Company; Houston Transportation Services, LLC; National Cab Co., Inc.; Pasadena Taxi Co., Inc.; American Mementum Group LLC; Atlas Limousine LLC; CTI Transportation, LLC; Liban Incorporated; Avanti Int'l Transportation, Ltd.; First Priority Transportation, LLC; Lone Star Executive Limousine, LLC; Dawit Sahle; Mohamed Samater; Mersha Ayele; Moses A. Tesfay; Melaku Shumie; Abraham Tarkegne; Kidane Ghebreslassie; Mohamed Didi; Champion Cab Co.; Greater San Antonio Transportation Company; Enterprise Transportation Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Uber Technologies, Inc.; and Lyft, Inc., <br><br> Defendants. | CIVIL ACTION NO. 14-941 |

**DEFENDANT UBER TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFFS'
REQUEST FOR TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

**Page**

I. Plaintiffs Fail To Show A Substantial Threat Of Irreparable Harm And Have An Adequate Remedy At Law ................................................................................................. 5

II. Plaintiffs Have Not Established A Substantial Likelihood Of Success On The Merits Of Their Claims ..................................................................................................... 8

    A. Plaintiffs Fail To Establish Any Likelihood Of Success On The Merits For Their RICO Claim ............................................................................................... 8

    B. Plaintiffs Fail To Establish Any Likelihood Of Success On The Merits Of Their Lanham Act False-Advertising Claim .......................................................... 10

    C. Plaintiffs Fail To Establish Any Likelihood Of Success On The Merits For Their Common-Law Unfair-Competition Claim ..................................................... 12

III. The Balance Of Hardships Weighs Against Injunctive Relief ......................................... 13

IV. The Public Interest Weighs Against Injunctive Relief .................................................... 14

## INTRODUCTION

Plaintiffs seek the extraordinary remedy of a temporary restraining order that would: (1) shut down Uber completely in Houston and San Antonio, (2) eliminate for over 500 drivers their means of making a living, and (3) take away from the public a convenient, affordable, reliable, and easy-to-use means of obtaining transportation.  Plaintiffs have failed to meet the significant burden to establish the elements required for a temporary restraining order, and their request should be denied.

Uber is a technology company that provides a smartphone application that people can use to easily request and pay for transportation from several types of third-party transportation providers.  It has been recognized by the Mayor of Houston, by the Houston Chronicle and in cities across the country as beneficial for consumers and good for cities.  Uber's smartphone app service is now available in 92 cities worldwide.

Plaintiffs are taxicab and limousine companies in Houston and San Antonio.  Rather than competing in the marketplace and adapting to meet consumer needs, they have filed this lawsuit seeking to create private causes of action where they do not exist for tickets that drivers using Uber's software have received for alleged violations of Houston and San Antonio taxi and limousine regulations administered and enforced by city agencies.  Plaintiffs' claims are meritless and, as explained below, Plaintiffs cannot establish the elements required for obtaining a temporary restraining order (TRO).

Plaintiffs have offered this Court no evidence, or even theoretical argument, to meet its burden of establishing that there is a substantial likelihood that they will suffer irreparable harm absent a TRO, much less the *immediate* irreparable harm that is required at this stage.  Plaintiffs fail to establish, or even concretely identify, any imminent, irreparable harm that they will suffer within the next days, weeks, or months if Uber is not restrained.  Without such proof of immediate irreparable harm, Plaintiffs cannot obtain the extraordinary injunctive relief of a TRO.

The only form of harm alleged by Plaintiffs to this point—reduced revenue—is precisely the type of harm that cannot be the basis for either a TRO or preliminary injunction, but must

instead be pursued through a trial on the merits. Unsupported assertions of vague "imminent and irreparable injury" are insufficient. In fact, another federal court has already considered and rejected these same arguments after conducting a two-day trial in Chicago where Yellow Cab and other taxi/limousine plaintiffs sought the same relief under the same theories. Not only did the federal court deny the preliminary injunction, but she also dismissed much of the Plaintiffs' case by granting Uber's motion to dismiss.

Plaintiffs also cannot establish a substantial likelihood of success on the merits of their claims. They lack standing even to bring these causes of action because it is for the cities of Houston and San Antonio (not for private taxi companies and taxi drivers) to enforce city regulations. Moreover, the "tickets" Plaintiffs allege drivers using Uber's app have received do not provide for any injunctive relief—just fines paid to the city (not to other drivers and taxi companies). Plaintiffs should not attempt to use the Court to enforce their subjective interpretation of municipal ordinances, which do not provide for private enforcement. The regulation of software applications like Uber, if any, will come not from private party litigation, but instead from the political process and determinations by elected officials. To that end, on April 18, the City of Houston published proposed regulations with new regulatory provisions that specifically authorize Uber's operations. These proposed regulations and the political process at the municipal level is the proper mechanism to determine whether and to what extent the taxi and limousine regulations are applicable to Uber's software service. Plaintiffs are asking the Court to restrain and enjoin a business that will soon have regulations specifically designed for its software service and will be regulated as such by the City of Houston. The sole basis for the requested TRO is that several drivers utilizing the Uber software have gotten tickets that provide for a fine to be paid and have no provision for injunctive relief.

Regarding Plaintiffs' substantive causes of action, Plaintiffs have failed to plead facts supporting their RICO, Lanham Act, and unfair competition claims. Uber looks forward to demonstrating, on a fully briefed motion to dismiss, why Plaintiffs' claims should be dismissed here, as several other courts addressing similar claims against Uber have done.

Finally, the balance of hardships and the public interest both weigh against granting Plaintiffs' request.  A temporary restraining order would put Uber out of business in Houston and San Antonio and deny drivers who use Uber's software the opportunity to make a living.  On the other hand, denying the TRO would simply maintain the status quo, with any alleged injuries to Plaintiffs adequately redressed by money damages.  Plaintiffs' inflammatory allegations of Uber's "unsafe" and "discriminatory" conduct lack any factual support, and the public would be disserved if Plaintiffs were successful in taking away Uber's request service.  The reality, in fact, is that drivers using the uberX platform[1] in Houston and San Antonio are covered by *more* insurance than drivers associated with Plaintiffs and undergo extensive background checks.  In the short time Uber has operated in Houston and San Antonio, Uber has made transportation more convenient and efficient by increasing the transportation request options available for these cities' residents of and has provided over 500 citizens of Houston and San Antonio with a means to earn a living.  Plaintiffs' request for a TRO should be denied.

## FACTUAL BACKGROUND

Uber is a software company based in San Francisco, California.  Macdonald Decl. ¶ 1.  Uber does not own vehicles or employ drivers.  *Id.*  Rather, Uber has developed and offers to the public an easy-to-use smartphone application ("App") that allows a person to request transportation from several types of third-party transportation providers, such as a licensed driver of a taxicab or limousine, among other options.  *Id.*  Uber's innovative App provides a convenient alternative to the telephone call or in-person pre-arrangement for people seeking transportation.[2]  *Id.*  Uber currently provides its service in 92 cities worldwide.  *Id.* ¶ 8.

---

[1] The uberX platform is explained in the Macdonald Declaration at ¶ 13.

[2] The Declaration of Andrew Macdonald further explains how Uber's App works. Macdonald Decl. ¶¶ 1–7.  The Declaration also discussed Uber's insurance (¶¶ 13–17), the users of Uber's App (¶¶ 18–19), the third-party drivers who use Uber's App (¶¶ 20–22), background checks for drivers using the uberX platform (¶ 23), and Uber's surge feature (¶¶ 24–26).

Uber has been operating in Houston since February 20, 2014 and in San Antonio since March 28, 2014. *Id.* ¶ 9. Currently, there are 350 drivers in Houston and 154 drivers in San Antonio who are eligible to use Uber's App. *Id.* ¶ 10. Uber is aware of seven citations issued to drivers using Uber by the City of Houston, and is not aware of any citations issued to drivers using Uber by the City of San Antonio. *Id.* ¶¶ 11–12. To date, Uber itself has not received a single citation in either city. *Id.*

Uber has not received a cease-and-desist letter regarding its operations from either the City of Houston or the City of San Antonio. *Id.* ¶ 12. Plaintiffs appear to suggest that Uber has received a cease-and-desist letter from the City of San Antonio, but they neither allege this directly nor do they provide any evidence of such a letter. Compl. ¶ 3. Further, the Bouloubasis Affidavit offered by Plaintiffs states that the cease and desist letter went only to Defendant Lyft, not to Uber.[3] Bouloubasis Aff. ¶ 16.

All drivers who use the uberX platform undergo extensive background checks, and Uber, through on of its subsidiaries, insures these drivers up to $1 million per incident, which is far more coverage than what is required of taxicabs and limousines. Macdonald Decl. ¶¶ 13–17, 23.

Plaintiffs filed their Complaint on April 8, 2014, seeking a TRO and alleging the following causes of action: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) violation of the Lanham Act; and (3) unfair competition under Texas common law. Compl. ¶¶ 102–09.

On April 18, the City of Houston published proposed regulations that would authorize and regulate companies like Uber.[4] In addition to provisions that would regulate technology

---

[3] Plaintiffs cite to Exhibit B of the Bouloubasis Affidavit as the cease-and-desist letter, but no Exhibit B was attached to that affidavit.

[4] City of Houston Department of Administration & Regulatory Affairs, *Chapter 46 Vehicles for Hire Proposed Amendments* (Apr. 18, 2014), Decl. of Amit Patel ("Patel Decl.") Ex. A, at 116; *see also* City of Houston Department of Administration & Regulatory Affairs, *Overview:*
(footnote continued)

companies like Uber, the proposed regulations also authorize and regulate drivers who, unlike taxicabs and limousines, use their personal vehicles to provide transportation.  *See id.*

## ARGUMENT

To obtain a temporary restraining order, a plaintiff must establish: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Brinson v. Universal Am. Mortgage Co.*, CIV.A. G-13-463, 2014 WL 722398, at *2 (S.D. Tex. Feb. 24, 2014) (quoting *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011)). "Relief should be granted only if the party seeking relief has *clearly carried* the burden of persuasion as to all four elements." *Strong v. Livingston*, 2:12-CV-106, 2013 WL 6817095 (S.D. Tex. Dec. 20, 2013) (citing *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003)) (emphasis added).  "A TRO 'should be restricted to serving [the] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.'" *Hickman v. Silva*, CA C-12-209, 2013 WL 620286 (S.D. Tex. Jan. 28, 2013) (quoting *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

### I. Plaintiffs Fail To Show A Substantial Threat Of Irreparable Harm And Have An Adequate Remedy At Law

Plaintiffs have failed to prove a substantial threat of irreparable harm.  Rather than trying to meet their burden, Plaintiffs attempt to circumvent the requirement to show irreparable harm by citing a collection of decades-old, irrelevant cases from other districts and circuits.  Compl. ¶ 116 (citing *U.S. v. Caribbean Ventures, Ltd.*, 387 F. Supp. 1256, 1257 (D.N.J. 1974); *Civil Aeronautics Bd. v. Donaldson Line (Air Services) Limited*, 343 F. Supp. 1059 (S.D.N.Y. 1972);

---

*Proposed Changes to Chapter 46 of the Code of Ordinances Related to Vehicles-for-Hire* (Apr. 22, 2014), Patel Decl. Ex. B.

*Civil Aeronautics Bd. v. Modern Air Transport, Inc.*, 81 F. Supp. 803, 806 (S.D.N.Y. 1949), *aff'd*, 179 F.2d 622 (2d Cir. 1950)). Government agencies—specifically, the now-defunct Civil Aeronautics Board ("CAB") and/or the Federal Aviation Administration ("FAA")—were the plaintiffs in each of those cases, and none of the cases supports a finding of irreparable harm. *Id.*

Plaintiffs assert that "where a violation of a statute is alleged, . . . a showing of irreparable injury is not required." Compl. ¶ 116. But this is not the law, and it has not been for six years. Plaintiffs completely ignore the Supreme Court's 2008 holding in *Winter v. Natural Res. Def. Council*, which specifically rejected presuming irreparable harm for any type of claim and stated that "[a] plaintiff seeking a preliminary injunction *must establish* . . . that he is likely to suffer irreparable harm in the absence of preliminary relief," 555 U.S. 7, 20 (2008) (emphasis added). The Supreme Court has therefore nullified the presumption that Plaintiffs seek to rely on here.

Plaintiffs also misinterpret *Caribbean Ventures* and the two cases it cites. All three cases involve the Civil Aeronautics Act of 1938, which expressly provided for injunctive relief. In *Modern Air Transport*, "[t]he injunction was granted under [a federal statute], which gives jurisdiction to the district courts to enjoin violation[s]." 179 F.2d at 624; *see also Modern Air Transport*, 81 F. Supp. at 806 ("It is not necessary for the plaintiffs to show irreparable injury to entitle them to an injunction, *for the right to an injunction is specifically conferred by the statute*.") (emphasis added). In contrast, no statute, ordinance, or regulation specifically confers to Plaintiffs the right to enjoin alleged violations of city ordinances. Indeed, neither Chapter 46 (Houston) nor Chapter 33 (San Antonio) provides for injunctive relief at all. Plaintiffs therefore cannot rely on *Caribbean Ventures* or *Modern Air Transport* and must prove, with evidence, a substantial likelihood of suffering irreparable harm absent injunctive relief.[5]

---

[5] Plaintiffs also misconstrue a quotation from Travis Kalanick, Uber's CEO, regarding cease and desist orders generally from January 2013, referring to the lack of jurisdiction over Uber that was being asserted by the SFMTA and CPUC. Spears Aff. Ex. B. But Plaintiff failed to quote
(footnote continued)

All the relevant authority holds that injunctive relief is not available for Plaintiffs' claims. The Northern District of Illinois, in addressing a motion for a preliminary injunction by taxicab and limousine plaintiffs against Uber, held that "plaintiffs have not established that injunctive relief in this proceeding is necessary to prevent irreparable harm prior to a full hearing on the merits."[6] This is consistent with the case law in the Fifth Circuit as well: "a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey*, 647 F.3d at 600.

Here, the allegations contained in Plaintiffs' complaint and the statements contained in the accompanying declarations only highlight the fact that a monetary remedy is adequate for the injuries they allegedly suffer. Plaintiffs, for example, provide a precise dollar figure for the amount that Plaintiffs GHTC, HTS, and Taxis Fiesta pay to the City of Houston annually for taxicab permit fees. Compl. ¶ 97. Similarly, Plaintiffs make reference to "license fees," "airport fees," and "a host of other regulatory and business costs and expenses." Compl. ¶ 97. And finally, Plaintiffs make reference to the "profits they would otherwise obtain but for the actions of the Defendants." Compl. ¶ 98. Plaintiffs articulate no type of injury other than monetary injury in the "Injury" section of the Complaint. Compl. ¶¶ 97–99.

Though Plaintiffs repeatedly make bald assertions of irreparable harm, the actual injuries they allegedly suffer, as described above, are all monetary. Whatever losses Plaintiffs may be found to have incurred due to Uber's alleged conduct, whether they are losses relating to acquiring and maintaining their licenses/permits, or to other expenses they have incurred as part of operating their businesses, are redressable with money damages. The Court cannot not find

---

an important part of the article, which states, "He verified with his lawyers that what Uber was doing was indeed legal, then the company took its case to the public through Twitter and email." *Id.* Uber, of course, is entitled to defend itself and litigate its legal positions in court, consistent with the due process rights afforded to every litigant. Further, Plaintiffs neither allege nor prove that Houston or San Antonio ever served a cease-and-desist letter on Uber as a result of its operations in those cities.

[6] Order Denying Plaintiffs' Motion for Preliminary Injunction, *Yellow Group LLC et al. v. Uber Technologies, Inc.*, No. 12-CV-7967, (N.D. Ill. Sep. 30, 2013), ECF No. 67.

that Plaintiffs are likely to suffer irreparable harm sufficient to support the imposition of a TRO based only on vague and unsupported assertions of financial losses, and thus this Court should deny Plaintiffs' request on that basis alone.

## II. Plaintiffs Have Not Established A Substantial Likelihood Of Success On The Merits Of Their Claims

Plaintiffs have made virtually no effort to establish a "substantial likelihood" of success on the merits. *Brinson*, 2014 WL 722398 at *2. To meet their burden of establishing a likelihood of success, Plaintiffs cite only those three cases from the 1970s or earlier, none of which address the same causes of action involved here and none of which involved private litigants seeking to enforce government regulations. *See* Compl. ¶¶ 116–17 (citing *Caribbean Ventures*, 387 F. Supp. at 1257; *Donaldson Line*, 343 F. Supp. 1059; *Modern Air Transport, Inc.*, 81 F. Supp. at 806). These cases are therefore irrelevant to whether Plaintiffs are likely to succeed on their RICO, Lanham Act, and unfair competition claims.

Uber will prepare a comprehensive motion to dismiss responding to each of Plaintiffs' claims. For purpose of this opposition, Uber briefly sets forth below some, but not all, of the reasons why Plaintiffs are unlikely to succeed on the merits of their claims.

### A. Plaintiffs Fail To Establish Any Likelihood Of Success On The Merits For Their RICO Claim

Plaintiffs assert a RICO claim against Uber based on alleged misrepresentations Uber made about, among other things, the insurance and licensing status of its drivers. Compl. ¶¶ 102–05. This claim is very similar to a RICO claim asserted against Uber in the District of Massachusetts, which that court dismissed.[7] The same result should apply here.

---

[7] Memorandum and Order on Defendant's Motion to Dismiss, *Boston Cab Dispatch, Inc. et al. v. Uber Technologies, Inc.*, No. 13-10769 (D. Mass. Mar. 27, 2014), ECF No. 43 (adopting magistrate judge's decision to dismiss plaintiffs' RICO claims); *see also* Magistrate's Report And Recommendation Re: Defendant's Motion To Dismiss, *Boston Cab* (D. Mass. Feb. 28, 2014), ECF No. 41.

Plaintiffs' claim, which is predicated on allegations of wire fraud, Compl. ¶ 103, is not likely to succeed on the merits because it fails to meet threshold pleading requirements. The particularity requirement of Rule 9(b), which "requires particularity in pleading the circumstances constituting fraud," "applies to the pleading of fraud as a predicate act in a RICO claim as well." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992). "Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel-Phonic*, 975 F.2d at 1139 (internal quotation omitted). Here, Plaintiffs do not include these particulars in their Complaint, and, for that reason alone, Plaintiffs fail to establish any likelihood of success on the merits.

In addition, Plaintiffs will not succeed on their RICO claim because they fail to demonstrate that Uber's alleged activities proximately caused their alleged harm. The Supreme Court has held that the allegedly unlawful racketeering conduct must have a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 268 (1992). This "direct relation" requirement is strictly construed, and the Supreme Court applied it in a later case, holding that, in a suit between competitors, a defendant's filing of false tax returns in order to lower its prices was too remote from the plaintiff's alleged lost market share. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006); *see also Downstream Envtl., L.L.C. v. Gulf Coast Waste Disposal Auth.*, CIVA H-05-1865, 2006 WL 1875959, at *6–*7 (S.D. Tex. July 5, 2006) (citing *Anza*). Similarly, here, Uber's alleged violation of local regulations is too remote from Plaintiffs' alleged lost market share. Further, as the Fifth Circuit has recognized, RICO does not apply to standard business disputes. *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1463 (5th Cir. 1991) ("[A]lthough Congress wrote RICO in broad, sweeping terms, it did not intend to extend RICO to every fraudulent commercial transaction . . . ."); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) ("[C]ivil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions").

For the foregoing reasons, Plaintiffs have failed to establish any likelihood that their RICO claim will succeed on the merits.

### B. Plaintiffs Fail To Establish Any Likelihood Of Success On The Merits Of Their Lanham Act False-Advertising Claim

Plaintiffs assert a false-advertising claim under the Lanham Act based on several statements Plaintiffs allege are false or misleading. Other courts in the Northern District of Illinois[8] and District of Massachusetts,[9] addressing virtually identical claims by similar plaintiffs against Uber, dismissed them. As with Plaintiffs' RICO claims, there is no reason the same result should not apply here.

As several courts have held, the Lanham Act cannot be used to enforce local laws. The Fifth Circuit has said that the Lanham Act is not a "'handy device to reach and decide all sorts of local law questions.'" *IQ Products Co. v. Pennzoil Products Co.*, 305 F.3d 368, 374 (5th Cir. 2002) (quoting *Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484, 490 (D.C. Cir. 1996)). In *IQ Products*, the court affirmed the district court's granting of summary judgment for the defendant where the defendant's alleged Lanham Act violation was based on its alleged failure to advertise its products in compliance with the Federal Hazardous Substances Act ("FHSA"). 305 F.3d at 372–74. The court noted that "the FHSA does not create a private cause of action" and that it "vests the [Consumer Product Safety Commission] with the authority to enforce federal labeling requirements." *Id.* at 374.

---

[8] Order Denying Plaintiffs' Motion for Preliminary Injunction, *Yellow Group LLC et al. v. Uber Technologies, Inc.*, No. 12-CV-7967 (N.D. Ill. Sep. 30, 2013), ECF No. 67; Order on Defendant's Motion to Dismiss, *Yellow Group* (N.D. Ill. Sep. 30, 2013), ECF No. 66 (granting Uber's motion to dismiss with respect to the plaintiffs' false-advertising claim under the Lanham Act).

[9] Memorandum and Order on Defendant's Motion to Dismiss, *Boston Cab Dispatch, Inc. et al. v. Uber Technologies, Inc.*, No. 13-10769 (D. Mass. Mar. 27, 2014), ECF No. 43 (adopting magistrate judge's decision to dismiss plaintiffs' Lanham Act false-advertising claim); *see also* Magistrate's Report And Recommendation Re: Defendant's Motion To Dismiss, *Boston Cab* (D. Mass. Feb. 28, 2014), ECF No. 41.

The same is true here. The enabling Texas statute that Plaintiffs cite, Section 215.004(a) of the Texas Local Government Code, vests enforcement authority in *municipalities*, not private entities such as Plaintiffs. Compl. ¶¶ 41 ("To protect the public health, safety, and welfare, *a municipality by ordinance . . . .*") (quoting Texas Local Government Code § 215.004(a)). Every citation or ticket that a taxicab company receives does not create a cause of action on behalf of all of its competitors, but that is apparently what Plaintiffs would propose. Moreover, neither of the municipal ordinances Plaintiffs cite—Chapter 46 for Houston and Chapter 33 for San Antonio—includes any private enforcement mechanism. Compl. ¶¶ 41–49. In fact, Plaintiffs themselves admit that the relevant authorities in Houston and San Antonio are taking action, Compl. ¶¶ 2–3, and whether the ordinances Plaintiffs cite are applicable to Uber's business is something that those authorities have not yet decided. In fact, the City of Houston very recently issued a comprehensive set of proposed amendments to Chapter 46. Those amendments would create a class of transportation-related companies distinct from existing taxicab and limousine companies, called "Transportation Network Companies."[10] Further, the department already has made at least one public statement that "its [i]nvestigations have not revealed illegal operations on the part of Uber."[11]

All of Plaintiffs' allegations depend on Uber being classified as either a taxi or a limousine company and on the application of taxi or limousine regulations to Uber. Compl. ¶¶ 50–66 (alleging "illegal operations" and "misrepresentation as a ridesharing company"), ¶¶ 66–77 (alleging that Uber is "not permitted to operate"), ¶¶78–93 (alleging that Uber's

---

[10] City of Houston Department of Administration & Regulatory Affairs, *Chapter 46 Vehicles for Hire Proposed Amendments* (Apr. 18, 2014), Patel Decl. Ex. A, at 116; *see also* City of Houston Department of Administration & Regulatory Affairs, *Overview: Proposed Changes to Chapter 46 of the Code of Ordinances Related to Vehicles-for-Hire* (Apr. 22, 2014), Patel Decl. Ex. B.

[11] City of Houston Department of Administration & Regulatory Affairs, *Press Release: Houston's Concern With Lyft Expands From Illegal Operations To Safety Issues* (Mar. 12, 2014), Patel Decl. Ex. C.

purported insurance coverage does not meet the standards set for taxi and limousine insurance coverage). Plaintiffs may accuse Uber of operating in "flagrant violation of known legal obligations," Compl. ¶ 3, but based on the recent issuance of the proposed amendments, the existing regulations are insufficient to address companies like Uber.

Plaintiffs also cite a cease-and-desist letter issued by the City of San Antonio Police Department. Compl. ¶ 3. But in the Complaint, Plaintiffs misrepresent that letter as being targeted at Uber when, in fact, it had nothing to do with Uber and was directed solely to Lyft. Bouloubasis Decl., Dkt. 1-2, ¶ 16 ("[T]he Chief of Police for San Antonio issued a cease and desist letter *to Lyft Inc*.") (emphasis added). Though the letter is entirely unrelated to Uber, it shows that San Antonio is actively engaged in determining what regulations, if any, apply to companies like Uber and Lyft, and are taking whatever action they see fit pursuant to their authority. Indeed, the mayor of San Antonio was quoted as saying, regarding companies such as Uber, "The issue is, do we need to update the model? And I believe the answer is yes."[12]

For the foregoing reasons, Plaintiffs have failed to establish any likelihood that their claim under the Lanham Act will succeed.[13]

### C. Plaintiffs Fail To Establish Any Likelihood Of Success On The Merits For Their Common-Law Unfair-Competition Claim

Plaintiffs' common-law unfair-competition claim is based on the same grounds as their other claims: Uber's allegedly "illegal" conduct. Compl. ¶¶ 108–09 ("Defendants have committed various illegal acts as shown herein, which have interfered with the Plaintiffs' ability to conduct their businesses."). The Court noted in a previous case that "unfair competition

---

[12] Vianna Davila, *Mayor on board with ride sharing*, San Antonio Express-News, Mar. 28, 2014, Patel Decl. Ex. D.

[13] Plaintiffs' Lanham Act claims fails to several additional reasons, which Uber will set forth in a motion to dismiss, including that Plaintiffs fail to properly plead that Uber made any false statements and that Plaintiffs fail to properly plead damages proximately caused by Uber's alleged conduct.

functions like a 'piggy-back' tort, applying only when the court finds that a related, independent tort has been committed." *Clock Spring, L.P. v. Wrapmaster, Inc.*, CIV A H-05-0082, 2008 WL 6759952, at *8 (S.D. Tex. Feb. 12, 2008). As was the case in *Clock Spring*, because Plaintiffs have failed to establish that they are likely to succeed on their RICO and Lanham Act claims, they necessarily have failed to establish that their common-law unfair-competition is likely to succeed. *Id.* at *9 (disposing of the plaintiff's common-law unfair-competition claim identically to its false-advertising claim, where the former was based on the same grounds as the latter).

For the foregoing reasons, Plaintiffs have failed to establish any likelihood that their unfair-competition claim under Texas common law will succeed on the merits.

### III. The Balance Of Hardships Weighs Against Injunctive Relief

The balance of hardships weighs heavily against granting a temporary restraining order. On the one hand, Plaintiffs have nothing but vague allegations of threatened injury, supported only by their own self-serving affidavits and by conclusory allegations of the potential for monetary damages and unspecified and unsupportable irreparable harm. Even if the threat of harm were something Plaintiffs could ultimately establish, Plaintiffs themselves admit that the threatened harm is remote and "long-term," not concrete and immediate so as to warrant granting a temporary restraining order. Compl. ¶ 7 (stating "*long-term*, they could not sustain a system whereby one group pays license fees and taxes, and fulfills Chapter 46's obligations in the public interest as determined by local government, while a different group ignores all such obligations and simply skims the profitable trips to the detriment of the Licensed Taxi Operators") (emphasis added). At most, the alleged harm to Plaintiffs is monetary.[14]

On the other hand, if the Court grants Plaintiffs' request, the harm to Uber is certain and immediate, and goes well beyond monetary damages. This Court would be the first court in the

---

[14] Plaintiffs have also failed to provide any evidence regarding monetary damages or reduced revenue from Uber's operations.

country to enjoin Uber from providing its service to the public. Uber would be forced to cease its Houston and San Antonio operations completely, removing for over 500 drivers a means of earning a living and taking away from the citizens of Houston and San Antonio a service that they, like others around the world, find convenient, reliable, affordable, and efficient. Plaintiffs cannot establish that the balance of hardship tips in their favor.

## IV. The Public Interest Weighs Against Injunctive Relief

As an initial matter, Uber objects to Plaintiffs' repeated attempts to cast it as a discriminatory enterprise in their Complaint. Such allegations made by similarly situated plaintiffs in other districts have proven to be demonstrably false.[15] The actual evidence from similar U.S. cities establishes that there is nothing discriminatory about Uber's software service, it helps underserved communities request transportation services, and eliminates the ability of a driver to reject a rider based upon the rider's appearance.[16] It is offensive and factually inaccurate to characterize an automated service as discriminatory, particularly given that drivers who use Uber know nothing about their potential riders that could even allow them to engage in any discriminatory conduct, including the rider's race, wealth, disability status, or desired destination. Macdonald Decl. ¶ 5. Uber's service is available to anyone with a mobile phone and either a credit/debit card or bank account who signs up for an Uber user account (not just to those with smartphones and credit cards, as Plaintiffs would have this Court believe); it provides an efficient and convenient service to all consumers without any discriminatory purpose or impact. *Id.* ¶ 6.

---

[15] *E.g.*, Order Denying Plaintiffs' Motion for Preliminary Injunction, *Yellow Group LLC et al. v. Uber Technologies, Inc.*, No. 12-CV-7967, (N.D. Ill. Sep. 30, 2013), ECF No. 67 (denying plaintiffs' motion for preliminary injunction, where Uber's allegedly illegal activities were also alleged to be causing irreparable harm to plaintiffs' businesses).

[16] Patel Decl. Ex. E (Apr. 29, 2013 Hr'g Tr.) at 160:8–161:4; Macdonald Decl. ¶ 18–19.

Faced with the possibility of having to adapt their businesses, Plaintiffs resort to scare tactics by repeatedly invoking the "public health, safety, and welfare" and claiming that only they can be trusted to protect it. *E.g.*, Compl. ¶¶ 9–10, 41. They make those warnings without any facts or data or to support their position. The reality is that the indisputable facts directly contradict their position. Plaintiffs' lawsuit is part of their strategy to maintain the "out-of-date" inefficient system that is detrimental to customers, wherein the day is ruled by "protectionist regulations" that may, even according to the Houston Mayor's office, "inhibit customer choice without providing a tangible benefit to the customer."[17] The customers themselves appear to agree, as demonstrated by their low expectations of the quality of existing taxi services in Houston.[18]

The public interest in the ongoing political and regulatory process also weighs against injunctive relief. These very same considerations led the Northern District of Illinois to deny injunctive relief against Uber in a case involving nearly identical issues. Order Denying Plaintiffs' Motion for Preliminary Injunction, *Yellow Group LLC et al. v. Uber Technologies, Inc.*, No. 12-CV-7967, (N.D. Ill. Sep. 30, 2013), ECF No. 67 (stating "continuing assessment by the city of the desirability of the enforcement of current ordinances and the enactment of new ordinances relating to defendant's business, persuade the court that the public interest factors weigh against a grant of injunctive relief prior to a more complete development of the record and hearing of the issues").

Plaintiffs offer nothing but abstract warnings that Uber is a threat to "public health, safety, and welfare," in an apparent an attempt to circumvent the political and legislative process

---

[17] Editorial, *Yellow Cab doesn't get it*, Houston Chronicle, Feb. 25, 2014, Patel Decl. Ex. F.

[18] Editorial, *Free Markets*, Houston Chronicle, Apr. 15, 2014, Patel Decl. Ex. G ("According to a city Taxi Customer Satisfaction Survey, more than one-third of cab riders said that 30 minutes for a taxi is a reasonable wait on weekend evenings. Even more people think that such long waits are acceptable on weekdays.").

that is well underway in both Houston and San Antonio as detailed above.  *E.g.*, Compl. ¶¶ 9–10, 41.  The reality, once again, is that drivers who apply to use Uber undergo extensive background checks and are covered by more insurance than is required for either taxi or limousine services.

## CONCLUSION

For these reasons, Uber respectfully requests that the Court deny Plaintiffs' motion for temporary restraining order.  This Court should not allow Plaintiffs to shut down Uber's business based on nothing more than self-serving conclusory statements from parties that have an interest in forcing Uber out of the marketplace.  Plaintiffs are improperly using this Court's resources for their own ends, and granting their request would serve only their own interests, not the public interest.

DATED: April 21, 2014    QUINN EMANUEL URQUHART & SULLIVAN, LLP


By   /s/ Stephen A. Swedlow
   Stephen A. Swedlow*
   QUINN EMANUEL URQUHART & SULLIVAN, LLP
   500 West Madison Street, Suite 500
   Chicago, Illinois  60661
   Telephone: (312) 705-7400
   Facsimile: (312) 705-7401

   **ATTORNEY-IN-CHARGE FOR UBER TECHNOLOGIES, INC.**

**OF COUNSEL:**

Barrett H. Reasoner
T.B.A. No. 16641980
So. Dist. Bar No. 14922
David Sheeren
T.B.A. No. 24079313
So. Dist. Bar No. 1339705
GIBBS & BRUNS, L.L.P.
1100 Louisiana, Suite 5300
Houston, Texas  77002
Telephone: (713) 650-8805
Facsimile: (713) 750-0903

Arthur M. Roberts*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California St., 22nd Fl.
San Francisco, California  94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Amit B. Patel*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
500 West Madison Street, Suite 500
Chicago, Illinois  60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

*pro hac vice motion pending*

## CERTIFICATE OF SERVICE

      I certify that on April 21, 2014 a copy of this instrument was served on Counsel for Plaintiffs through this Court's CM/ECF system:

Martyn B. Hill
mbh@pdflaw.com
Michael A. Harris
mah@pdhlaw.com
1415 Louisiana Street, 22nd Floor
Houston, Texas  77002
Telephone: 713-951-0160
Facsimile:  713-951-0662
**ATTORNEYS FOR PLAINTIFFS**

                                            /s/ Barrett H. Reasoner
                                           Barrett H. Reasoner