**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| Greater Houston Transportation Company; Fiesta Cab Company; Houston Transportation Services, LLC; National Cab Co., Inc.; Pasadena Taxi Co., Inc.; American Mementum Group LLC; Atlas Limousine LLC; CTI Transportation, LLC; Liban Incorporated; Avanti Int'l Transportation, Ltd.; First Priority Transportation, LLC; Lone Star Executive Limousine, LLC; Dawit Sahle; Mohamed Samater; Mersha Ayele; Moses A. Tesfay; Melaku Shumie; Abraham Tarkegne; Kidane Ghebreslassie; Mohamed Didi; Champion Cab Co.; Greater San Antonio Transportation Company; Enterprise Transportation Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Uber Technologies, Inc.; and Lyft, Inc., <br><br> Defendants. | Case No. 4:14-cv-00941 |

**DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION TO DISMISS COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDING ........................................................... v

STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ............................... v

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

FACTUAL ALLEGATIONS ............................................................................................ 2

LEGAL STANDARD ....................................................................................................... 3

ARGUMENT ..................................................................................................................... 4

I.      The Court Should Dismiss Plaintiffs' Claim for a Declaratory Judgment ......... 4

II.     Plaintiffs Fail to State a RICO Claim ................................................................. 6

III.    Plaintiffs Fail to State a False-Advertising Claim Under the Lanham Act......... 9

        A.      Plaintiffs Cannot Use the Lanham Act to Enforce Local Ordinances ......... 9

        B.      Plaintiffs Fail to Properly Allege that the Misrepresentations Proximately
                Caused Them Damages ........................................................................... 12

        C.      Plaintiffs Fail to Properly Allege Uber Made Misrepresentations ........... 15

                1.      Plaintiffs Fail to Allege Uber Misrepresents Itself as a
                        "Ridesharing" Company ............................................................... 15

                2.      Plaintiffs Fail to Allege Uber Misrepresents That It Can Operate
                        Legally ........................................................................................ 16

                3.      Plaintiffs Do Not Properly Allege Any Misrepresentations
                        Regarding Insurance Coverage .................................................... 17

                4.      Plaintiffs Fail to Properly Allege Any Safety Misrepresentations ......... 18

IV.     Plaintiffs Fail to State a Claim for Common-Law Unfair Competition ............. 19

V.      The Court Should Abstain From Deciding This Municipal Issue ..................... 19

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

## Cases

*ALPO Petfoods, Inc. v. Ralston Purina Co.*,
  720 F. Supp. 194 (D.D.C. 1989) ...................................................................18

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ..............................................................7, 8, 13, 14, 15

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) .............................................................................4

*Atkinson v. Anadarko Bank & Trust Co.*,
  808 F.2d 438 (5th Cir. 1987) ....................................................................9

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) .............................................................................3

*Boston Cab Dispatch, Inc. et al. v. Uber Technologies, Inc.*,
  No. 13-10769 (D. Mass. Mar. 27, 2014) .........................................................15

*Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.*,
  2014 WL 1338144 (D. Mass. Feb. 28, 2014) ....................................................7

*Calcasieu Marine Nat'l Bank v. Grant*,
  943 F.2d 1453 (5th Cir. 1991) ...................................................................9

*Clock Spring, L.P. v. Wrapmaster, Inc.*,
  2008 WL 6759952 (S.D. Tex. Feb. 12, 2008) ..................................................19

*Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*,
  915 F.2d 167 (5th Cir. 1990) ...................................................................4, 6

*Countrywide Home Loans, Inc., v. Mortgage Guar. Ins. Corp.*,
  642 F.3d 849 (9th Cir. 2011) ....................................................................5

*Dial A Car, Inc. v. Transp., Inc.*,
  884 F. Supp. 584 (D.D.C. 1995) ......................................................11, 12, 16

*Dial A Car, Inc. v. Transportation, Inc.*,
  82 F.3d 484 (D.C. Cir. 1996) ...........................................................10, 11, 17

*Downstream Envtl., L.L.C. v. Gulf Coast Waste Disposal Auth.*,
  2006 WL 1875959 (S.D. Tex. July 5, 2006) .....................................................8

*Elliott v. Foufas*,
  867 F.2d 877 (5th Cir. 1989) ....................................................................8

*Holmes v. Securities Investor Protection Corporation*,
  503 U.S. 258 (1992) ................................................................................7

*IQ Products Co. v. Pennzoil Products Co.*,
    305 F.3d 368 (5th Cir. 2002) ........................................................................10, 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014) ...................................................................12, 13, 14, 21

*M.D. v. Perry*,
    799 F. Supp. 2d 712 (S.D. Tex. 2011) ...............................................................20

*Midwest Grinding Co. v. Spitz*,
    976 F.2d 1016 (7th Cir. 1992) ............................................................................9

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*,
    491 U.S. 350 (1989) ..........................................................................................20

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
    227 F.3d 489 (5th Cir. 2000) ..............................................................15, 18, 19

*Rios v. City of Del Rio, Tex.*,
    444 F.3d 417 (5th Cir. 2006) ..............................................................................4

*Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*,
    902 F.2d 222 (3d Cir. 1990) ..............................................................................12

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
    975 F.2d 1134 (5th Cir. 1992) ............................................................................7

*Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*,
    996 F.2d 774 (5th Cir. 1993) ..............................................................................6

*Wilson v. Valley Elec. Membership Corp.*,
    8 F.3d 311 (5th Cir. 1993) ................................................................................20

## Statutes

28 U.S.C. § 2201 ......................................................................................................3–5

Federal Rule of Civil Procedure 12(b)(6) ................................................................3

Federal Rule of Civil Procedure 9(b) ...................................................................1, 7

Lanham Act, 15 U.S.C. § 1125(a)(1)(B) .................................................................3

Racketeer Influenced and Corrupt Organizations Act (RICO) ......................1-3, 6-9, 12,13,17,20

## Miscellaneous

Federal Hazardous Substances Act ("FHSA") ......................................................10

*Chapter 46 Vehicles for Hire Proposed Amendments* (Apr. 18, 2014) .........................................12

*Houston's Concern With Lyft Expands From Illegal Operations To Safety Issues*
    (Mar. 12, 2014) .................................................................................................11

*Overview: Proposed Changes to Chapter 46 of the Code of Ordinances Related to Vehicles-for-Hire* (Apr. 22, 2014) ............................................................................................................12

## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs are taxicab and limousine companies who assert several causes of action based primarily on violations of municipal ordinances and alleged misrepresentations against Defendants Uber Technologies, Inc. and Lyft, Inc.  Plaintiffs filed their Complaint on April 8, 2014 and in their Complaint sought a temporary restraining order (TRO).  The Court held a hearing on April 21, 2014, denied Plaintiffs' request for a TRO, and set a briefing schedule for Defendants' motions to dismiss.  The Court also scheduled a preliminary injunction hearing for July 15, 2014.

## STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

Uber respectfully requests the Court to determine whether Plaintiffs' Complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The legal standard for evaluating this issue is set forth in the body of this motion.

Uber also respectfully requests the Court to determine whether it should exercise its discretion to decline jurisdiction over Plaintiffs' Complaint.  The legal standard for evaluating this issue is also set forth in the body of this motion.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs are taxicab and limousine companies in Houston and San Antonio that allege Uber unfairly competes with them by offering a mobile-phone application that allows consumers to easily request transportation from independent third-party transportation providers.  But there is nothing unfair or illegal about what Uber does.  This lawsuit is merely an attempt by Plaintiffs to use the courts to beat back a legitimate business, which provides a useful service to consumers frustrated with outdated transportation options, so that Plaintiffs can cling to the status quo.

Plaintiffs' primary complaint is that Uber does not comply with Houston and San Antonio municipal ordinances that govern taxicabs and other vehicles for hire.  The municipal ordinances impose several obligations, including permitting and licensing fees, on taxicab companies and drivers.  But enforcement of these ordinances is left to the municipalities themselves, and the ordinances do not allow for private causes of action.  So Plaintiffs attempt to use "backdoor" methods of enforcing these local ordinances by invoking a variety of legal doctrines that have no application to their alleged grievances.

First, Plaintiffs assert a declaratory judgment claim, asking the Court to declare that Uber is in violation of these ordinances, but they lack standing to assert such a claim.  The Fifth Circuit has said that in order to have standing to seek a declaratory judgment, a plaintiff must be a potential defendant in an imminent suit.  This means that Uber must have threatened Plaintiffs with a lawsuit in order for them to have standing.  But they do not allege any facts that would satisfy this bright-line test.  Further, whether Uber is in violation of city ordinances is between the city and Uber, and Plaintiffs have no direct interest in that issue sufficient to confer standing.

Second, Plaintiffs assert a Racketeer Influenced and Corrupt Organizations Act (RICO) claim against Uber based on a series of alleged misrepresentations regarding the nature of Uber's service.  This claim should be dismissed for several reasons.  Plaintiffs failed to comply with Rule 9(b), as they must for claims involving alleged fraud.  They also fail to allege facts showing that the alleged misrepresentations have proximately caused them any injury; in other words, the allegation that Uber misrepresents the nature of its insurance coverage is too remote and

disconnected from Plaintiffs' alleged lost revenue.  And as several courts have held, RICO does not apply to standard business disputes such as this.

Third, Plaintiffs assert a Lanham Act claim based on the same alleged misrepresentations, but that claim should also be dismissed.  As both the Fifth Circuit and the Seventh Circuits have held, the Lanham Act cannot be used to interpret and apply local ordinances, which all of Plaintiffs' claims would require the Court to do.  Further, as with the RICO claim, Plaintiffs cannot establish that Uber's alleged misrepresentations proximately caused any of their alleged injuries.  Nor can Plaintiffs properly allege that Uber made any misrepresentations.  Their strategy is to twist the meaning of isolated statements Uber has made in internet posts over the past several years, and then claim that the newly invented statements—which Uber never made—are false.  Their strategy of manufacturing misrepresentations should be rejected.

Fourth, Plaintiffs' unfair-competition claim is a piggy-back cause of action that is based on other alleged violations.  Because Plaintiffs have failed to state any other claim, their unfair-competition claim should also be dismissed.

Plaintiffs should not be allowed to use the Court to enforce their subjective interpretation of municipal ordinances.  As the Court knows, on April 18, the City of Houston published proposed regulations with new regulatory provisions that specifically authorize Uber's operations.  These proposed regulations and the political process at the municipal level is the proper mechanism to determine whether and to what extent the taxi and limousine regulations are applicable to Uber's software service.

Uber respectfully requests that the Court dismiss the Complaint with prejudice.

## FACTUAL ALLEGATIONS

Unless stated otherwise, the following allegations are taken from the Complaint and are accepted as true only for purposes of this motion.

Plaintiffs are taxicab, limousine, town car and sightseeing permit holders in the cities of Houston and San Antonio.  Compl. ¶¶ 1, 13–35.  Although Plaintiffs do not describe the operations of Defendant Uber in the Complaint, Uber described its business in its brief opposing

Plaintiffs' request for a temporary restraining order.  *See* Dkt. No. 10 at 3–5.  In short, Uber is a software company that has developed and offers to the public an easy-to-use smartphone application ("app") that allows a person to request transportation from several types of third-party transportation providers, such as a licensed driver of a taxicab or limousine, among other options.  *Id.* at 3.  Uber does not own vehicles or employ drivers.  *Id.* at 3.

Plaintiffs allege that Defendants Uber and Lyft are operating taxicab services in Houston and San Antonio without complying with the applicable city ordinances.  Compl. ¶¶ 1, 9, 50–55.  They also claim that Defendants make a number of misrepresentations to consumers.  First, Plaintiffs allege Defendants misrepresent themselves as "ridesharing" companies.  *Id.* ¶¶ 58–66.  Second, they allege Defendants falsely claim that Defendants can operate legally.  *Id.* at ¶¶ 67–77.  Third, they allege that Defendants misrepresent the amount and nature of their insurance coverage.  *Id.* ¶¶ 78–89.  Fourth, they allege that Defendants make misrepresentations regarding safety.  *Id.* ¶¶ 90–96.

Plaintiffs allege that Uber's and Lyft's actions and representations have injured Plaintiffs.  In the section entitled, "Injury to the Plaintiffs," Plaintiffs claim the following injuries: (1) payment of permit and license fees; (2) lost profits; (3) and a reduction in the value of Plaintiffs' licenses and permits.  Compl. ¶ 97–99.

Plaintiffs allege four cases of action.  First, they seek a declaratory judgment under 28 U.S.C. § 2201 that Defendants are in violation of Houston and San Antonio ordinances.  Compl. ¶¶ 100–101.  Second, they assert a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO).  *Id.* ¶¶ 102–05.  Third, they allege a violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  *Id.* ¶¶ 106–07.  Fourth, they assert a common-law claim for unfair competition under Texas law.  *Id.* ¶¶ 108–09.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint's factual allegations must raise "a right to relief above the speculative level on the assumption that all allegations in the complaint are true[.]"  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  The plaintiff must plead

"enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  In parsing out which facts the Court will assume to be true for purposes of deciding a motion to dismiss, it should exclude mere "conclusory allegations or legal conclusions masquerading as factual conclusions."  *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotations & citation omitted).

## ARGUMENT

## I.  The Court Should Dismiss Plaintiffs' Claim for a Declaratory Judgment

Plaintiffs seek a declaratory judgment stating that Uber violates Houston and San Antonio city ordinances regarding taxicabs and vehicles for hire, but Plaintiffs fail to meet the requirements for asserting such a claim.

The Declaratory Judgment Act states that, in a case of "actual controversy," a court "may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  "The Act is designed to allow *potential defendants* in cases of actual and immediate controversy with the subject matter jurisdiction of the federal courts to petition the court for an early resolution of the parties' rights and liabilities."  *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 172 (5th Cir. 1990) (emphasis added).  The Fifth Circuit set forth a bright-line test for determining whether a plaintiff may seek a declaratory judgment: "a party bringing a declaratory judgment action must have been a proper party had the defendant brought suit on the underlying cause of action."  *Id.* at 171.  The declaratory plaintiff, therefore, must have been a potential defendant in threatened litigation.  *See id.*  "[T]he Act does not allow a stranger to intended litigation to use a declaratory judgment action as a vehicle to create a cause of action for which it has no legal liability."  *Id.*

The plaintiff in *Collin County* was a county in Texas that sought a declaratory judgment against a homeowners association.  *Collin Cnty*, 915 F.2d at 169.  The homeowners had

threatened to use the courts to block the construction of a highway that passed through Collin County, and the County wanted the highway to be completed as soon as possible and had expended substantial funds to help complete it. *Id.* The County then sued the homeowners association for a declaratory judgment, even though the association had no legal claim against it. *Id.* at 171. In deciding whether the County could assert a declaratory-judgment action, the Fifth Circuit framed the issue as follows: "May a local government, which will benefit from a federally funded highway, use the Declaratory Judgment Act to forestall potential litigation by a citizen's group that might delay construction of the highway when the citizen's group has no cause of action against the local government?" *Id.* at 170. The court held that the County could not sue for a declaratory judgment because the county was not a "potential defendant[]" in any lawsuit and because it "had no apprehension of a suit." *Id.* at 172.

Plaintiffs fail to meet this bright-line test. They are not "potential defendants" in an imminent lawsuit from Uber. *Id.* at 170. Plaintiffs do not allege that Uber has threatened to assert any claims against them, and the declaratory judgment that Plaintiffs seek—a judgment stating that Uber is violating municipal ordinances—is between Uber and the municipalities. Further, the plain language of the Declaratory Judgment Act, which allows a court to "declare the rights and other legal relations *of any interested party seeking such declaration*," 28 U.S.C. § 2201(a), does not apply to Plaintiffs. The Act allows a court to declare the rights of Plaintiffs, not the rights of Uber and the municipality.

Even if Plaintiffs could state a claim, the Court should exercise its discretion and decline to grant declaratory relief.[1] "It is now well-settled in the Fifth Circuit that a district court has discretion over whether to decide or dismiss a declaratory judgment action." *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993). The non-exhaustive

---

[1]   It appears that the Court's discretion is directed at declining to grant declaratory relief, which is a particular form of remedy, not whether to decline *jurisdiction*. *Countrywide Home Loans, Inc., v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 852–53 (9th Cir. 2011).

list of factors that courts normally consider are not applicable here because they address concurrent state-court actions, forum-shopping considerations, convenience of the parties and witnesses, and judicial economy.  *Id.*  But the Court's determination is "not limited to" these factors and should include the general "purposes of the Declaratory Judgment Act."  *Id.*

The Court should exercise its discretion to decline granting declaratory relief because the political process is actively addressing the operations of Uber.  On April 18 the City of Houston posted draft ordinances on its website that would seek to regulate companies like Uber.  Appendix, Ex. 1.  The need for draft regulations implies that the current regulations—which Plaintiffs seek to enforce against Uber—are insufficient to address these new technology companies.  And the Court should abstain from interfering with the ongoing political deliberations, which, unlike this lawsuit, include all stakeholders, most importantly the public and their elected officials, that have an interest in keeping these services available to consumers.

Further, if the Court were to exercise jurisdiction here, then any company could sue perceived competitors for declaratory judgments regarding the competitors' compliance with municipal ordinances, state law, state regulations, federal law, federal regulations, and more.  Allowing these types of lawsuits would be far outside the scope and purpose of the Declaratory Judgment Act, which as the Fifth Circuit has said, is to "allow potential defendants in cases of actual and immediate controversy . . . to petition the court for an early resolution of the parties' rights and liabilities."  *Collin Cnty.*, 915 F.2d at 172.

For these reasons, the Court should dismiss Plaintiffs' declaratory-judgment claim.

## II.  Plaintiffs Fail to State a RICO Claim

Plaintiffs' second cause of action is a RICO claim based on alleged misrepresentations Uber made about, among other things, the insurance and licensing status of drivers who use its app.  Compl. ¶¶ 102–05.  The claim is deficient in several respects and should be dismissed.

First, Plaintiffs' claim is based on wire fraud, Compl. ¶ 103, and they have failed to plead fraud with particularity as required under Federal Rule of Civil Procedure 9(b).  The particularity

requirement of Rule 9(b), which "requires particularity in pleading the circumstances constituting fraud," "applies to the pleading of fraud as a predicate act in a RICO claim as well." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992).  "Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* at 1139 (internal quotation omitted).  The District of Massachusetts dismissed a similar RICO claim by taxicab plaintiffs against Uber based on a failure to meet Rule 9(b).  *Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.*, CIV.A. 13-10769-NMG, 2014 WL 1338144 (D. Mass. Feb. 28, 2014) *report and recommendation rejected in part on other grounds*, CIV.A. 13-10769-NMG, 2014 WL 1338148 (D. Mass. Mar. 27, 2014).  Here, Plaintiffs do not include these particulars in their Complaint, and therefore fail to comply with Rule 9(b).

Second, Plaintiffs fail to allege that Uber's alleged activities proximately caused their alleged harm.  The Supreme Court has held that allegedly racketeering conduct must have a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 268 (1992).  The Supreme Court has applied this requirement in a very similar case, holding that, in a suit between competitors, a defendant's filing of false tax returns in order to lower its prices was too remote from the plaintiff's alleged lost market share due to those lowered prices.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006).

The plaintiff in *Anza* claimed that the defendant was filing false tax returns with the state of New York, which then allowed it to lower its own prices and attract additional customers.  *Id.* at 457–58.  This allegedly harmed the plaintiff, a competitor, through lost sales.  *Id.*  The Supreme Court held that the harm to the plaintiff was too remote and there were too many links in the chain between the defendant's actionable conduct (the filing of false tax returns) and the plaintiff's harm (lost sales).  *Id.* at 458–59.  The defendant "could have lowered its prices for any number of reasons unconnected to the asserted pattern of fraud," and the plaintiff's lost sales "could have resulted from factors other than [defendant's] acts of fraud." *Id.* at 458–59.  If the

court in *Anza* had accepted the plaintiff's theory, the court would have to determine what portion of the defendant's price drop was attributable to the fraudulent tax returns and what portion of the plaintiff's lost sales was directly attributable to the false tax returns, and the "element of proximate causation . . . is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation."[2] *Id.* at 460. *See also Downstream Envtl., L.L.C. v. Gulf Coast Waste Disposal Auth.*, CIVA H-05-1865, 2006 WL 1875959, at \*6–\*7 (S.D. Tex. July 5, 2006) (citing *Anza* and dismissing plaintiff's claim that defendant was "disposing of grease and grit trap waste without the necessary permit and by illegal dumping, allowing it to charge lower prices, which cause [plaintiff] competitive injury").

The Supreme Court's holding in *Anza* applies squarely here. Uber's alleged violation of local regulations is too remote from Plaintiffs' alleged lost market share. Like the defendant in *Anza*, Uber did not allegedly make any fraudulent representations to Plaintiffs or take money from Plaintiffs; instead, Uber allegedly made false statements to consumers, which allegedly causes Plaintiffs harm only indirectly. *See* Compl. ¶¶ 59–96 (alleging Uber made false representations to users of the app). And like in *Anza*, the Court would have to determine what portion of the Plaintiffs' lost market share is attributable directly to Uber's allegedly false statements, which the Supreme Court held is impermissible under RICO. *Anza*, 547 U.S. at 460. Plaintiffs' alleged drop in revenue "could have resulted from factors other than [Uber's alleged] acts of fraud," *id.* at 458–59, and there is no way to identify which losses are due to the four alleged misrepresentations at issue here and which are from the innumerable other factors affecting Plaintiffs' businesses.

Third, Plaintiffs fail to "plead specific facts, not mere conclusory allegations, which establish the existence of an enterprise" as required under RICO. *Elliott v. Foufas*, 867 F.2d 877,

---

[2] Presumably, a civil RICO claim would be more applicable to a claim that a defendant directly defrauded a plaintiff and took money directly from the plaintiff, not a claim where the defendant defrauded a third party, which indirectly may have caused harm to the plaintiff.

881 (5th Cir. 1989).  The enterprise must be "separate and apart from" the Uber corporation. *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir. 1987).  Here, Plaintiffs allege no RICO "enterprise" distinct from Uber itself.

Finally, as the Fifth Circuit has recognized, RICO does not apply to standard business disputes.  *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1463 (5th Cir. 1991) (stating Congress "did not intend to extend RICO to every fraudulent commercial transaction"); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) (stating "civil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions").  This is a prototypical "garden-variety business dispute[]" to which RICO does not apply.  *Midwest Grinding*, 976 F.2d at 1025.

For these reasons, the Court should dismiss Plaintiffs' RICO claim.  In addition, for the reasons discussed below in Section III(C), Plaintiffs have failed to properly plead that Uber made any "misrepresentations," which is equally applicable to Plaintiffs' RICO claims in that they are also based on alleged misrepresentations.

## III.     Plaintiffs Fail to State a False-Advertising Claim Under the Lanham Act

Plaintiffs assert a false-advertising claim under the Lanham Act based on several statements Plaintiffs allege are false or misleading.  As with Plaintiffs' RICO claim, the Lanham Act claim is deficient in several respects and should be dismissed.

### A.     Plaintiffs Cannot Use the Lanham Act to Enforce Local Ordinances

Several courts have held that the Lanham Act cannot be used to interpret and enforce local laws.  But Plaintiffs base their Lanham Act claim on four alleged misrepresentations, and all of them require interpreting and applying local taxicab ordinances.  Compl. ¶¶ 58–66 (alleging that Uber is a "for hire" vehicle under municipal ordinances and not a "ridesharing" company), ¶¶ 66–72 (alleging that Uber "misrepresents that its vehicle-for-hire business operates legally" when in fact Uber violates local ordinances), ¶¶ 78–89 (alleging that Uber misrepresents its insurance coverage and that "both Uber and Lyft have failed to meet local regulations, including the requirement that the commercial auto coverage be issued by an authorized auto

liability lines carrier"), ¶¶ 90–96 (alleging Uber "blatantly ignores the regulations" and misrepresents how safe it is).

The Fifth Circuit has said that the Lanham Act is not a "'handy device to reach and decide all sorts of local law questions.'" *IQ Products Co. v. Pennzoil Products Co.*, 305 F.3d 368, 374 (5th Cir. 2002) (quoting *Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484, 490 (D.C. Cir. 1996)). In *IQ Products*, the court affirmed the district court's granting of summary judgment for the defendant where the defendant's alleged Lanham Act violation was based on its alleged failure to label its products in compliance with the Federal Hazardous Substances Act ("FHSA"). 305 F.3d at 372–74. The court noted that "the FHSA does not create a private cause of action" and that it "vests the [Consumer Product Safety Commission] with the authority to enforce federal labeling requirements." *Id.* at 374. But the Commission had decided not to take action regarding the defendant's allegedly deficient product labeling, and in light of the Commission's decision not to act, the plaintiff could not "seek[] to enforce the labeling requirements of the FHSA—an action which the CPSC, the enforcing agency, declined to do." *Id.* Accordingly, "the defendants' failure to label the product in keeping with FHSA regulations, *even if true*, does not constitute a false or misleading statement that is actionable under the Lanham Act." *Id.* (affirming grant of summary judgment on Lanham Act claim).

Similarly, in *Dial A Car* the D.C. Circuit held that a limousine company could not use the Lanham Act to enforce local limousine rules against two taxicab companies that were using their taxicabs as a limousine service. 82 F.3d at 485–88. The limousine company alleged that the taxicab companies, by using taxicabs for limousine-like service, were violating a local limousine regulation from the D.C. Taxicab Commission. *Id.* at 485–86. But the regulation did not have a private right of action, so the plaintiffs tried to enforce the regulation indirectly by pleading a false-advertising claim under the Lanham Act based on the taxicab companies' alleged misrepresentation that they could operate legally. *Id.* at 486.

The D.C. Circuit saw the limousine companies' claim for what it really was: "the alleged misrepresentation of fact upon which [the plaintiff] has premised its Lanham Act claim is more

appropriately viewed as a disagreement about the proper interpretation of local taxicab regulations promulgated by the D.C. Taxicab Commission." *Id.* at 485. And because the taxicab commission had not yet resolved the conflicting interpretations of the regulations, the "misrepresentation" at issue was "a contested question of statutory interpretation rather than a clearly established fact," and therefore the "statements at issue cannot form the basis of a Lanham Act claim." *Id.* at 485.

The holdings in *IQ Products* and *Dial A Car* apply squarely here. Like those cases, the enabling Texas statute that Plaintiffs cite, Section 215.004(a) of the Texas Local Government Code, vests enforcement authority in *municipalities*, not private entities such as Plaintiffs, and neither municipal ordinance contains any private enforcement mechanism. Compl. ¶¶ 41–49. Like the plaintiffs in those cases, Plaintiffs here are "simply using the Lanham Act to try to enforce [their] preferred interpretation of [local taxicab regulations] instead of adjudicating the issue before the Commission." *Dial A Car*, 82 F.3d at 488. And like the plaintiffs in *Dial A Car*, Plaintiffs here allege Uber misrepresents that it complies with local regulations, Compl. ¶¶ 58–95, but as the D.C. Circuit held, "[i]nstead of bringing this claim in federal court, [Plaintiffs] should be forced to take [their] arguments to the [taxicab commission] and lobby the [c]ommission to crack down on [Uber's] activities." *Id.* at 490. Like those cases, whether the municipal ordinances are applicable to Uber's business is something the authorities have not yet decided.

In fact, there is good reason to believe that Houston officials do not think Uber violates any ordinances. Houston's Department of Administration & Regulatory Affairs stated publicly that "its [i]nvestigations have not revealed illegal operations on the part of Uber."[3] Houston also recently issued a comprehensive set of proposed amendments to the city ordinances governing

---

[3] Appendix, Ex. 2, City of Houston Department of Administration & Regulatory Affairs, *Press Release: Houston's Concern With Lyft Expands From Illegal Operations To Safety Issues* (Mar. 12, 2014).

vehicles for hire.  Those amendments would create a class of transportation-related companies distinct from existing taxicab and limousine companies, called "Transportation Network Companies,"[4] which further counsels against the Court "'determin[ing] preemptively how [an administrative agency] will interpret and enforce its own regulations' and thereby usurp the agency's responsibility for interpreting and enforcing potentially ambiguous regulations."  *Dial A Car, Inc. v. Transp., Inc.*, 884 F. Supp. 584, 593 (D.D.C. 1995) (quoting *Sandoz Pharmaceuticals Corp. v. Richardson–Vicks, Inc.*, 902 F.2d 222, 231 (3d Cir. 1990)).

Plaintiffs' Lanham Act claim should be dismissed on this ground alone.

### B.    Plaintiffs Fail to Properly Allege that the Misrepresentations Proximately Caused Them Damages

For the same reason that Plaintiffs failed to allege proximate cause under RICO, their Lanham Act claims, based on the same alleged fraudulent statements, should also be dismissed.

In order to state a claim under the Lanham Act, a plaintiff must allege that the defendant's actions "proximately caused" their injuries.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390–91 (2014).  "[T]he proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct."  *Id.* at 1390.  A plaintiff cannot establish proximate cause "if the harm is purely derivative of 'misfortunes visited upon a third person by the defendant's acts.'"  *Id.* (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).  Because all false-advertising claims involve consumer deception, "the intervening step of consumer deception is not fatal to the showing of proximate causation."  *Lexmark*, 134 S. Ct. at 1391.  Still, a plaintiff "ordinarily must show economic or reputational injury flowing *directly* from the deception wrought by the defendant's advertising; and [] that occurs when deception of consumers causes them to withhold trade from the plaintiff."  *Id.* (emphasis added).

---

[4]  Appendix, Ex. 1, City of Houston Department of Administration & Regulatory Affairs, *Chapter 46 Vehicles for Hire Proposed Amendments* (Apr. 18, 2014), at 116.

Because the Supreme Court only recently held that injury under the Lanham Act should be analyzed under traditional proximate-cause standards, there is no case law applying the requirement to Lanham Act claims.  Still, the Supreme Court relied heavily on the standard for proximate cause set forth in its RICO jurisprudence and cited several RICO cases, including the *Anza* case, applying proximate cause to injuries suffered by business competitors.  *See Lexmark*, 134 S. Ct. at 1394 (applying proximate-cause requirement to Lanham Act claim and relying on standards expressed in *Anza* and in *Hemi Group*, which both applied proximate cause to RICO).  As demonstrated above in section III, Plaintiffs cannot meet the RICO proximate-cause requirement set forth in *Anza*, which the Supreme Court has now applied to Lanham Act claims.

Plaintiffs must establish that their injuries "flow[] directly" from the four types of misrepresentations they allege.  *Lexmark*, 134 S. Ct. at 1391.  But regarding the first alleged misrepresentation—that Uber falsely claims it is a "ridesharing" company—there are no *factual* allegations establishing that consumers relied on or cared about this alleged representation.  Compl. ¶¶ 58–66.  Further, even if there were, tying this alleged misrepresentation to lost market share or profits would be impossible.  The representation that Uber is a ridesharing company is too remote from any reduction in revenues to Plaintiffs.  Plaintiffs' alleged injury "might instead have resulted from 'any number of other reasons,'" including the possibility that consumers are simply dissatisfied with Plaintiffs' services.  *Lexmark*, 134 S. Ct. at 1394 (quoting *Anza*, 547 U.S. at 458–59).

The same is true of the other three alleged misrepresentations: (1) that Uber misrepresents that it can operate legally; (2) that Uber misrepresents its insurance coverage; and (3) that Uber misrepresents its safety.  Compl. ¶¶ 67–96.  Plaintiffs' attempt to connect these alleged statements to Plaintiffs' alleged drop in revenue is pure speculation.  How many rides did Plaintiff Fiesta Cab Company lose because Uber allegedly wrote in a blog post that its app "can be used to 'request a safe, reliable ride on-demand,'"  Compl. ¶ 91, or because Uber allegedly wrote in another blog post, "Saddle Up Houston, UberX Has Finally Arrived[?]"  Compl. ¶ 69.  And were those lost rides $10 rides or $50 rides?  Further, Plaintiffs have no way of proving how

many consumers, if any, in Houston or San Antonio were exposed to these four categories of statements, much less how many of the consumers who saw these statements would still have chosen Uber absent the statements.

Further, It would be insufficient for Plaintiffs to point at a drop in revenue that roughly coincides with when Uber began operations in Houston or San Antonio.  Plaintiffs' "lost sales could have resulted from factors other than [Uber's] alleged acts of fraud," *Anza*, 134 S. Ct. at 459, and Plaintiffs would have to identify how much of that lost revenue was due to these four alleged misrepresentations, as opposed to the myriad other factors that could affect their businesses, such as general economic conditions or the quality of Plaintiffs' service.  And trying to tease out how much of Plaintiffs' alleged drop in revenue came from any one of these alleged misrepresentations would involve an impermissible amount of "speculative . . . proceedings" and "intricate, uncertain inquiries."  *Lexmark*, 134 S. Ct. at 1394 (quoting *Anza*, 547 U.S. at 460).[5]

The District of Massachusetts dismissed a Lanham Act claim against Uber for similar reasons.[6]  The taxicab and limousine plaintiffs in that case failed to connect any alleged misrepresentations by Uber to damage to their businesses: "There is no reference to any diversion of sales, any lost customers or any lessening of goodwill or harm to plaintiffs' reputation as a result of this misrepresentation" regarding the amount of a gratuity.  Magistrate's

---

[5]   The Supreme Court ultimately held in *Lexmark* that the plaintiff had alleged proximate cause.  *Lexmark*, 134 S. Ct. at 1394.  But the plaintiff there had alleged the defendant made misrepresentations directly disparaging the plaintiff's products, which Plaintiffs here have not alleged.  *Id.* at 1393.  The defendant had also allegedly disparaged the products of third party remanufacturers that used the plaintiff's components, so "there is likely to be something very close to a 1:1 relationship between the number of" remanufacturers' products sold and the number of plaintiff's components sold (or not sold).  *Id.* at 1394.  There is no similar 1:1 relationship at issue here.

[6]   Memorandum and Order on Defendant's Motion to Dismiss, *Boston Cab Dispatch, Inc. et al. v. Uber Technologies, Inc.*, No. 13-10769 (D. Mass. Mar. 27, 2014), ECF No. 43 (adopting magistrate judge's decision to dismiss plaintiffs' Lanham Act false-advertising claim); *see also* Magistrate's Report And Recommendation, *Boston Cab* (D. Mass. Feb. 28, 2014), ECF No. 41.

Report And Recommendation Re: Defendant's Motion To Dismiss, *Boston Cab* (D. Mass. Feb. 28, 2014), ECF No. 41, at 37.  The court accordingly held that there was an "absence of harm as a result of any such misrepresentations" and dismissed the Lanham Act claim on that basis.  *Id.*

For these reasons, Plaintiffs have failed to allege proximate cause for their Lanham Act claim, which is an independent reason for dismissal.

### C.     Plaintiffs Fail to Properly Allege Uber Made Misrepresentations

Plaintiffs have also failed to allege, *with facts*, that Uber made any actual misrepresentations.  In order to state a false-advertising claim under the Lanham Act, a plaintiff must allege that the defendant's statements are either literally false or, if ambiguous or true but misleading, then the plaintiff must also allege that the statement actually deceived consumers.  *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000).  Plaintiffs do not allege that any consumers have been *actually* deceived; thus, insofar as the Court determines that any of the four types of alleged misrepresentations are ambiguous or true but misleading, the Court should dismiss them for failure to allege any *actual* deception.  Further, as explained below, Plaintiffs fail to properly allege that Uber made any actionable misrepresentations.

### 1.     Plaintiffs Fail to Allege Uber Misrepresents Itself as a "Ridesharing" Company

Plaintiffs' allegation that Uber "misrepresents" itself as a ridesharing company is nothing more than a semantic game.  Compl. ¶¶ 58–66.  Their primary claim is that Uber offers "ridesharing" but its service does not meet the definition of ridesharing, and instead is a vehicle for hire as defined under the municipal ordinances.  *See id.*  This is wrong for several reasons.

First, Plaintiffs' stated definition of ridesharing, which is "The act or an instance of sharing motor vehicle transportation with another or others, especially among commuters," Compl. ¶ 59, is broad enough to fit Uber's ridesharing-request option, which is called uberX. The definition says nothing about "free" service and does not preclude sharing vehicles for a fee.  Thus, Plaintiffs' own allegations undermine their claim.

Second, Uber obviously does not claim that its service is free.  Plaintiffs do not allege that any consumer using Uber's service believes the service to be free.  Indeed, Plaintiffs admit that users of Uber's app use credit cards to pay for transportation, Compl. ¶ 9, and that consumers are explicitly told that they will be charged fees for transportation, *id*. ¶ 62.  No consumer could be misled into believing that Uber's service is free.

Third, to the extent that the alleged ridesharing misrepresentation relates to whether Uber is actually a vehicle for hire under the applicable municipal ordinances, that aspect of the claim is precluded under *Dial A Car* because it involves the application of local ordinances, which is not permitted under the Lanham Act.  82 F.3d at 485 (dismissing Lanham Act claim because it involved "a contested question of statutory interpretation rather than a clearly established fact").

### 2.  Plaintiffs Fail to Allege Uber Misrepresents That It Can Operate Legally

Plaintiffs' second alleged misrepresentation is that Uber claims it can operate legally when it cannot.  Compl. ¶¶ 67–77.  But Plaintiffs fail to allege that Uber has ever said it operates legally in Houston or San Antonio.  *See id.*  All that they allege is that Uber stated, "Saddle Up Houston, UberX Has Finally Arrived!"  Compl. ¶ 69.  There is nothing misleading about that.  They also allege that Uber stated, among other things, "San Antonio, uberX has arrived!"  Compl. ¶ 70.  Again, there is nothing misleading about that.[7]

Plaintiffs also allege that Uber states on its website: "LICENSED & INSURED - From insurance to background checks, every driver meets all local regulations," which Plaintiffs claim is "absurdly false."  Compl. ¶ 71.  But this statement does not appear on the user portion of the website; it appears on the page for drivers.  Compl. ¶ 71 n.30 (citing www.uber.com/drivers).

---

[7]  Plaintiffs also quote several Twitter posts allegedly made by Uber, but they all discuss the fact that Uber is operational in Houston and do not contain any allegedly false statements.  Compl. ¶ 72.

Further, whether drivers who use the Uber app comply with, or are even subject to, local ordinances is not a proper basis for a Lanham Act claim.  *Dial A Car*, 82 F.3d at 485.

What Plaintiffs are doing is obvious.  They are taking alleged statements and twisting them far beyond their original meaning so that they can manufacture a "false" statement to support their RICO and Lanham Act claims.  The strategy is transparent and does not succeed in creating claims that are recognized under the Lanham Act..

### 3. Plaintiffs Do Not Properly Allege Any Misrepresentations Regarding Insurance Coverage

Plaintiffs claim that Uber falsely represented that "there *will be* a $1,000,000 per-incident insurance policy applicable to ridesharing trips."[8]  Compl. ¶¶ 79, 78–89 (emphasis added).  This is a statement of future intention; Uber said there "will be" such an insurance policy.  *Id.* ¶ 79. According to the Affidavit of Michael Spears, Exhibit D, which attaches the White Paper in which Uber allegedly made this statement, the White Paper was published online on April 12, 2013.  Thus, what Plaintiffs actually allege is that as of April 12, 2013—before Uber began operations in Houston or San Antonio—Uber *intended to have* a $1,000,000 per-incident insurance policy.  But nowhere do Plaintiffs allege that this statement of future intention was false at the time it was made or that, at the time, Uber did not fully intend to procure such a policy in the future, which is fatal to their Lanham Act claim.  *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 720 F.Supp. 194, 205 n. 12 (D.D.C. 1989) (stating the challenged statements must be allegedly "false or misleading at the time they are made").

In any event, Uber did procure such a policy.  *See* Appendix, Ex. 3.  Plaintiffs' challenge to this policy focuses on (1) the allegation that the insurer, James River, is not authorized to issue

---

[8]  Plaintiffs also allege that Uber previously represented that there "*will be* a $2,000,000 insurance policy."  Compl. ¶ 80 (emphasis added).  But Plaintiffs have not explained why Uber's statement about its future intentions was false at the time it was made or why Uber would somehow be bound by this statement forever.  Further, Plaintiffs' argument does not appear to be based on the specific amount of stated coverage, but merely its quality.  *See* Compl. ¶¶ 81–88.

personal auto insurance in Texas, Compl. ¶ 82; (2) the policy insures a subsidiary of Uber called Rasier, Compl. ¶ 83; (3) drivers might only carry personal auto insurance, Compl. ¶ 84; and (4) and Uber's terms and conditions release Uber from liability, Compl. ¶ 85.  None of these allegations contradict the fact that Uber allegedly intended, on April 12, 2013, to have a $1 million insurance policy for ridesharing.

But even if Uber's representation regarding its insurance policy is read more broadly to mean that Uber *has* a $1 million insurance policy, Plaintiffs' allegations still do not establish that this is false or misleading because Plaintiffs do not—and cannot—allege that this policy does not exist; it does.  Plaintiffs only allege that "individuals *may* experience difficulty" if they file an insurance claim.  Compl. ¶ 86.  Plaintiffs have not identified anyone who has had *actual* difficulty in receiving coverage under the policy, so their concerns are theoretical.  And to establish liability under the Lanham Act for ambiguous statements, Plaintiffs must allege *actual* deception, which they have not.  *Pizza Hut*, 227 F.3d at 497.

### 4.    Plaintiffs Fail to Properly Allege Any Safety Misrepresentations

Plaintiffs also allege that Uber misrepresents to consumers that "uberX drivers undergo a background check, driving history check, vehicle inspection, and 'ongoing quality control.'" Compl. ¶ 91.  Nowhere do Plaintiffs allege that Uber does not do these things and they therefore are not alleged to be misrepresentations.  *See* Compl. ¶¶ 90–96.

According to Plaintiffs, Uber also claims that its app "can be used to 'request a safe, reliable ride on-demand'" and that it is the "safest ground transportation out there."  Compl. ¶ 91. This is a prototypical example of "puffery," which is either "(1) an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying; or (2) a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion."  *Pizza Hut*, 227 F.3d at 497.

To the extent these statements are not puffery, Plaintiffs have not alleged any *facts* establishing that transportation requested through Uber is not safer than other ground transportation.  All they do is quote from Uber's terms and conditions, which contain boilerplate

disclaimers and limitations of liability, none of which establish that ground transportation requested through Uber's app is any more or less dangerous than any other form of ground transportation.  Compl. ¶¶ 92–93.

For these reasons, Plaintiffs' have failed to allege any actionable misrepresentations under the Lanham Act, and their Lanham Act claim should be dismissed.

## IV.     Plaintiffs Fail to State a Claim for Common-Law Unfair Competition

Plaintiffs' common-law unfair-competition claim is based on the same grounds as their other claims: Uber's allegedly "illegal" conduct.  Compl. ¶¶ 108–09.  To state a claim for unfair competition, the plaintiff must allege "an independent tort."  *Clock Spring, L.P. v. Wrapmaster, Inc.*, CIV A H-05-0082, 2008 WL 6759952, at *8 (S.D. Tex. Feb. 12, 2008).  "[U]nfair competition functions like a 'piggy-back' tort, applying only when the court finds that a related, independent tort has been committed."  *Id.*  As was the case in *Clock Spring*, because Plaintiffs have failed to state RICO and Lanham Act claims based on, among other things, their failure to allege proximate cause or any actionable misrepresentations, they necessarily have failed to state a claim for common-law unfair competition.  *Id.* at *9 (disposing of the plaintiff's common-law unfair-competition claim identical to its false-advertising claim).

## V.     The Court Should Abstain From Deciding This Municipal Issue

Under *Burford* abstention, a court can decline to exercise jurisdiction over a suit "[w]here timely and adequate state-court review is available, and where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."[9]  *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993) (quoting *New Orleans Pub. Serv., Inc. v.*

---

[9]  *Burford* abstention motions are generally decided under Rule 12(b)(1).  *M.D. v. Perry*, 799 F. Supp. 2d 712, 715 n.3 (S.D. Tex. 2011).  Uber accepts Plaintiffs' *factual* allegations as true for purposes of this motion, and requests judicial notice of Houston's proposed municipal regulations, as set forth in Uber's Request for Judicial Notice.

*Council of the City of New Orleans*, 491 U.S. 350, 361 (1989) (quotation marks omitted).  All the relevant factors favor abstention: (1) the applicability of the existing and future municipal regulations is undecided; (2) the municipalities and the public have a strong interest in the availability of services like Uber; (3) there is a need for coherent and uniform regulation; and (4) the municipality's administrative courts and the political process provide a forum for adjudicating this dispute.  *See Wilson*, 8 F.3d at 314–16.

## CONCLUSION

Uber respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

DATED: May 5, 2014                    QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP


                                      By   /s/ Stephen A. Swedlow
                                          Stephen A. Swedlow*
                                          QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
                                          500 West Madison Street, Suite 500
                                          Chicago, Illinois  60661
                                          Telephone: (312) 705-7400
                                          Facsimile: (312) 705-7401
                                          **ATTORNEY-IN-CHARGE FOR UBER
                                          TECHNOLOGIES, INC.**


**OF COUNSEL:**

Barrett H. Reasoner                        Arthur M. Roberts*
T.B.A. No. 16641980                        QUINN EMANUEL URQUHART
So. Dist. Bar No. 14922                    & SULLIVAN, LLP
David Sheeren                              50 California St., 22nd Fl.
T.B.A. No. 24079313                        San Francisco, California  94111
So. Dist. Bar No. 1339705                  Telephone: (415) 875-6600
GIBBS & BRUNS, L.L.P.                       Facsimile: (415) 875-6700
1100 Louisiana, Suite 5300
Houston, Texas  77002
Telephone: (713) 650-8805                  Amit B. Patel*
Facsimile: (713) 750-0903                  QUINN EMANUEL URQUHART
                                           & SULLIVAN, LLP
                                           500 West Madison Street, Suite 500
                                           Chicago, Illinois  60661
                                           Telephone: (312) 705-7400
                                           Facsimile: (312) 705-7401


* *pro hac vice*