IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GREATER HOUSTON | § | |
| TRANSPORTATION, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:14-cv-00941 |
| | § | |
| UBER TECHNOLOGIES, INC. and | § | |
| LYFT, INC., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT LYFT, INC.'S CORRECTED MOTION TO DISMISS
PLAINTIFFS' ORIGINAL COMPLAINT**

TABLE OF CONTENTS

I.  TABLE OF AUTHORITIES ....................................................................................................... iii

II.  INTRODUCTION ...................................................................................................................1

III.  FACTUAL BACKGROUND ......................................................................................................2

IV.  ARGUMENTS AND AUTHORITIES ..........................................................................................3

    A.  The Court should dismiss Plaintiffs' Complaint in its entirety because it fails to state a claim upon which relief can be granted. ...........................................3

        1.  Plaintiffs fail to state a claim under the DJA. ...............................................4

        2.  Plaintiffs fail to state a claim under RICO....................................................6

            a.  Plaintiffs fail to plead a "pattern of racketeering activity" because they do not plead wire fraud with the requisite particularity. ......................................................................................7

            b.  Plaintiffs fail to allege facts sufficient to show a RICO enterprise. ..............................................................................................8

            c.  Plaintiffs fail to allege an injury proximately caused by Lyft's purported RICO violations. ....................................................9

            d.  Plaintiffs also fail to establish a RICO conspiracy claim. .............10

        3.  Plaintiffs fail to state a claim under the Lanham Act................................11

            a.  Plaintiffs fail to plead an actionable misrepresentation of fact, let alone one that actually or potentially materially deceived consumers. ..................................................................11

            b.  Plaintiffs plead no injury proximately caused by any misrepresentation. ........................................................................16

        4.  Plaintiffs fail to state a claim under Texas unfair competition law. ..........16

    B.  Alternatively, this Court should dismiss or stay this case under the *Burford* abstention doctrine. .............................................................................................18

V.  CONCLUSION....................................................................................................................20

CERTIFICATE OF SERVICE ............................................................................................................22

TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abraham v. Singh,*
480 F.3d 351 (5th Cir. 2007) ...........................................................................6, 10

*Anza v. Ideal Steel Supply Corp.*
547 U.S. 451, 461 (2006)...................................................................................9, 10

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).............................................................................................3, 15

*Atl. Gypsum Co. v. Lloyds Int'l Corp.,*
753 F. Supp. 505 (S.D.N.Y. 1990) .........................................................................6

*B.V. Optische Industrie De Oude Delft v. Hologic, Inc.,*
909 F. Supp. 162 (S.D.N.Y. 1995) .........................................................................8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).......................................................................................3, 7, 9

*Burford v. Sun Oil Co.,*
319 U.S. 315 (1943)..............................................................................................18

*Cinel v. Connick,*
15 F.3d 1338 (5th Cir. 1994) ..................................................................................3

*City of Driscoll v. Saenz,*
No. CIV.A. C-06-543, 2007 WL 173232 (S.D. Tex. Jan. 17, 2007).......................6

*Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods,*
915 F.2d 167 (5th Cir. 1990) ..............................................................................4, 5

*Colo. River Water Conservation Dist. v. United States,*
424 U.S. 800 (1976)..............................................................................................18

*Crowe v. Henry,*
43 F.3d 198 (5th Cir. 1995) ...............................................................................6, 11

*Dial A Car, Inc. v. Transp., Inc.,*
82 F.3d 484 (D.C. Cir. 1996) ...........................................................................14, 20

*Dorsey v. Portfolio Equities, Inc.,*
540 F.3d 333 (5th Cir. 2008) ..................................................................................3

*Downstream Envtl., L.L.C. v. Gulf Coast Waste Disposal Auth.,*
No. CIV.A. H-05-1865, 2006 WL 1875959 (S.D. Tex. July 5, 2006) ....................9

iii

*Elliott v. Foufas,*
    867 F.2d 877 (5th Cir. 1989) ...................................................................................8, 9

*Hewlett-Packard Co. v. Byd:Sign, Inc.,*
    No. 6:05-CV-456, 2007 WL 275476 (E.D. Tex. Jan. 25, 2007) ..............................8

*In re Superior Air Parts, Inc.,*
    486 B.R. 728 (Bankr. N.D. Tex. 2012)......................................................................17

*IQ Prods. Co. v. Pennzoil Prods. Co.,*
    305 F.3d 368 (5th Cir. 2002) ....................................................................................12

*Jones v. Hobbs,*
    745 F. Supp. 2d 886 (E.D. Ark. 2010)........................................................................5

*Keane v. Fox Television Stations, Inc.,*
    297 F. Supp. 2d 921 (S.D. Tex. 2004) (Lake, J.)......................................................17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    134 S. Ct. 1377 (2014)..........................................................................................4, 16

*M.D. v. Perry,*
    799 F. Supp. 2d 712 (S.D. Tex. 2011) ........................................................................4

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,*
    491 U.S. 350 (1989).....................................................................................................18

*Nolen v. Nucentrix Broadband Networks Inc.,*
    293 F.3d 926 (5th Cir. 2002) ....................................................................................10

*Oceanic Exploration Co. v. Phillips Petrol. Co. ZOC,*
    352 F. App'x 945 (5th Cir. 2009) ...............................................................................7

*Park Place Entm't v. Simmons,*
    No. Civ. A. 99-595, 1999 WL 1049828 (E.D. La. Nov. 18, 1999) ...........................4

*Petri v. Kestrel Oil & Gas Props., L.P.,*
    No. Civ. A. H-09-3994, 2011 WL 2181316 (S.D. Tex. June 3, 2011)....................11

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.,*
    227 F.3d 489 (5th Cir. 2000) ...............................................................................12, 13

*Porter v. Shearson Lehman Bros., Inc.,*
    802 F. Supp. 41 (S.D. Tex. 1992) ...............................................................................7

*Price v. Pinnacle Brands, Inc.,*
    138 F.3d 602 (5th Cir. 1998) ......................................................................................7

*RBIII, L.P. v. City of San Antonio*,
　　No. SA-09-CV-119-XR, 2010 WL 3516180 (W.D. Tex. Sept. 3, 2010) ................................5

*Real Estate Innovations, Inc. v. Houston Ass'n of Realtors, Inc.*,
　　422 F. App'x 344 (5th Cir. 2011) .....................................................................................6

*Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distribution Co.*,
　　520 F.3d 393 (5th Cir. 2008) ..........................................................................................11

*Schoellkopf v. Pledger*,
　　778 S.W.2d 897 (Tex. App.—Dallas 1989, writ denied) ...................................................17

*SCI Tex. Funeral Servs., Inc. v. Hijar*,
　　214 S.W.3d 148 (Tex. App.—El Paso 2007, pet. denied) .................................................17

*Sierra Club v. City of San Antonio*,
　　112 F.3d 789 (5th Cir. 1997) ...............................................................................18, 19, 20

*Sw. Recreational Indus., Inc. v. FieldTurf, Inc.*,
　　No. 01-50073, 2002 WL 32783971 (5th Cir. 2002) .........................................................15

*Taylor Publ'g Co. v. Jostens, Inc.*,
　　216 F.3d 465 (5th Cir. 2000) ....................................................................................16, 17

*United States ex rel. Grubbs v. Kanneganti*,
　　565 F.3d 180 (5th Cir. 2009) ...........................................................................................3

*United States ex rel. Hebert v. Dizney*,
　　295 F. App'x 717 (5th Cir. 2008) ......................................................................................3

*Whelan v. Winchester Prod. Co.*,
　　319 F.3d 225 (5th Cir. 2003) ............................................................................................9

*Williams v. WMX Techs., Inc.*,
　　112 F.3d 175 (5th Cir. 1997) ............................................................................................8

*Wilson v. Valley Elec. Membership Corp.*,
　　8 F.3d 311 (5th Cir. 1993) ..............................................................................................19

*Witkowski v. Brian, Fooshee & Yonge Props.*,
　　181 S.W.3d 824 (Tex. App.—Austin 2005, no pet.) .........................................................5

## STATUTES

18 U.S.C. § 1962(a)–(d) (2006) .............................................................................................6

18 U.S.C. § 1964(c) (2006)....................................................................................................6

23 U.S.C. § 101 (2012) .......................................................................................................13

28 U.S.C. § 2201(a) (2006)................................................................................................4

TEX. LOC. GOV'T CODE ANN. § 215.004 (West 2008)..................................................20

**OTHER AUTHORITIES**

FED. R. CIV. P. 12(b)(6) ................................................................................................3

FED. R EVID. 201 ........................................................................................................3

# I.   INTRODUCTION

Defendant Lyft, Inc. moves to dismiss Plaintiffs' Original Complaint under Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs' Complaint suffers from a fatal defect:  it seeks to hold Lyft liable for its alleged violation of city ordinances that provide no private right of action.  But Plaintiffs cannot use the Declaratory Judgment Act ("DJA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Lanham Act, or state unfair competition laws as a backdoor to enforcement.  Thus, the Complaint should be dismissed in its entirety.

Plaintiffs' claims also fail because they have not been adequately pleaded.  Plaintiffs' DJA allegations fail to state a claim for which relief can be granted, as Plaintiffs do not seek a declaration of their own rights.  Their RICO allegations fail even to specify the subsection(s) of RICO under which they are brought, much less to meet the heightened pleading standard for their RICO claim.  Their Lanham Act allegations do not adequately plead any of the elements of a prima facie false advertisement claim.  And their unfair competition allegations fail to identify the requisite underlying act.  These pleading deficiencies also merit dismissal of the Complaint.

Alternatively, Lyft asks the Court to dismiss or stay Plaintiffs' claims under the *Burford* abstention doctrine.  This lawsuit boils down to a complaint about the scope and fairness of municipal ordinances.  Plaintiffs—private parties in the taxicab and limousine business in Houston and San Antonio—are unhappy that new transportation network platforms are not subject to the same regulations as Plaintiffs.  That unhappiness may raise policy questions concerning the appropriateness of regulating transportation network platforms, but elected officials in the City of Houston and the City of San Antonio are currently considering these questions.  Because Plaintiffs' claims center on purely state law issues concerning local ordinances and the relief sought would interfere with the regulatory scheme established by Texas law, this Court should abstain from deciding the issues presented.

1

## II.   FACTUAL BACKGROUND

Lyft is a mobile-based ridesharing platform that "provides a means to enable persons who seek transportation to certain destinations ('Riders') to be matched with persons driving to or through those destinations ('Drivers')."   *See* Dkt. No. 1-8 at 84–85.   Lyft offers information and a method to connect drivers and riders with each other, but does not—and does not intend to— provide transportation services.   *Id.*   Every driver who applies to become a part of the Lyft community is screened for criminal offenses and driving incidents.   *Id.* at 136, 143–44.   Lyft requires each applicant, based on his or her social security number, to undergo a national and county level criminal background check that includes the national sex offender database.   *Id.* Moreover, Lyft procures an insurance policy that provides drivers with excess automobile liability insurance up to $1,000,000 per occurrence.   *Id.* at 87.   The policy offers excess liability protection over a driver's existing insurance while the driver is transporting riders on a trip arranged through the Lyft platform.   *Id.*   A rider may elect to make a voluntary donation for the ride a driver has provided.   *Id.* at 85–86.   Although the Lyft platform provides users in Houston and San Antonio with a suggested donation amount for each ride, the rider—in his or her sole discretion—decides whether and how much to donate.   *Id.*; Compl. ¶ 73.

The crux of Plaintiffs' Complaint is their allegation that the Lyft platform violates City of Houston and City of San Antonio ordinances.   *See* Compl. ¶¶ 100–09.   Notably, however, Plaintiffs, do not allege that there has been an adjudicated finding that Lyft's platform actually contravenes the Houston or San Antonio ordinances, *see generally* Compl., and for good reason—no such adjudicated finding exists.   Instead, officials in both cities are considering questions about the appropriateness of regulating transportation network platforms, and Lyft is working closely with these officials to address any concerns about Lyft's services or drivers who use Lyft.   *See*, *e.g.*, Ex. 1, Apr. 22, 2014 Agenda for City of Houston Special Called Joint

Meeting of the Public Safety & Homeland Security Committee & Transportation, Technology & Infrastructure Committee (listing as agenda item, "Proposal: Revisions to Chapter 46 of the Code of Ordinances Related to Vehicles for Hire"); Ex. 2, Proposed Revisions to Chapter 46.[1]

### III.  ARGUMENTS AND AUTHORITIES

**A.  The Court should dismiss Plaintiffs' Complaint in its entirety because it fails to state a claim upon which relief can be granted.**

Under Rule 12(b)(6), a complaint should be dismissed when its allegations "fail[] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  To avoid dismissal, the plaintiff must have provided both fair notice of the nature of the claim and plausible factual allegations to support the claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (stating that plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").  The plaintiff's claims "must make relief plausible, not merely conceivable, when taken as true." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *United States ex rel. Hebert v. Dizney*, 295 F. App'x 717, 721 (5th Cir. 2008) ("'Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting *Twombly*, 550 U.S. at 555)).  The court should "not strain to find inferences favorable to the plaintiff." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal quotation marks omitted).[2]

---

[1]     The Court may take judicial notice of matters of public record if those facts are not subject to reasonable dispute. FED. R EVID. 201; *see Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record.").  Lyft requests that the Court take judicial notice of the City of Houston's published information about the ongoing political process regarding this dispute, including the Agenda attached as Exhibit 1 and available at http://www.edforh.com/wordpress/wp-content/uploads/2012/10/PSHS-TTI-Committee-4.22.14.pdf, and proposed revisions to the municipal ordinances, attached      as      Exhibit      2      and      available      at      http://www.houstontx.gov/ordinancefeedback/ Chapter_46_Vehicles_for_Hire_Proposed_Amendments_April_2014.pdf.

[2]     It remains unsettled whether Plaintiffs' lack of a private right of action—and consequently, lack of statutory standing—should be treated as a jurisdictional defect under Rule 12(b)(1) or a pleading deficiency under

1.      **Plaintiffs fail to state a claim under the DJA.**

Plaintiffs seek a declaratory judgment that "Lyft's transportation services in the City of Houston violate the [Houston] Ordinances" and that "Lyft's transportation services in the City of San Antonio violate the [San Antonio] Ordinances."  Compl. ¶ 101(c)–(d).  Critically, however, the DJA is not available to Plaintiffs because they are not seeking a declaration of their own rights or legal interests and because they lack statutory standing to enforce the ordinances, which do not grant a private cause of action.

The DJA provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations *of any interested party* seeking such declaration . . . ."  28 U.S.C. § 2201(a) (2006) (emphasis added).  Plaintiffs, however, are not seeking a declaration of their own rights or legal relations.  Rather, they are seeking a declaration that Lyft has violated Houston's and San Antonio's city ordinances.  Because Plaintiffs would be strangers to any potential litigation that might arise between Lyft and the cities over the applicability of, or Lyft's compliance with, the ordinances, Plaintiffs have no standing to obtain the declaratory judgment that they seek.  *See Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 172 (5th Cir. 1990) ("While the Act should be liberally applied when the plaintiff has a legal interest in an actual case or controversy, the Act does not allow a stranger to intended litigation to use a declaratory judgment action as a vehicle to create a cause of action for which it has no legal liability."); *cf.*

---

Rule 12(b)(6).  However, a footnote in a recent Supreme Court decision indicates that this deficiency should be addressed by Rule 12(b)(6).  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387–88 (2014) (stating that the term "statutory standing" is an improvement over "prudential standing," but "it, too, is misleading, since the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction . . . .") (internal quotation marks omitted).  To the extent that this Court determines that Rule 12(b)(6) is not the appropriate vehicle for analyzing this issue, Lyft asks that this Court treat this motion as a request for dismissal pursuant to Rule 12(b)(1).  To the extent the same controversy exists as to *Burford* abstention, so Lyft makes the same request as to that argument.  *See M.D. v. Perry*, 799 F. Supp. 2d 712, 715 (S.D.Tex. 2011).

*Park Place Entm't v. Simmons*, No. Civ. A. 99-595, 1999 WL 1049828, at *6 (E.D. La. Nov. 18, 1999) (dismissing DJA claim where "[a]ny potential justiciable controversy . . . necessarily would be based on the legal rights and obligations of the parties to the Consulting and Operating Agreements," yet plaintiff was not a party to either agreement).

Moreover, Plaintiffs cannot use the DJA to enforce the ordinances for the cities because the ordinances do not authorize private enforcement actions. The DJA merely provides a federal remedy; it does not create a cause of action where none otherwise exists. *Collin Cnty.*, 915 F.2d at 170–71. Because "it is the underlying cause of action of the defendant that is actually litigated in a declaratory judgment action, a party bringing a declaratory judgment action must have been a proper party had the defendant brought suit on the underlying cause of action." *Id.* at 171.

Here, Plaintiffs would not be proper parties to any enforcement action against Lyft because neither set of ordinances creates a private right of action, expressly or impliedly. *See Witkowski v. Brian, Fooshee & Yonge Props.*, 181 S.W.3d 824, 831 (Tex. App.—Austin 2005, no pet.) (explaining that Texas courts "apply a 'strict rule of construction' to statutory enforcement schemes and imply causes of action only when the drafters' intent is clearly expressed from the language as written."); *cf. RBIII, L.P. v. City of San Antonio*, No. SA-09-CV-119-XR, 2010 WL 3516180, at *4–5 (W.D. Tex. Sept. 3, 2010) (refusing to infer a private cause of action from a local ordinance that did not expressly provide one). Thus, Plaintiffs cannot use the DJA as a backdoor enforcement mechanism. *See Collin Cnty.*, 915 F.2d at 171 ("It would be anomalous to allow a party who would not be a proper defendant nor able to intervene of right in a NEPA lawsuit to precipitate a judgment in such a suit between others by filing an action pursuant to the [DJA]."); *Jones v. Hobbs*, 745 F. Supp. 2d 886, 893 (E.D. Ark. 2010) ("To entertain, under the auspices of the [DJA], a cause of action brought by private parties seeking a

declaration that the [statutes] ha[ve] been violated would, in effect, evade the intent of Congress not to create private rights of action under those statutes and would circumvent the discretion entrusted to the executive branch in deciding how and when to enforce those statutes."), *aff'd sub nom. by Williams v. Hobbs*, 658 F.3d 842 (8th Cir. 2011).  Their DJA claim should be dismissed.

### 2.    Plaintiffs fail to state a claim under RICO.

Plaintiffs also claim that Lyft has committed RICO violations, but—fatally—Plaintiffs fail even to specify the subsection(s) of RICO under which they are filing suit.  *Compare* Compl. ¶¶ 102–05, *with* 18 U.S.C. § 1962(a)–(d) (2006) (setting forth four distinct RICO violations).  As a result, Lyft has no notice regarding the subsection of RICO upon which Plaintiffs base their claims, which should be dismissed for this reason alone.  *Atl. Gypsum Co. v. Lloyds Int'l Corp.*, 753 F. Supp. 505, 511 n.4 (S.D.N.Y. 1990) ("Failure to plead a specific subsection of § 1962 may alone constitute grounds to dismiss a RICO complaint, because it fails to inform defendants of the unlawful conduct in which they allegedly engaged."); *see also City of Driscoll v. Saenz*, No. CIV.A. C-06-543, 2007 WL 173232, at *8 (S.D. Tex. Jan. 17, 2007) (dismissing RICO claims under Rule 12(b)(6) and instructing Plaintiffs to replead and "[s]tate which [RICO] subsection or subsections were allegedly violated by the Defendants, and provide detail as to how the Defendants allegedly violated each subsection or subsections").

Regardless of which subsection Plaintiffs intend to invoke in this case, they must plead facts in support of at least three elements common to any RICO claim:  "'1) a *person* who engages in 2) a *pattern of racketeering activity*, 3) connected to the acquisition, establishment, conduct, or control of an *enterprise*.'"  *Real Estate Innovations, Inc. v. Houston Ass'n of Realtors, Inc.*, 422 F. App'x 344, 350 (5th Cir. 2011) (quoting *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995)); *accord Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007).  In addition, because Plaintiffs are private parties, they must plead and ultimately prove that they were

"injured in [their] business or property by reason of a violation of [RICO]." 18 U.S.C. § 1964(c) (2006); *see also Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998) (finding that to have standing under RICO a plaintiff "must satisfy two elements—injury and causation"). If Plaintiffs' factual allegations in support of each of these required elements are not "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true," *Twombly*, 550 U.S. at 555 (citation omitted), then Plaintiffs' RICO claim must be dismissed. *Oceanic Exploration Co. v. Phillips Petrol. Co. ZOC*, 352 F. App'x 945, 950–51 (5th Cir. 2009) (applying *Twombly* to RICO claims).

Plaintiffs' Complaint—which contains only conclusory allegations as to the elements of a RICO claim against Lyft, *see* Compl. ¶¶ 102–05 (reciting statutory language)—falls woefully short of this standard. First, Plaintiffs do not sufficiently plead a "pattern of racketeering activity" because the alleged predicate act of wire fraud is not pleaded with particularity under Federal Rule of Civil Procedure 9(b). Second, Plaintiffs fail to allege facts sufficient to demonstrate the existence of any type of RICO enterprise. Third, Plaintiffs fail to allege an injury proximately caused by Lyft's conduct, and thus lack standing to bring their RICO claim. And fourth, because Plaintiffs fail to establish a primary RICO claim, their RICO conspiracy claim necessarily fails. Accordingly, their RICO claims should be dismissed.[3]

> ### a.    Plaintiffs fail to plead a "pattern of racketeering activity" because they do not plead wire fraud with the requisite particularity.

Plaintiffs allege that Lyft engaged in "a pattern of racketeering activity" involving wire fraud. *See* Compl. ¶ 103. The predicate acts supporting Plaintiffs' RICO claim thus sound in

---

[3]     Because of the complexity and high legal costs of litigating civil RICO claims, courts around the country, including courts in the Southern District of Texas, have required parties asserting RICO claims to provide RICO case statements as a way of clarifying and providing greater detail on the nature of the claim. *See, e.g.*, *Porter v. Shearson Lehman Bros., Inc.*, 802 F. Supp. 41, 64–66 (S.D. Tex. 1992) (noting that the court had ordered plaintiff to file a RICO case statement and dismissing the RICO claim after the statement failed to provide substantive details).

fraud, and Rule 9(b) applies, such that Plaintiffs must plead their claim with particularity.  *See, e.g.*, *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) ("[Rule] 9(b) applies to . . . RICO claims resting on allegations of fraud.").  Among other things, Plaintiffs must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Id.* at 177–78.

Plaintiffs, however, fail to adequately plead any predicate act of wire fraud.  Wire fraud requires a plaintiff to establish (1) a scheme or artifice to defraud or to obtain money or property by means of false pretenses, (2) a use of the interstate wires for the purpose of executing the scheme, and (3) a specific intent to defraud either by revising, participating in, or abetting the scheme.  *See Hewlett-Packard Co. v. Byd:Sign, Inc.*, No. 6:05-CV-456, 2007 WL 275476, at *3 (E.D. Tex. Jan. 25, 2007).  Yet, Plaintiffs fail to allege facts plausibly suggesting that Lyft engaged in a scheme to defraud, nor do Plaintiffs identify how Lyft used interstate wires to execute such a scheme.  Even if Plaintiffs could make such a showing, they still fail to allege any specific intent to defraud Lyft's customers.  Because Plaintiffs fail to plead wire fraud with particularity, they cannot show a pattern of racketeering activity to support their RICO claim.

> **b.     Plaintiffs fail to allege facts sufficient to show a RICO enterprise.**

Plaintiffs likewise fail to plead a cognizable RICO enterprise.  "[T]he enterprise requirements are different depending upon which [RICO] subsection is allegedly violated."  *B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 168 n.2 (S.D.N.Y. 1995).  But no matter which RICO subsection Plaintiffs allege to have been violated here, Plaintiffs must specifically plead the existence of an enterprise that, at a minimum, (1) is separate and apart from the racketeering activity in which it has been alleged to engage, (2) is distinct from the RICO defendants, (3) has an ongoing organization, formal or informal, and (4) exists for purposes other than to engage in the predicate acts of racketeering.  *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir.

1989).  Those allegations must be *fact specific*; conclusory allegations are insufficient.  *See id.*

Once again, Plaintiffs' RICO allegations come nowhere close to meeting this burden. Indeed, Plaintiffs fail to identify *any enterprise*, much less one that was separate and apart from any alleged predicate acts, that is distinct from defendants, or that existed for purposes other than to engage in such acts.  *Id.*; *see also Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 230 (5th Cir. 2003) (holding that plaintiff's attempt to connect defendants in the commission of predicate RICO acts, without also demonstrating "the existence of an association [between the defendants] *separate* from the predicate acts," precluded a finding that a RICO enterprise existed) (emphasis added).  Instead, Plaintiffs' enterprise allegation amounts to a formulaic recitation of the statutory element, utterly void of the factual detail necessary to state a claim that can withstand a motion to dismiss.  *See Twombly*, 550 U.S. at 555.  This failure to plead a RICO enterprise—a fundamental requirement of any RICO claim—mandates dismissal of Plaintiffs' RICO claims.

### c.      Plaintiffs fail to allege an injury proximately caused by Lyft's purported RICO violations.

Finally, Plaintiffs' RICO claims are incurably flawed because an insufficient causal connection exists between Plaintiffs' alleged injury and Lyft's alleged RICO violations.  The Supreme Court explained in *Anza v. Ideal Steel Supply Corp.*, "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  547 U.S. 451, 461 (2006).  Applying that standard, the Supreme Court rejected a RICO claim brought by a company against its competitor, whom the company alleged was not paying taxes and therefore was able to undercut its prices without hurting its profits.  *Id.*  Specifically, it concluded that "[t]he cause of Ideal's asserted harms . . . is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)."  *Id.* at 458; *see also Downstream Envtl., L.L.C. v. Gulf Coast Waste*

*Disposal Auth.*, No. CIV.A. H-05-1865, 2006 WL 1875959, at *6–7 (S.D. Tex. July 5, 2006) (relying on *Anza* and dismissing plaintiff's RICO claim against its competitor, which was based on allegations that the competitor was violating "Texas permitting requirements and [] violating state and federal requirements for pretreating and disposing of waste," because the injury was only indirectly connected to the alleged RICO violation).

As in *Anza*, Plaintiffs' purported injuries in this case are not proximately caused by Lyft's alleged RICO violations.  Specifically, Plaintiffs' only alleged injury is that Lyft, "[b]y operating illegally," has "depriv[ed] the Plaintiffs of profits" and have "render[ed] valueless the licenses/permits owned by the Plaintiffs."  Compl. ¶¶ 98–99.  But this alleged injury is too attenuated from the alleged RICO violation.  *See Anza*, 547 U.S. at 460 ("A RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense.").  There is simply no direct relationship between Lyft's purported violation of city ordinances with no private right of action and Plaintiffs' alleged lost profits.  Thus, to the extent that Plaintiffs have alleged facts in support of a RICO claim—which is anything but clear from the Complaint—those facts do not show any proximate cause between Plaintiffs' alleged injury and the alleged RICO violation.

### d.      Plaintiffs also fail to establish a RICO conspiracy claim.

Plaintiffs' RICO conspiracy claim—which is limited to a single sentence in their 42-page Complaint, Compl. ¶ 105—falls with the underlying RICO claim.  *See Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 930 (5th Cir. 2002) (holding that failure to plead the requisite elements of a RICO claim under section 1962(a), (b), or (c) "implicitly means that [plaintiffs] cannot plead a conspiracy to violate [the subsections]").  Plaintiffs' conspiracy claim also fails because Plaintiffs have not sufficiently pleaded the necessary agreement between Defendants to perform the predicate acts.  *See Abraham*, 480 F.3d at 357 (requiring allegation

that defendants agreed to commit *two or more* predicate acts by some member of the conspiracy to sustain RICO conspiracy claim).  The conclusory allegation that Defendants have "conspired" is insufficient.  *See Crowe*, 43 F.3d at 206 ("While Crowe has pled the conclusory allegation that the defendants herein "conspired," nowhere does he allege facts implying any agreement to commit predicate acts of racketeering.  Therefore, Crowe's claim under [RICO] must also fail.").

>        **3.        Plaintiffs fail to state a claim under the Lanham Act.**

As with their RICO claims, Plaintiffs fail to allege facts sufficient to state a false advertising claim based on the Lanham Act.  A prima facie false advertisement claim under the Lanham Act requires five elements:  "(1) [a] false or misleading statement of fact about a product; (2) the statement deceived or had the capacity to deceive a substantial segment of potential consumers; (3) the deception was material; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue." *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distribution Co.*, 520 F.3d 393, 400 (5th Cir. 2008).  Plaintiffs' allegations do not satisfy these elements.

>        **a.        Plaintiffs fail to plead an actionable misrepresentation of fact, let alone one that actually or potentially materially deceived consumers.**

Critically, Plaintiffs fail to plead any actionable misrepresentation.  To begin with, Plaintiffs' allegations improperly lump together Defendants—two different companies operating two different businesses.  As a result, the purported misrepresentations underlying the claim *against Lyft* are far from clear.  *Cf. Petri v. Kestrel Oil & Gas Props., L.P.*, No. Civ. A. H-09-3994, 2011 WL 2181316, at *7 (S.D. Tex. June 3, 2011) (stating that defendants are "entitled to . . . factual pleading distinguishing plausible claims against each Defendant individually").

Given its most charitable reading, the Complaint appears to allege four types of "misrepresentations" at issue in the Lanham Act claim:  Defendants purportedly misrepresent

(1) their function as "ridesharing" companies, (2) their ability to operate legally in Houston and San Antonio, (3) their insurance coverage, and (4) the safety of their platforms' users.  *See* Compl. at ¶¶ 19–35.  Critically, each of these alleged misrepresentations would require a judicial determination that the Houston and San Antonio ordinances apply to Lyft's ridesharing platform and that they have been violated.  For example, Plaintiffs allege that Defendants misrepresent themselves to be "ridesharing" companies "to avoid the regulatory oversight that applies to their transportation services," Compl. ¶¶ 66, 58, 60–61; that their insurance coverage "failed to meet local regulations," Compl. ¶ 87; and that they "put[] passengers in a completely vulnerable position" because they "blatantly ignore the regulations that were established in Houston and San Antonio to protect the public welfare."  Compl. ¶ 90.  But Plaintiffs cannot use the Lanham Act to enforce ordinances that do not contain private rights of action.  *See IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 374 (5th Cir. 2002) ("[D]efendants' failure to label the product in keeping with FHSA regulations [which do no create a private right of action], even if true, does not constitute a false or misleading statement that is actionable under the Lanham Act.").

Even if these alleged misrepresentations were somehow actionable, Plaintiffs fail to plead that any representation by Lyft is literally false or even likely misleading.  "In order to obtain monetary damages or equitable relief in the form of an injunction, a plaintiff must demonstrate that the commercial advertisement or promotion is either literally false, or that [if the advertisement is not literally false,] it is likely to mislead and confuse consumers." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000) (internal quotation marks omitted).  "If the statement is shown to be misleading, the plaintiff must also introduce evidence of the statement's impact on consumers, referred to as materiality," which requires proof that consumers were actually deceived by or were misled by the defendant's statements. *Id.* at 495,

497–98.  Plaintiffs make no attempt to satisfy these criteria in their Complaint.

*"Ridesharing" Misrepresentations.*    According to Plaintiffs, Lyft misrepresents its services as "[o]n-demand ridesharing" or "an on-demand ride share platform" because Lyft "charges fares to its customers, and also advertises pricing for Houston and San Antonio on its website."  Compl. ¶¶ 64–65.  Apart from the fact that Plaintiffs themselves cannot settle on a single definition of "ridesharing,"[4] Plaintiffs concede that "[t]he Lyft website states that 'drivers collect donations for rides' in both Houston and San Antonio and that '[i]n some markets, donations are voluntary.'"  *See* Compl. ¶ 73 (quoting Lyft website); Dkt. No. 1-8 at 85–86, 122–23.  Plaintiffs fail to plausibly allege that Lyft misrepresents its business model as a ridesharing company in light of Lyft's disclosures concerning voluntary donations in the Houston and San Antonio markets.  *See* Dkt. No. 1-8 at 85–86, 122–23 (quoting Lyft's terms of service and website concerning donations).    But even if Lyft's characterization of its business as a ridesharing platform were somehow misleading, Plaintiffs fail to sufficiently allege that such representations resulted in consumer deception.  *See, e.g.*, *Pizza Hut*, 227 F.3d at 503–04 (finding no materiality due to lack of evidence "demonstrating that the [allegedly misleading] slogan had the tendency to deceive consumers so as to affect their purchasing decisions").

*Legality Misrepresentations.*    Although Plaintiffs allege that Defendants have misrepresented the legality of their businesses, Plaintiffs *fail to identify a single statement* made by Lyft about its compliance with local or state law, much less facts showing such a statement to

---

[4]       For example, Plaintiffs cite the American Heritage Dictionary, which defines ridesharing as "[t]he act or an instance of sharing motor vehicle transportation with another or others, especially [but not exclusively] among commuters," Compl. ¶ 59—a definition with which Lyft's use of the term ridesharing is entirely consistent. Plaintiffs also cite the law governing federal-aid highways, 23 U.S.C. § 101 (2012), but they quote from subsection (3), which defines "carpool projects" for purposes of federal-aid highways, not "ridesharing" per se or for purposes of Texas' local transportation ordinances.  Finally, Plaintiffs cite section 46-1 of the City of Houston's definition of "for hire," which states that the term "expressly excludes carpooling or ride sharing arrangements for which no fee is imposed."  *Id.* ¶ 60.  As noted above, drivers using Lyft's platform may collect donations from riders, but they are expressly prohibited from requesting, let alone imposing, a fee.  *See* Dkt. No. 1-8 at 85-86.

be false.  *See* Compl. ¶¶ 73–77.  These failures warrant dismissal.  *See* Mem. & Order at 14, *Boston Cab Dispatch, Inc., et al. v. Uber Techs., Inc.*, Civ. A. No. 1:13-cv-10769-NMG (D. Mass. Mar. 27, 2014), ECF No. 43 (dismissing plaintiffs' Lanham Act claim premised on alleged misrepresentation by Uber that its service is lawful because the complaint "[did] not identify a representation in which Uber states explicitly or conveys by necessary implication that Uber assigned taxis are operating lawfully").

Additionally, because Plaintiffs do not allege that there has been any adjudicative finding that the Lyft platform fails to comply with any ordinance (indeed, there has not been), Plaintiffs fail to sufficiently plead how any of Lyft's purported representations concerning its ability to operate legally in Houston and San Antonio could be literally false or materially misleading.  In fact, any such representations are, at most, legal opinions, not actionable representations of fact. *See Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484, 485 (D.C. Cir. 1996) (considering taxicab regulations related to corporate account services, which the Taxicab Commission had not yet decisively interpreted, and refusing to allow a "contested question of statutory interpretation rather than a clearly established fact" to form the basis of a Lanham Act claim).

*Insurance Misrepresentations.*  Plaintiffs similarly fail to identify any false statements made by Lyft concerning its insurance coverage.  Plaintiffs fault Lyft for representing itself to have a "first-of-its-kind $1,000,000 liability insurance" policy, but Plaintiffs fail to allege how this statement is false or misleading.  *See* Compl. ¶ 89.  Indeed, Plaintiffs admit that they know nothing about Lyft's insurance coverage other than what is provided in Lyft's Terms of Service. *Id.*; Dkt. No. 1-9 at 3 (admitting that Plaintiffs have been "unable to identify the insurer who Lyft purports to use to support its operations").  Instead, they allege facts concerning *Uber's* insurance coverage and representations about that coverage and then speculate that *Lyft's*

insurance is probably the same.  Compl. ¶ 89.  But conjecture and speculation cannot form the proper basis for a cause of action.  *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").  And, to the extent that Plaintiffs take issue with Lyft referring to its insurance coverage as "first-of-its-kind," this kind of statement is also non-actionable "puffery."  *See Sw. Recreational Indus., Inc. v. FieldTurf, Inc.*, No. 01-50073, 2002 WL 32783971, at *3 (5th Cir. 2002) ("[P]uffery comes in two forms:  (1) an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying; or (2) a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion.") (internal quotation marks omitted).

Plaintiffs further attempt to create a misrepresentation by conflating two distinct provisions of Lyft's terms of service—the insurance section and the limitation of liability section—and asserting that the latter somehow undermines the former.  Compl. ¶ 89; *see also id.* ¶ 85; Dkt. No. 1-8 at 85, 87, 98.  But the fact that Lyft expressly limits its liability to participants who use the Lyft platform does not mean that Lyft has no liability insurance to cover certain claims (such as personal injury by riders).  In any event, Plaintiffs fail to adequately allege actual or potential material consumer deception from Lyft's statements about its insurance coverage.

*Safety Misrepresentations.*  Finally, like Lyft's statement that its insurance is the "first-of-its-kind," Lyft's alleged statements that it "go[es] the extra mile for safety" and that "safety is [Lyft's] top priority," see Compl. ¶ 94, are not actionable.  *See Sw. Recreational*, 2002 WL 32783971, at *3 (false advertising complained of must involve, at the very least, a "misleading statement of fact" as opposed to mere "puffery").  Plaintiffs' allegation that Lyft misrepresents the safety of its platform's users is further undermined by Plaintiffs' own concession that Lyft

expressly disclaims any such representations:

> Lyft does not offer transportation services and Lyft is not a transportation company.  We are not involved in the actual transportation provided by Drivers to Riders.  As a result, we have no control over the quality or safety of the transportation that occurs as a result of the Service . . . .

Compl. ¶ 94; Dkt. No. 1-8 at 85, 87, 98.  Plaintiffs fail to plausibly explain how Lyft could have possibly misrepresented the safety of its users in light of these disclosures.  And, once again, Plaintiffs do not sufficiently allege actual or potential material consumer deception in connection with any actionable statement about the safety of Lyft's platform.  Plaintiffs simply fail to allege any Lyft safety representations that could be construed as literally false or even misleading.

> **b.     Plaintiffs plead no injury proximately caused by any misrepresentation.**

Finally, Plaintiffs do not plead any injury proximately caused by an alleged misrepresentation.  "To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014).  Given Plaintiffs' failure to plausibly allege that Lyft's advertising was false or misleading with respect to Lyft's business model, legality, insurance, or safety—let alone that any such misrepresentation actually deceived or misled consumers—it is unsurprising that Plaintiffs also have not adequately alleged an injury proximately caused by any such misrepresentation.  This failure, too, warrants a dismissal.

> **4.     Plaintiffs fail to state a claim under Texas unfair competition law.**

As with their other claims, Plaintiffs fail to state what facts form the basis of their Texas common law unfair competition claim.  "The tort [of unfair competition] requires that the plaintiff show an illegal act by the defendant which interfered with the plaintiff's ability to conduct its business."  *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000).

Plaintiffs, however, merely assert that "Defendants have committed various illegal acts as shown herein, which have interfered with the Plaintiffs' ability to conduct their businesses."  Compl. ¶ 109.  These allegations do not identify the predicate acts on which their unfair competition claim is based, and Plaintiffs' unfair competition claim should be dismissed for this reason alone.

Moreover, the only predicate acts for an unfair competition claim that are even conceivable from the face of Plaintiffs' Complaint do not give rise to a cognizable unfair competition claim as a matter of law.  To the extent that Plaintiffs are basing their unfair competition claim on Lyft's alleged violations of city ordinances, the absence of a private cause of action in those ordinances precludes them from doing so.  *Cf. SCI Tex. Funeral Servs., Inc. v. Hijar*, 214 S.W.3d 148, 154–55 (Tex. App.—El Paso 2007, pet. denied) ("Nor may a plaintiff create a private cause of action by alleging a violation of an FTC regulation [that had no private right of action] to satisfy an element of a state common law claim."); *see also Taylor*, 216 F.3d at 486 (overturning jury verdict on unfair competition claim because plaintiff could not establish an independent act that was illegal or otherwise tortious); *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904–05 (Tex. App.—Dallas 1989, writ denied) (same).  And to the extent that Plaintiffs are basing their unfair competition claim on Lyft's alleged RICO or Lanham Act violations, the unfair competition claim fails for the same reasons that those claims fail.  *See, e.g.*, *In re Superior Air Parts, Inc.*, 486 B.R. 728, 743 (Bankr. N.D. Tex. 2012) ("[T]he Court concludes that the trade secret misappropriation claim is insufficiently pled under *Iqbal* and *Twombly* and thus no liability for unfair competition can be found either.").  Because Plaintiffs fail to plead a viable independent tort for their unfair competition claim, it should be dismissed.  *See, e.g.*, *Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921, 938–41 (S.D. Tex. 2004) (Lake, J.) (dismissing unfair competition claim pursuant to Rule 12(b)(6) where plaintiff failed to state a

viable, independently tortious claim), *aff'd*, 192 F. App'x 874 (5th Cir. 2005).

**B.      Alternatively, this Court should dismiss or stay this case under the *Burford* abstention doctrine.**

In the alternative, the Court should abstain from exercising its jurisdiction pursuant to the *Burford* abstention doctrine because at the heart of Plaintiffs' claims are purely state law questions and the relief sought in this action would interfere with the regulatory scheme established by Texas law.  Plaintiffs admit that the cities of Houston and San Antonio have a mandatory obligation under Texas state law to regulate certain transportation services,[5] and Plaintiffs cite various city ordinances that they claim are being violated, yet Plaintiffs brought this lawsuit to circumvent this comprehensive state and local regulatory scheme.

"[A]bstention is appropriate whether jurisdiction is premised on diversity jurisdiction or otherwise, if the federal courts should, consistent with our federal system, afford comity to state governments in carrying out their domestic policy." *Sierra Club v. City of San Antonio*, 112 F.3d 789, 795 (5th Cir. 1997); *see also Burford v. Sun Oil Co.*, 319 U.S. 315, 332 (1943) (exercising discretion to abstain from deciding "basic problems of Texas policy" where question presented was state agency's application of complex state regulatory scheme subject to state judicial review).  The Supreme Court has explained that *Burford* abstention is proper "[w]here timely and adequate state-court review is available," and "where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of public concern.'" *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (quoting *Colo. River Water Conservation Dist. v. United*

---

[5]      *See, e.g.*, Compl. ¶ 41 ("The City of Houston . . . has a statutory duty to regulate and control taxicab transportation services."); *id.* ("Section 215.004 also provides guidance on what a city might include in its regulations in order to protect the public"); ¶ 42 ("In exercising its mandatory obligations to regulate taxicabs pursuant to Section 215.004 of the Texas Local Government Code, Houston has set forth numerous requirements in the City of Houston Code of Ordinances."); ¶ 47 ("In the City of San Antonio . . . , the operation of vehicles for hire is governed by its City Code of Ordinances Chapter 33.").

*States*, 424 U.S. 800, 814 (1976)).

Although there is no formulaic test for deciding whether *Burford* abstention is appropriate, the Fifth Circuit has identified five factors that should be considered:  "(1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review."  *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993) (citations omitted).  These factors support the conclusion that *Burford* abstention is appropriate in this case.

As to the first factor, "*Burford* abstention does not so much turn on whether the plaintiff's cause of action is alleged under federal or state law, as it does on whether the plaintiff's claim may be in any way entangled in a skein of state law that must be untangled before the federal case can proceed."  *Sierra Club*, 112 F.3d at 795 (internal quotation marks omitted).  Although Plaintiffs have framed their claims as arising under federal law, the underlying issues present purely state law questions.  As the Complaint makes clear, the crux of Plaintiffs' contentions is that Defendants' services violate Houston and San Antonio ordinances.  Compl. ¶¶ 100–01.  Plaintiffs not only seek a declaratory judgment from this Court that Defendants violate such ordinances; Plaintiffs also predicate their RICO, Lanham Act, and unfair competition claims on Defendants' purported failure to comply with these ordinances and alleged misrepresentations about their ability to operate legally in those cities.  The interpretation of Defendants' legal rights and obligations under municipal ordinances, however, presents purely state law questions.  Thus, the first factor weighs in favor of *Burford* abstention.

On the second factor, Defendants' compliance with these ordinances is an unsettled issue of state law.  The local administrative bodies charged with implementing and enforcing the

ordinances have yet to adjudicate Defendants' compliance.  Moreover, these bodies are already considering proposed changes to the ordinances in light of Defendants' entries into the respective markets.  *See, e.g.*, Ex. 2.  Because the state law remains unsettled and there is a "skein of state law" issues that must be untangled, the second factor weighs in favor of *Burford* abstention. *Sierra Club*, 112 F.3d at 795.

With respect to the third, fourth, and fifth factors, the regulation of local taxicabs and limousines, and the applicability of such regulations to ridesharing platforms, are questions of local law that local authorities are already actively analyzing and addressing.  These matters of local concern fall within the state's traditional police power.  The State of Texas has delegated the regulation of these entities to state municipalities, TEX. LOC. GOV'T CODE ANN. § 215.004 (West 2008) (entitled "Taxicabs"), and has a significant interest in maintaining this coherent regulatory scheme.  Moreover, Houston and San Antonio provide a public forum for Plaintiffs' grievances, and the Texas municipal and state courts provide a forum for enforcing the applicable regulations.  By contrast, the federal courts have little interest in hearing this case, and federal intervention will only confuse an ongoing state scheme.  *Cf. Dial A Car*, 82 F.3d at 488–89 ("[W]e see no reason to reach out and apply federal law to this quintessentially local dispute, and neither appellant nor our dissenting colleague cites to any Supreme Court or federal appellate decision that authorizes us to do so.").  These factors thus also support abstention.

Because the relief sought here would interfere with the regulatory scheme established by Texas law, the Court should abstain from exercising jurisdiction under *Burford*.

## IV.    CONCLUSION

Plaintiffs fail to state any viable claims against Lyft, and the Complaint should be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  Alternatively, this Court should dismiss or stay this action pursuant to the *Burford* abstention doctrine.

Dated:  May 5, 2014                    Respectfully submitted,

                                       BAKER BOTTS L.L.P.


                                       By: */s/ Danny David*                      
                                             Danny David
                                             Attorney-In-Charge
                                             danny.david@bakerbotts.com
                                             Texas Bar No. 24028267
                                             One Shell Plaza
                                             910 Louisiana Street
                                             Houston, Texas  77002
                                             Telephone: (713) 229-4055
                                             Facsimile:   (713) 229-2855

                                       *Attorneys for Defendant Lyft Inc.*

OF COUNSEL

Paul R. Elliott
State Bar No. 06547500
paul.elliott@bakerbotts.com
Amy Pharr Hefley
State Bar No. 24046046
amy.hefley@bakerbotts.com
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas  77002
Telephone:  713.229.1234
Facsimile:  713.229.1522

Lauren Tanner Bradley
State Bar No. 24066177
lauren.bradley@bakerbotts.com
BAKER BOTTS L.L.P.
98 San Jacinto Blvd., Suite 1500
Austin, Texas  78701
Telephone:  512.322.2544
Facsimile:  512.322.3644

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 5th day of May, 2014, a true and correct copy of the foregoing was served by the Court's Electronic Case Filing System on all counsel of record.


*/s/ Danny David*
Danny David