**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| Greater Houston Transportation Company; Fiesta Cab Company; Houston Transportation Services, LLC; National Cab Co., Inc.; Pasadena Taxi Co., Inc.; Dawit Sahle; Mersha Ayele; Mohamed Didi; Greater San Antonio Transportation Company; and Enterprise Transportation Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Uber Technologies, Inc.; and Lyft, Inc., <br><br> Defendants. | Case No. 4:14-cv-00941 |

**DEFENDANT UBER TECHNOLOGIES, INC.'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDING.................................................. vii

STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ........................................ vii

INTRODUCTION ............................................................................1

FACTUAL ALLEGATIONS ....................................................................2

ARGUMENT ..............................................................................3

I.      Plaintiffs Fail to State a Lanham Act Claim .................................................3

        A.      Plaintiffs Cannot Use the Lanham Act to Enforce Local Ordinances ....................4

        B.      Plaintiffs Fail to Properly Allege That the Misrepresentations Proximately
                Caused Them Damages...................................................................6

        C.      Plaintiffs Fail to Properly Allege Uber Made Misrepresentations.........................9

                1.      Uber's Alleged Misrepresentation That It Is a "Ridesharing"
                        Company Is Not Actionable..................................................9

                2.      Uber's Alleged Reference to Drivers as "Partners" Is Not
                        Actionable .................................................................10

                3.      Uber's Alleged Misrepresentation That It Meets Local Regulations
                        Is Not Actionable ..........................................................11

                4.      Plaintiffs Do Not Properly Allege Any Misrepresentations
                        Regarding Insurance Coverage ...............................................11

II.     Plaintiffs Fail to State a Tortious Interference Claim .......................................14

        A.      Plaintiffs Fail To Allege That Uber Specifically Intended To Interfere ...............14

        B.      Plaintiffs Fail to Identify Any Independently Unlawful or Tortious
                Conduct by Uber .......................................................................15

        C.      Plaintiffs Fail To Allege That Uber Proximately Caused Their Alleged
                Injuries ...............................................................................16

        D.      Plaintiffs Fail to Identify Any Actual or Reasonably Probable Business
                Relation ...............................................................................17

III.    Plaintiffs Fail to State a Common-Law Unfair Competition Claim .................................18

IV.     Plaintiffs' Request for Permanent Injunction Should Be Dismissed ................................. 19

V.      The Court Should Abstain From Deciding This Municipal Issue .................................... 20

CONCLUSION ................................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

### Cases

*Baty v. ProTech Ins. Agency,*
  63 S.W.3d 841 (Tex. App.—Houston [14th Dist.] 2001)......................................14

*Smith v. Eagle Star Ins. Co.,*
  370 S.W.2d 448 (Tex. 1963)......................................................................13

*ALPO Petfoods, Inc. v. Ralston Purina Co.,*
  720 F. Supp. 194 (D.D.C. 1989)..................................................................11

*Anza v. Ideal Steel Supply Corp.,*
  547 U.S. 451 (2006)..............................................................................7, 8

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).........................................................................3, 8, 19

*Astoria Indus. of Iowa, Inc. v. SNF, Inc.,*
  223 S.W.3d 616 (Tex. App. 2007)..................................................................15

*Bell Atl. Corp. v. Twombly,*
  127 S. Ct. 1955 (2007).............................................................................3

*Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.,*
  CIV.A. 13-10769-NMG, 2014 WL 1338148 (D. Mass. Mar. 27, 2014)........................6, 8, 9

*Bradford v. Vento,*
  48 S.W.3d 749 (Tex. 2001).......................................................................15

*Clock Spring, L.P. v. Wrapmaster, Inc.,*
  No. 05-CV-0082, 2008 WL 6759952 (S.D. Tex. Feb. 12, 2008) ...........................18

*Coinmach Corp. v. Aspenwood Apartment Corp.,*
  417 S.W. 3d 909 (Tex. 2013)......................................................................14

*Decks Appeal v. GTE Directories Sales Corp.,*
  81 F.3d 154 (5th Cir. 1996) .....................................................................16

*Dial A Car, Inc. v. Transp., Inc.,*
  884 F. Supp. 584 (D.D.C. 1995)..........................................................5, 6, 10, 11

*Dial A Car, Inc. v. Transportation, Inc.,*
  82 F.3d 484 (D.C. Cir. 1996).............................................................4, 5, 10, 11

*Dresser-Rand Co. v. Virtual Automation, Inc.,*
  361 F.3d 831 (5th Cir. 2004) .....................................................................18

*Funes v. Villatoro,*
  352 S.W.3d 200 (Tex. App. 2011).................................................................16

*IQ Prods. Co. v. Pennzoil Prods. Co.*,
    305 F.3d 368 (5th Cir. 2002) ...................................................................................4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014) ....................................................................................7, 8

*M.D. v. Perry*,
    799 F. Supp. 2d 712 (S.D. Tex. 2011) ...................................................................19

*M-I LLC v. Stelly*,
    733 F. Supp. 2d 759 (S.D. Tex. 2010) ...................................................................17

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*,
    491 U.S. 350 (1989) .........................................................................................19

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
    227 F.3d 489 (5th Cir. 2000) ............................................................................9, 14

*Playboy Enters., Inc. v. Editorial Caballero, S.A. de C.V.*,
    202 S.W. 3d 250 (Tex. App.—Corpus Christi 2006, pet. denied) .........................17

*Rimkus Consulting Grp., Inc. v. Cammarata*,
    688 F. Supp. 2d 598 (S.D. Tex. 2010) ...............................................................15, 16

*Rios v. City of Del Rio, Tex.*,
    444 F.3d 417 (5th Cir. 2006) .................................................................................3

*SP Midtown, LTD v. Urban Storage, L.P.*,
    No. 14-07-00717, 2008 WL 1991747 (Tex. App.—Houston [14th Dist.] 2008) ...................17

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*,
    902 F.2d 222 (3d Cir. 1990).................................................................................6

*Symetra Life Ins. Co. v. Rapid Settlements Ltd.*,
    612 F. Supp. 2d 759 (S.D. Tex. 2007) ...................................................................19

*ThermoTek, Inc. v. WMI Enterprises, LLC*,
    No. 10-CV-2618-D, 2011 WL 1485421 (N.D. Tex. Apr. 19, 2011) .........................17

*Valdez v. Colonial Cnty. Mut. Ins. Co.*,
    994 S.W.2d 910 (Tex. App. 1999)......................................................................13, 14

*Wilson v. Valley Elec. Membership Corp.*,
    8 F.3d 311 (5th Cir. 1993) ...............................................................................19, 20

*Yellow Grp. LLC v. Uber Technologies Inc.*,
    12 C 7967, 2014 WL 3396055 (N.D. Ill. July 10, 2014) ........................................6

*Zervas v. Faulkner*,
    861 F.2d 823 (5th Cir. 1988) .................................................................................8

## **Statutes**

Lanham Act, 15 U.S.C. § 1125(a)(1)(B) ................................................................2

Tex. Bus. Orgs. Code Ann. § 152.051 ...........................................................................10

### **Miscellaneous**

*Webster's New World College Dictionary* 1050 (4th ed. 2008) .....................................................10

## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs are taxicab and limousine companies asserting several causes of action against Defendants Uber Technologies, Inc. and Lyft, Inc. based primarily on violations of municipal ordinances and alleged misrepresentations. Plaintiffs filed their Complaint on April 8, 2014 and in their Complaint sought a temporary restraining order (TRO). The Court held a hearing on April 21, 2014, denied Plaintiffs' request for a TRO, and set a briefing schedule for Defendants' motions to dismiss. Plaintiffs filed an amended complaint on May 12, 2014, which added several new individual defendants and added a new claim, among other changes. After new municipal ordinances were passed, Plaintiffs dropped their request for a preliminary injunction and were permitted leave to file their Second Amended Complaint (SAC).

## STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

Uber respectfully requests the Court determine that Plaintiffs' Second Amended Complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The legal standard for evaluating this issue is set forth in the body of this motion.

Uber also respectfully requests the Court to determine that it should exercise its discretion to decline jurisdiction over Plaintiffs' Complaint. The legal standard for evaluating this issue is also set forth in the body of this motion.

## INTRODUCTION

After the City of Houston passed ordinances specifically aimed at regulating ridesharing transportation services, this case should have been over.  The political body that represents the residents of Houston has welcomed Uber as a legitimate enterprise that satisfies the previously unmet demand for connecting riders to safe, reliable, and affordable transportation.  Uber said at the outset that this is a dispute properly resolved in the political sphere, and the new Houston regulations prove that.

The new regulations gutted Plaintiffs' claims, which were premised on the allegation that Uber violated local municipal transportation ordinances.  Plaintiffs' Second Amended Complaint, which attempts to revise their claims to avoid the inevitable dismissal of their suit, fails to state any claims.

*First*, Plaintiffs allege a violation of the Lanham Act and that Uber made four alleged misrepresentations: (1) Uber says it offers a "ridesharing" service; (2) Uber calls its third-party drivers "partners"; (3) Uber claims to comply with local ordinances; and (4) Uber misrepresented its insurance policy.  But as both the Fifth and D.C. Circuits have held, the Act cannot be used to interpret and apply local ordinances, as Plaintiffs would have this Court do.  Further, Plaintiffs have not alleged the four alleged misrepresentations proximately caused any of their alleged injuries.  Nor have they alleged that Uber even made any express misrepresentations.  The Lanham Act claim should be dismissed.

*Second*, Plaintiffs assert tortious interference claims, alleging that Uber interferes with both actual and prospective business relations between Plaintiffs and potential taxicab drivers.  But Plaintiffs offer little more than a recitation of the elements of the causes of actions.  They fail to (1) adequately allege that Uber acted with specific intent to interfere with any of their actual or prospective business relations; (2) adequately allege proximate cause; (3) identify any reasonably probable business relations subject to interference; and (4) identify any tortious conduct.

*Third*, Plaintiffs' unfair-competition claim is a piggy-back cause of action that is based on other alleged violations.  Because Plaintiffs have failed to state any other claim, their unfair-

competition claim should also be dismissed.  *Fourth*, Plaintiffs have failed to allege any irreparable harm, and their request for injunctive relief should be dismissed.  *Fifth*, this is a dispute that should remain in the political sphere, and under the doctrine of *Burford* abstention, the Court should abstain from resolving this dispute.

Uber respectfully requests that the Court dismiss the SAC with prejudice.  Dismissal with prejudice is appropriate here because this is Plaintiffs' third attempt at pleading a claim.

## FACTUAL ALLEGATIONS

Plaintiffs are taxicab and town car permit holders in the cities of Houston and San Antonio.  SAC ¶¶ 1, 4–13.  Uber has described its business in its brief opposing Plaintiffs' request for a temporary restraining order.  *See* Dkt. No. 10 at 3–5.  In short, Uber is a software company that has developed and offers to the public an easy-to-use smartphone application ("app") that allows individuals to request transportation from several types of third-party transportation providers.  *Id.* at 3.  Uber does not own vehicles, nor does it employ drivers.  *Id.*

Plaintiffs allege that Uber operates a taxicab service in Houston and San Antonio without complying with the applicable city ordinances.  SAC ¶¶ 22–24.  They also claim that Uber makes a number of misrepresentations to consumers, including that Uber (1) misrepresents itself as a "ridesharing" service, *id.* at ¶¶ 47–50, (2) misrepresents that the drivers who use Uber's app are its "partners," *id.* at ¶¶ 55–57; (3) falsely claims that Uber complies with local regulations, *id.* at ¶¶ 64–66; (4) and misrepresents the extent of its insurance coverage, *id.* at ¶¶ 74–88. Plaintiffs allege that Uber's conduct has injured Plaintiffs by (1) diverting profits from Plaintiffs to Uber and (2) diluting the vehicle-for-hire market, resulting in lost profits and interference with "the Plaintiffs' ability to conduct their businesses."  *Id.* at ¶¶ 100–02.

Plaintiffs attempt to state three causes of action.  First, they allege a violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  *Id.* at ¶¶ 90–92.  Second, they allege tortious interference with actual and prospective business relations.  *Id.* at ¶¶ 93–100.  Third, they assert a common-law claim for unfair competition under Texas law.  *Id.* at ¶¶ 101–02.

On August 6, 2014, the Houston City Council approved amendments to the City of Houston Code of Ordinances to allow for the regulation of ridesharing transportation services. App. Ex. 1.  The amended Chapter 46 Vehicle for Hire Ordinance now refers to such services as "Transportation Network Companies" and allows them to operate in Houston according to various rules and regulations.  *Id*. at 3–11.

## ARGUMENT

To survive a Rule 12(b)(6) motion, a complaint's factual allegations must raise "a right to relief above the speculative level on the assumption that all allegations in the complaint are true[.]"  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 1974.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  In parsing out which facts the Court will assume to be true for purposes of deciding a motion to dismiss, it should exclude mere "conclusory allegations or legal conclusions masquerading as factual conclusions."  *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotations & citation omitted).

## I.     Plaintiffs Fail to State a Lanham Act Claim

Plaintiffs' SAC asserts a Lanham Act claim based on alleged misrepresentations by Uber. SAC ¶¶ 46–88, 90–92.  In this latest Complaint, Plaintiffs have revised the misrepresentations at issue, deleting some, adding some, and changing others.[1]  But Plaintiffs still fail to allege any actionable representations, and still fail to allege the representations caused them any injury.

---

[1]   The First Amended Complaint (FAC) alleged that Uber made four types of misrepresentations to consumers.  Plaintiffs alleged that Uber (1) misrepresents itself as a "ridesharing" company, FAC ¶¶ 88–91; (2) falsely claims that Uber complies with local regulations, *id.* at ¶¶ 95–100; (3) misrepresents the extent of its insurance coverage, *id*. at ¶¶ 106–12; and (4) makes misrepresentations regarding safety, *id.* at ¶¶ 115–19.

The SAC alleges that Uber (1) misrepresents itself as a "ridesharing" service, *id.* at ¶¶ 47–50, (2) misrepresents that the drivers who use Uber's app are its "partners," *id.* at ¶¶ 55–57; (3) falsely claims that Uber complies with local regulations, *id.* at ¶¶ 64–66; (4) and misrepresents the extent of its insurance coverage, *id.* at ¶¶ 74–88.

### A.    Plaintiffs Cannot Use the Lanham Act to Enforce Local Ordinances

Several courts have held that a plaintiff cannot use the Lanham Act to transform local laws into federal causes of action, but Plaintiffs' Lanham Act claim would require the Court to do just that.  At least three of the four alleged misrepresentations would require interpreting and applying local ordinances.[2]  Plaintiffs lack standing, however, to assert violations of local law.

The Fifth Circuit has said that the Lanham Act is not a "'handy device to reach and decide all sorts of local law questions.'"  *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 374 (5th Cir. 2002) (quoting *Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484, 490 (D.C. Cir. 1996)).  In *IQ Products*, the court affirmed the district court's granting of summary judgment for the defendant where the defendant's alleged Lanham Act violation was based on its alleged failure to label its products in compliance with the Federal Hazardous Substances Act ("FHSA").  305 F.3d at 372–74.  The court noted that "the FHSA does not create a private cause of action" and that it "vests the [Consumer Product Safety Commission] with the authority to enforce federal labeling requirements."  *Id.* at 374.  But the Commission had decided not to take action regarding the defendant's allegedly deficient product labeling, and in light of the Commission's decision not to act, the plaintiff could not "seek[] to enforce the labeling requirements of the FHSA—an action which the CPSC, the enforcing agency, declined to do."  *Id.*  Accordingly, "the defendants' failure to label the product in keeping with FHSA regulations, *even if true*, does

---

    2   SAC ¶¶ 47–50 (alleging that Uber is a "for hire" vehicle under municipal ordinances and not a "ridesharing" company); *id.* at ¶¶ 64–73 (alleging that Uber falsely represents that drivers "meet[] all local regulations"); *id.* at ¶¶ 74–79 (alleging that Uber misrepresents its insurance coverage as "meet[ing] all local regulations" and as better than what the Houston ordinances require of taxicabs).

not constitute a false or misleading statement that is actionable under the Lanham Act." *Id.* (affirming grant of summary judgment on Lanham Act claim).

Similarly, in *Dial A Car*, the D.C. Circuit held that a limousine company could not use the Lanham Act to enforce local limousine rules against two taxicab companies that were using their taxicabs as a limousine service. 82 F.3d at 485–88.  The limousine company alleged that the taxicab companies, by using taxicabs for limousine-like service, were violating a local limousine regulation from the D.C. Taxicab Commission. *Id.* at 485–86.  But the regulation did not have a private right of action, so the plaintiffs tried to enforce the regulation indirectly by pleading a false-advertising claim under the Lanham Act based on the taxicab companies' alleged misrepresentation that they could operate legally. *Id.* at 486.

The D.C. Circuit saw the limousine companies' claim for what it really was: "the alleged misrepresentation of fact upon which [the plaintiff] has premised its Lanham Act claim is more appropriately viewed as a disagreement about the proper interpretation of local taxicab regulations promulgated by the D.C. Taxicab Commission." *Id.* at 485.  And because the taxicab commission had not yet resolved the conflicting interpretations, the "misrepresentation" at issue was "a contested question of statutory interpretation rather than a clearly established fact," and therefore the "statements at issue cannot form the basis of a Lanham Act claim." *Id.*

The holdings in *IQ Products* and *Dial A Car* apply squarely here.  Like those cases, the enabling Texas statute, Section 215.004(a) of the Texas Local Government Code, vests enforcement authority in *municipalities*, not private entities such as Plaintiffs, and neither municipal ordinance contains any private enforcement mechanism.  SAC ¶ 22.  Like the plaintiffs in those cases, Plaintiffs here are "simply using the Lanham Act to try to enforce [their] preferred interpretation of [local taxicab regulations] instead of adjudicating the issue before the Commission." *Dial A Car*, 82 F.3d at 488.  And like the plaintiffs in *Dial A Car*, Plaintiffs here allege Uber misrepresents that it complies with local regulations, but as the D.C. Circuit held, "[i]nstead of bringing this claim in federal court, [Plaintiffs] should be forced to take [their] arguments to the [taxicab commission] and lobby the [c]ommission to crack down on [Uber's]

activities." *Id.* at 490.  Other courts have similarly applied *Dial A Car* to dismiss claims asserted by taxicab companies against Uber.  *Manzo v. Uber Technologies, Inc.*, 13 C 2407, 2014 WL 3495401, at *3–4 (N.D. Ill. July 14, 2014); *Yellow Grp. LLC v. Uber Technologies Inc.*, 12 C 7967, 2014 WL 3396055, at *7 (N.D. Ill. July 10, 2014).  Plaintiffs simply lack standing to bring a lawsuit premised on violations of local taxi and limousine ordinances.

Houston also recently issued a comprehensive set of new regulations governing vehicles for hire.  Those amendments create a class of transportation-related companies distinct from existing taxicab and limousine companies, called "Transportation Network Companies,"[3] which further counsels against the Court "'determin[ing] preemptively how [an administrative agency] will interpret and enforce its own regulations' and thereby usurp the agency's responsibility for interpreting and enforcing potentially ambiguous regulations."  *Dial A Car, Inc. v. Transp., Inc.*, 884 F. Supp. 584, 593 (D.D.C. 1995) (quoting *Sandoz Pharm. Corp. v. Richardson–Vicks, Inc.*, 902 F.2d 222, 231 (3d Cir. 1990)).

Plaintiffs' Lanham Act claim, an attempt to bring a private right of action under local ordinances that contain no such right, should be dismissed on this ground alone.

### B.   Plaintiffs Fail to Properly Allege That the Misrepresentations Proximately Caused Them Damages

Plaintiffs fail to allege facts showing that the four claimed misrepresentations proximately caused them harm, and the Court should dismiss the Lanham Act claim for this reason as well.  As an initial matter, Plaintiffs' selection of new or revised representations for their Lanham Act claim reveals how frivolous they truly are. By changing the alleged misrepresentations at issue, it is obvious that Plaintiffs are simply straining to find any representations that they can twist into a misrepresentation, rather than making a reasonable attempt to discern the source of their alleged injuries.

---

[3]   App. Ex. 1.

In order to state a claim under the Lanham Act, a plaintiff must "plead (and ultimately prove) an injury to a commercial interest in sales or business reputation *proximately caused* by the defendant's *misrepresentations*." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014) (emphasis added). "[T]he proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Id.* at 1390. A plaintiff cannot establish proximate cause "if the harm is purely derivative of 'misfortunes visited upon a third person by the defendant's acts.'" *Id.* (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). Because all false-advertising claims involve consumer deception, "the intervening step of consumer deception is not fatal to the showing of proximate causation." *Lexmark*, 134 S. Ct. at 1391. Still, a plaintiff "ordinarily must show economic or reputational injury flowing *directly* from the deception wrought by the defendant's advertising; and [] that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* (emphasis added).

Plaintiffs must establish that their injuries "flow[] directly" from the four misrepresentations they allege. *Id.* at 1391. But regarding the first alleged misrepresentation— that Uber falsely claims it is a "ridesharing" company—there are no *factual* allegations establishing that consumers relied on or cared about this alleged representation. SAC ¶¶ 46–50. Further, even if there were, tying this alleged misrepresentation to lost profits or a reduction in asset values would be impossible. The representation that Uber is a ridesharing company is too remote from any reduction in revenues to Plaintiffs. How many users requested transportation through Uber because of this representation, and how many of them would have chosen one of the Plaintiffs' services instead absent the alleged misrepresentation? The SAC reveals no plausible answer to this question. Plaintiffs' alleged injury "might instead have resulted from 'any number of other reasons,'" including that consumers are dissatisfied with Plaintiffs' services. *Lexmark*, 134 S. Ct. at 1394 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458-59 (2006)).

The same is true of the other three alleged misrepresentations: that Uber represents drivers as "partners"; that Uber can operate legally; and that Uber misrepresents its insurance coverage.  SAC ¶¶ 55–57, 64–88.  It is implausible that Plaintiffs have been injured in some measurable way by these particular alleged representations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating claim must be "plausible on its face").  Plaintiffs' attempt to connect these alleged statements to Plaintiffs' alleged drop in revenue is pure speculation.  How many rides did Plaintiff Fiesta Cab Company lose because Uber's website allegedly states, "Uber partners with drivers"?  SAC ¶ 55.  And were those lost rides $10 rides or $50 rides?  Plaintiffs' "lost sales could have resulted from factors other than [Uber's] alleged acts of fraud," *Anza*, 134 S. Ct. at 459, and Plaintiffs would have to identify how much of that lost revenue was due to the alleged misrepresentations, as opposed to the myriad other factors that could affect their businesses, such as general economic conditions, the quality of Plaintiffs' service, other non-actionable representations that Uber made to consumers, or the mere availability of Uber's application in Houston and San Antonio.  And trying to tease out how much of Plaintiffs' alleged drop in revenue came from any one of these alleged misrepresentations would involve an impermissible amount of "speculative . . . proceedings" and "intricate, uncertain inquiries."  *Lexmark*, 134 S. Ct. at 1394 (quoting *Anza*, 547 U.S. at 460);[4] *see also Zervas v. Faulkner*, 861 F.2d 823, 837 (5th Cir. 1988) (stating proximate cause prohibits "an overly attenuated chain of inferences").

The District of Massachusetts dismissed a Lanham Act claim against Uber for similar reasons.  *Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.*, CIV.A. 13-10769-NMG, 2014

---

[4]  The Supreme Court ultimately held in *Lexmark* that the plaintiff had alleged proximate cause.  *Lexmark*, 134 S. Ct. at 1394.  But the plaintiff there had alleged the defendant made misrepresentations directly disparaging the plaintiff's products, which Plaintiffs here have not alleged.  *Id.* at 1393.  The defendant had also allegedly disparaged the products of third party remanufacturers that used the plaintiff's components, so "there is likely to be something very close to a 1:1 relationship between the number of" remanufacturers' products sold and the number of plaintiff's components sold (or not sold).  *Id.* at 1394.  There is no similar 1:1 relationship at issue here.

WL 1338148, at *1, *7  (D. Mass. Mar. 27, 2014) (dismissing Lanham Act § 1125(a)(1)(B) claim with prejudice).  The taxicab and limousine plaintiffs in that case failed to connect any alleged misrepresentations by Uber to damage to their businesses: "There is no reference to any diversion of sales, any lost customers or any lessening of goodwill or harm to plaintiffs' reputation as a result of this misrepresentation" regarding the amount of a gratuity.  *Boston Cab*, 2014 WL 1338148, at *16.  The court accordingly held that there was an "absence of harm as a result of any such misrepresentations" and dismissed the Lanham Act claim on that basis.  *Id.*

For these reasons, Plaintiffs have failed to allege proximate cause for their Lanham Act claim, which is an independent reason for dismissal.

### C.      Plaintiffs Fail to Properly Allege Uber Made Misrepresentations

Plaintiffs have also failed to allege, *with facts*, that Uber made any actual misrepresentations.  In order to state a false-advertising claim under the Lanham Act, a plaintiff must allege that the defendant's statements are either literally false or, if ambiguous or true but misleading, then the plaintiff must also allege that the statement actually deceived consumers. *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000).  Plaintiffs do not allege that any consumers have been *actually* deceived; thus, insofar as the Court determines that any of the four types of alleged misrepresentations are ambiguous or true but misleading, the Court should dismiss them for failure to allege any *actual* deception.  Further, as explained below, Plaintiffs fail to properly allege that Uber made any actionable misrepresentations.

### 1.      Uber's Alleged Misrepresentation That It Is a "Ridesharing" Company Is Not Actionable

Plaintiffs' allegation that Uber "misrepresents" itself as a ridesharing company is nothing more than a semantic game.  SAC ¶¶ 47–50.  Their primary claim is that Uber offers "ridesharing" but its service does not meet the dictionary definition of ridesharing, and instead is a vehicle for hire as defined under the municipal ordinances.  *Id.*  Plaintiffs are wrong.

First, Plaintiffs' stated definition of ridesharing (the dictionary definition, not a definition taken from any regulation), which is the "act or an instance of sharing motor vehicle

transportation with another or others, especially among commuters," *id.* at ¶ 47 n.16, squarely fits Uber's ridesharing-request option, which is called uberX in Houston and San Antonio. The definition says nothing about "free" service and does not preclude sharing vehicles for a fee. Thus, Plaintiffs' own allegations undermine their claim.

Second, it is implausible that any consumer would be misled by the term "ridesharing" as applied to Uber's service. As Plaintiffs admit, consumers understand that they will be charged when using transportation requested through the Uber app. SAC at ¶¶ 21, 49–50. Plaintiffs therefore fail to allege any deception or likelihood of deception among consumers as a result of the alleged "ridesharing" representation.

Third, to the extent that the alleged ridesharing misrepresentation relates to whether Uber is actually a vehicle for hire under the applicable municipal ordinances, that aspect of the claim is precluded under *Dial A Car* because it involves the application of local ordinances, which is not permitted under the Lanham Act. 82 F.3d at 485 (dismissing Lanham Act claim because it involved "a contested question of statutory interpretation rather than a clearly established fact"). Further, Plaintiffs fail to allege that a vehicle cannot be both a ridesharing vehicle and a vehicle for hire, which means that Uber's alleged representation that it connects riders to ridesharing services is not inconsistent with the allegation that the ridesharing services are also vehicles for hire.

### 2.    Uber's Alleged Reference to Drivers as "Partners" Is Not Actionable

The SAC alleges Uber represents that the drivers who provide transportation requested through Uber's app are Uber's "partners," but that the drivers are actually third-party transportation providers. SAC ¶¶ 55–57. Plaintiffs' claim is based on the premise that "partner" has only one meaning, and that is the legal meaning of partnership as two people engaged in the same business enterprise with shared risks and benefits. *See, e.g.,* Tex. Bus. Orgs. Code Ann. § 152.051. This is obviously not true. When a second-grade teacher asks students to get a "partner" for a school project, the teacher is not asking the students to engage in a business enterprise with shared risks and profits. The word "partner" refers to "a person who takes part in

some activity in common with another or others." *Webster's New World College Dictionary* 1050 (4th ed. 2008).  The drivers who enter into agreements to use Uber's software meet this definition, and Plaintiffs allege no facts showing that any consumers are deceived by the use of the term "partner," particularly given the terms and conditions, which Plaintiffs cite in the SAC and which consumers agree to, which state explicitly that the "Company may introduce you to *third party transportation providers*."  SAC ¶ 82.  Further, as with the other misrepresentations, Plaintiffs fail to plausibly allege any injury to themselves caused by this representation.

### 3.      Uber's Alleged Misrepresentation That It Meets Local Regulations Is Not Actionable

Plaintiffs allege that Uber falsely claims that "every driver meets all local regulations." SAC ¶ 66.  But this is exactly the type of claim that *Dial A Car* prohibits because it requires interpreting and applying local ordinances.  *Dial A Car*, 82 F.3d at 485.  Whether drivers who use the Uber app comply with, or are even subject to, local ordinances is not a proper basis for a Lanham Act claim.  *Id.*

### 4.      Plaintiffs Do Not Properly Allege Any Misrepresentations Regarding Insurance Coverage

Plaintiffs claim that Uber falsely represented that "there *will be* a $1,000,000 per-incident insurance policy applicable to ridesharing trips."[5]  SAC ¶ 75 (emphasis added).  This is a statement of future intention; Uber said there "will be" such an insurance policy.  *Id.*  According to the Affidavit of Michael Spears, Exhibit D, which attaches the White Paper in which Uber allegedly made this statement, the White Paper was published online on April 12, 2013.  Thus, what Plaintiffs actually allege is that as of April 12, 2013—before Uber's application became

---

[5]   Plaintiffs also allege that Uber previously represented that there "*will be* a $2,000,000 insurance policy."  *Id.* at ¶ 75 (emphasis added).  But Plaintiffs do not explain why a statement about Uber's future intentions was false at the time it was made or why Uber would somehow be bound by it forever.  Nor do they or can they allege that this representation was made at a time when drivers in Houston or San Antonio could use the Uber app to receive transportation requests.  Further, Plaintiffs' argument does not appear to be based on the specific amount of stated coverage, but merely its quality.  *See id.* at ¶¶ 76–88.

available to request transportation services in Houston or San Antonio—Uber *intended to have* a $1,000,000 per-incident insurance policy.  But nowhere do Plaintiffs allege that this statement of future intention was false at the time it was made or that, at the time, Uber did not fully intend to procure such a policy in the future, which is fatal to their Lanham Act claim.  *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 720 F. Supp. 194, 205 n. 12 (D.D.C. 1989) (stating the challenged statements must be allegedly "false or misleading *at the time they are made*") (emphasis added) (reversed on other grounds).

In any event, Uber did procure such a policy.  *See* App. Ex. 2.  But Plaintiffs allege that (1) the insurer, James River, is not authorized to issue personal auto insurance in Texas, SAC ¶ 76; (2) the policy insures a subsidiary of Uber called Rasier, *id.* at ¶ 77; (3) drivers might only carry personal auto insurance, *id.* at ¶ 79; (4) Uber's terms and conditions release Uber from liability and somehow negate the policy, *id.* at ¶¶ 82–83; and (5) that Uber has no insurable interest in the subject of the insurance policy.

None of these allegations render false Uber's alleged April 12, 2013 statement of its present intention to have a $1 million insurance policy for ridesharing trips.  Plaintiffs can attempt to poke holes in Uber's insurance policy, but the question is not whether the policy is deficient in some respect, the question is whether the alleged deficiencies contradict a specific representation that Uber made.  And Plaintiffs point to no representations that contradict their allegations: (1) Uber never represented James River is authorized to issue personal auto insurance in Texas; (2) Uber never represented that Rasier was not the policyholder; (3) Uber never represented that drivers themselves carry more than personal auto insurance; (4) Uber has never contradicted the statements made in the terms and conditions; and (5) Uber never made representations to consumers regarding its "insurable interest."

Further, an analysis of Uber's insurance policy shows that Plaintiffs' claims are flat wrong.  *See* App. Ex. 2.  The policy provides a $1,000,000 limit per accident for "Covered Autos" designated with the symbol "10."  *Id.* at 1.  The symbol "10" is defined to include "[d]rivers who have entered into a contract with one or more of the Named Insureds prior to the

time of the 'accident,'" *id.* at 30 (citing and incorporating definition at p. 27), when the driver

has "logged and recorded acceptance in the Uber application to transport passenger(s), and the

Named Operator is: 1) En route to pick up that passenger(s), or 2) Transporting that passenger(s)

to their destination." *Id.*  Further, the policy has always acted as primary if no other coverage

existed, *id.* at 32 (stating that "[i]f no other coverage exists, this coverage will act as primary

coverage"), and was revised effective May 2014 to be primary to a driver's personal auto policy,

*id.* at 36.  Thus, Plaintiffs' claims about "illusory" coverage are contradicted by the policy itself.

Plaintiffs also allege that Uber's terms and conditions somehow negate the insurance

coverage—a nonsensical claim.  The terms and conditions govern the legal relationship between

the rider and Uber, but the policy covers the rider's injuries caused by negligent drivers on the

road, and a limitation of liability as to Uber does nothing to undermine a rider's ability to seek

recovery from the driver, whose liability as shown above is covered by the insurance policy.

Plaintiffs assert that Uber and its affiliates lack an "insurable interest" in the commercial

auto policy that protects against a rideshare drivers' liability for bodily injury and property

damage during a trip requested through Uber's platform, and as a result this insurance coverage

is invalid.  SAC ¶ 84–88.  Plaintiffs are wrong.

The Texas Supreme Court in *Smith v. Eagle Star Ins. Co.* held that "an insurable interest

exists when the insured derives pecuniary benefit or advantage by the preservation and continued

existence of the property or would sustain pecuniary loss from its destruction. . . .  It is not

always necessary to prove title in order to prove an insurable interest in the property."  370

S.W.2d 448, 450 (Tex. 1963); *see also* **Valdez v. Colonial Cnty. Mut. Ins. Co.**, 994 S.W.2d 910,

915 (Tex. App. 1999) (stating a person has an insurable interest when the person "will derive

pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage

from its destruction, termination, or injury by the happening of the event insured against").

Uber and its affiliates derive a pecuniary benefit and advantage from the coverage

applicable to drivers who use Uber's application.  This insurance coverage confers a pecuniary

benefit to Uber and its affiliates by creating a safe ride for passengers and the public, thereby

increasing user demand for Uber's application.  In addition to protecting drivers against liability arising from a trip arranged through the Uber platform, the same policy also insures Uber and its subsidiary against actual or alleged liability arising from the same use of the vehicle.  App. Ex. 2, at 25.  It is unquestionable that Uber and its subsidiary have an insurable interest in insuring their own liability.  Further, the public policy behind the "insurable interest" doctrine is to "discourage the use of insurance for illegitimate purposes."  *See Valdez*, 994 S.W.2d at 914.  Protecting the users of Uber's application, frequently pursuant to municipal ordinances that require ridesharing request services to do so, is in no way an "illegitimate purpose" and therefore does not violate public policy, but rather protects the public against an insurable risk.

Finally, Plaintiffs allege merely that "individuals *may* experience difficulty" if they file an insurance claim.  SAC ¶ 78 (emphasis added).  Plaintiffs do not identify anyone who has had *actual* difficulty in receiving coverage under the policy, so their concerns are theoretical.  And to establish liability under the Lanham Act for ambiguous statements, Plaintiffs must allege *actual* deception, which they have not.  *Pizza Hut*, 227 F.3d at 497.

## II.     Plaintiffs Fail to State a Tortious Interference Claim

The SAC alleges that Uber tortiously interferes with their actual and prospective business relations.  SAC ¶¶ 93–100.  The alleged "business relations" at issue are the Plaintiffs' contracts and prospective contracts with "independent-contract drivers in Houston and San Antonio," with whom Plaintiffs contract with to drive their taxicabs.  SAC ¶ 94.  This claim is legally deficient and should be dismissed for the reasons set forth below.

### A.     Plaintiffs Fail To Allege That Uber Specifically Intended To Interfere

First, Plaintiffs have not sufficiently pled that Uber specifically intended to interfere with their actual or prospective business relations.  *See Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W. 3d 909, 929–30, n. 5 (Tex. 2013) (Guzman, Devine & Brown, JJ., concurring) (noting that tortious interference claims require proof that the defendant "specifically intended to interfere").  Plaintiffs do not allege that Uber acted with specific intent, and there is nothing in the law that prevents Uber from entering into agreements with drivers, even if Uber was "certain,

or substantially certain, that interference with the Plaintiffs' independent-contract driver relationships would occur . . . ." SAC ¶ 95.

*Baty v. ProTech Ins. Agency* illustrates the heightened intent required to state a tortious interference claim. 63 S.W.3d 841, 861 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).  In essence, the court held that *knowing* interference will occur is different from *intending* the interference to occur.  In *Baty*, the plaintiff, an insurance agency, sued an insurance company after the company gave an agency appointment to a rival agency, and in doing so caused plaintiff to lose customers.  *Id.* at 846.  The plaintiff succeeded in showing that the defendant "was aware that [the rival agency] hoped to take a substantial percentage of [] business from [the plaintiff]."  *Id.* at 861.  Nevertheless, the court found "no evidence under these facts that [the defendant] intentionally prevented the formation" of any business relationship as is required to support a claim for tortious interference. *Id.*  It reasoned that mere knowledge of the rival agency's plan to move business away from the plaintiff was not sufficient to show that the defendant "sought to intentionally interfere" with the plaintiff's business relations.  *Id.*

Plaintiffs do not allege that Uber acted with specific intent to interfere with Plaintiffs' businesses.  And to the extent Plaintiffs allege that Uber interfered at all, those allegations demonstrate only that the alleged interference was an "incidental result of conduct [Uber] engage[ed] in for another purpose." *See Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001).  For that reason alone, Plaintiffs' claims must fail.

### B.     Plaintiffs Fail to Identify Any Independently Unlawful or Tortious Conduct by Uber

Further, Plaintiffs' allegations of tortious interference with prospective business relations must fail because Plaintiff cannot show that Uber's conduct was independently tortious or unlawful.  Competitive behavior between rival enterprises cannot constitute the basis of a claim for tortious interference with prospective business relations unless that behavior is independently tortious or wrongful.  *See Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 675 (S.D. Tex. 2010) ("[t]he plaintiff must show that the defendant's conduct was either

independently tortious or unlawful, that is, that the conduct violated some other recognized tort duty."); *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 634 (Tex. App. 2007) ("[c]onduct that is merely "sharp" or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations").  Indeed, competition for customers (which drivers are) is in the public interest.

As explained in this motion, Uber's conduct is in no way unlawful or tortious.  Plaintiffs have failed to state a claim against Uber under the Lanham Act or common law unfair competition.  As Uber's conduct in allegedly competing with Plaintiffs is neither unlawful nor wrongful, it cannot serve as the basis for Plaintiffs' claim of tortious interference with prospective business relations.

### C.   Plaintiffs Fail To Allege That Uber Proximately Caused Their Alleged Injuries

Plaintiffs fail to properly allege that Uber proximately caused them harm.[6]  *See Rimkus*, 688 F. Supp. 2d at 676 ("A plaintiff seeking to recover for tortious interference with prospective business relationships must establish proximate causation and damages with evidence rising above mere suspicion or speculation."); *see also Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App. 2011) (setting forth proximate causation requirement for claims of tortious interference with actual business relations).

It appears that the only form of harm Plaintiffs allege is a devaluation of the "value of the permits leased to independent-contractor drivers."  SAC ¶ 98.  But Plaintiffs fail to allege facts showing that Uber's alleged interference with their contracts with drivers has devalued their permits.  Plaintiffs conflate Uber's general presence in the Houston and San Antonio markets with the narrower allegations of interference with Plaintiffs' driver contracts, and fail to allege any harm flowing directly from the alleged interference.  Plaintiffs' bare allegations of injury

---

[6]  Plaintiffs allege the same harm for both of their tortious interference claims.

based on alleged declines in asset values is not the same as alleging, and is insufficient to allege, that Uber's alleged actions were a proximate cause of those alleged injuries. *Decks Appeal v. GTE Directories Sales Corp.*, 81 F.3d 154, at *2 (5th Cir. 1996) (unpublished) (affirming dismissal of tortious interference claim where plaintiff's harm was "based solely on its allegation [of tortious conduct] against [defendant] and its total decrease in profits") (citing *Univ. Computing Co. v. Mgmt. Sci. Am., Inc.*, 810 F.2d 1395, 1398 (5th Cir. 1987)). For that reason alone, Plaintiffs' tortious interference claims must fail.

> **D.    Plaintiffs Fail to Identify Any Actual or Reasonably Probable Business Relation**

To the extent Plaintiffs allege interference with existing business relations, their claim fails because they do not allege any *specific* contract subject to interference. *ThermoTek, Inc. v. WMI Enterprises, LLC*, No. 10-CV-2618-D, 2011 WL 1485421, at *8 (N.D. Tex. Apr. 19, 2011) (holding that the plaintiff's "general allegations [did] not allow the court to infer that [defendant] . . . interfered with specific existing agreements"); *see also Playboy Enters., Inc. v. Editorial Caballero, S.A. de C.V.*, 202 S.W. 3d 250, 265 (Tex. App.—Corpus Christi 2006, pet. denied) (holding that a general claim of interference with a business relationship does not amount to tortious interference with existing contractual relations); *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 774 (S.D. Tex. 2010) (dismissing claim because, though plaintiff "aver[red] that it 'had valid contracts with certain customers,' it fail[ed] entirely to allege or designate a specific contract that [was] the subject of interference").

And to the extent Plaintiffs allege tortious interference with prospective relations, their claim must be dismissed because they do not adequately allege a "reasonable probability" that the plaintiffs would have entered into relations with any particular driver. *See SP Midtown, LTD v. Urban Storage, L.P.*, No. 14-07-00717, 2008 WL 1991747, at *9 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). In *SP Midtown*, the plaintiff storage company alleged that the individual defendant, while still employed by the plaintiff, had been diverting phone calls to his future employer and co-defendant, and also submitted evidence that the storage company

suffered a significant drop in business following the defendant's departure.  *Id.* at *2.  But the
defendants' phone calls with prospective customers, even coupled with the plaintiff's decline in
customers, were insufficient to establish a "reasonable probability" that the plaintiff would have
obtained the business that ultimately went to the co-defendants.  *Id.* at *8–9.

Here, Plaintiffs offer only conclusory allegations that Uber interferes with its prospective
contractual relations with prospective drivers.  SAC ¶¶ 93–100.  Plaintiffs neither identify
specific relations nor adequately allege any reasonable probability of entering into such relations.
Such general and speculative allegations are insufficient to state a claim for tortious interference
with actual or prospective business relations, and Plaintiffs' claim must fail for that reason alone.

## III.    Plaintiffs Fail to State a Common-Law Unfair Competition Claim

Plaintiffs' common-law unfair-competition claim is largely based on the same grounds as
their other claims: Uber's allegedly "illegal" conduct.  SAC ¶¶ 101–02.  To state a claim for
unfair competition, plaintiffs must allege "an independent tort."  *Clock Spring, L.P. v.
Wrapmaster, Inc.*, No. 05-CV-0082, 2008 WL 6759952, at *8 (S.D. Tex. Feb. 12, 2008)
(dismissing unfair-competition claim because plaintiff failed to state separate claim, based on
same conduct, for false advertising under Lanham Act).  "[U]nfair competition functions like a
'piggy-back' tort, applying only when the court finds that a related, independent tort has been
committed."  *Id.*  Here, like in *Clock Spring*, Plaintiffs have failed to allege any independent
causes of action, and their common-law unfair competition claim must also fail.

Further, as described above, Plaintiffs have failed to allege any actionable
misrepresentations, so they have failed to state a claim for common-law unfair competition
insofar as it is premised on alleged misrepresentations.  *Id.* at *9 (disposing of the plaintiff's
common-law-unfair-competition claim identical to its false-advertising claim alleging
misrepresentations).

Plaintiffs' unfair competition claim is also based on allegations that Uber "discriminates"
against certain geographical areas of Houston and San Antonio, in alleged violation of the
Houston Equal Rights Ordinance (HERO).  SAC ¶¶ 29–45.  They allege that "Uber

disproportionally serves areas of high-income residents to the obvious exclusion of others." *Id.* at ¶ 44. First, as discussed above, Plaintiffs have no legal support for the notion that an alleged violation of a local ordinance creates a private cause of action, and *Dial A Car* precludes such a claim. 82 F.3d 484. Second, nothing in HERO precludes transportation providers from waiting for transportation requests in areas of the city that have the highest numbers of requests. *See* Compl. ¶ 32 (prohibiting discrimination based on "sex, race, color, ethnicity, national origin, age, familial status, marital status, military status, religion, disability, sexual orientation, genetic information, gender identity or pregnancy). Third, Plaintiffs make the (false) allegation that Uber directs third-party transportation providers to "affluent areas of Houston," but even accepting the allegation as true, nothing in HERO prevents discrimination based on wealth. *See id.* Plaintiffs also make thinly veiled accusations of racial discrimination. *E.g., id.* at ¶ 36 (stating Uber focuses on areas with "a disproportionate lack of racial diversity"). The allegations have no basis in fact or law, and the claim should be dismissed.

## IV. Plaintiffs' Request for Permanent Injunction Should Be Dismissed

"A party seeking an injunction must plead and prove an irreparable injury for which no adequate remedy at law exists." *Dresser–Rand Co. v. Virtual Automation, Inc.,* 361 F.3d 831, 847–48 (5th Cir. 2004). To the extent that Plaintiffs claim that Uber has damaged their business and reduced their profits, Plaintiffs could be fully compensated through an award of monetary damages. Indeed, in ruling on Plaintiffs' request for a Temporary Restraining Order, this Court already found that Plaintiffs are not at risk of suffering irreparable injury. *See* App. Ex. 3, at 56-57 (stating "all of the injuries or damages that the plaintiffs cite could be quantifiable and compensated by money"). Since that ruling, Plaintiffs have not added any new alleged injuries to their pleading. *Compare* FAC ¶¶ 154–56 *with* SAC ¶ 105. Nor are Plaintiffs' conclusory claims of irreparable injury sufficient. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Given that this Court has already ruled that Plaintiffs will suffer no irreparable injury and that Plaintiffs have failed to support their contentions to the contrary with anything more than bare conclusory allegations, their request for a permanent injunction must be dismissed. *See Symetra Life Ins. Co.*

*v. Rapid Settlements Ltd.*, 612 F. Supp. 2d 759, 774 (S.D. Tex. 2007) (granting motion to dismiss request for injunction where plaintiff failed to plead irreparable injury).

## V.   The Court Should Abstain From Deciding This Municipal Issue

Under *Burford* abstention, a court can decline to exercise jurisdiction over a suit "[w]here timely and adequate state-court review is available, and where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."[7]  *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993) (quoting *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989) (quotation marks omitted).  All the relevant factors favor abstention: (1) the applicability of the existing and future municipal regulations is undecided; (2) the municipalities and the public have a strong interest in the availability of services like Uber; (3) there is a need for coherent and uniform regulation; and (4) the municipality's administrative courts and the political process provide a forum for adjudicating this dispute.  *See Wilson*, 8 F.3d at 314–16.

## CONCLUSION

For the foregoing reasons, Uber respectfully requests that the Court dismiss all of the claims in Plaintiffs' second amended complaint.

---

[7]  *Burford* abstention motions are generally decided under Rule 12(b)(1).  *M.D. v. Perry*, 799 F. Supp. 2d 712, 715 n.3 (S.D. Tex. 2011).  Uber accepts Plaintffs' *factual* allegations as true for purposes of this motion, and requests judicial notice of Houston's proposed municipal regulations, App. Ex. 1, as set forth in Uber's Request for Judicial Notice.

DATED: October 17, 2014   QUINN EMANUEL URQUHART &
            SULLIVAN, LLP


       By /s/ Stephen A. Swedlow      
         Stephen A. Swedlow
         QUINN EMANUEL URQUHART &
         SULLIVAN, LLP
         500 West Madison Street, Suite 500
         Chicago, Illinois  60661
         Telephone: (312) 705-7400
         Facsimile: (312) 705-7401
         **ATTORNEY-IN-CHARGE FOR UBER**
         **TECHNOLOGIES, INC.**


**OF COUNSEL:**

| | |
|---|---|
| Barrett H. Reasoner | Arthur M. Roberts* |
| T.B.A. No. 16641980 | QUINN EMANUEL URQUHART |
| So. Dist. Bar No. 14922 | & SULLIVAN, LLP |
| David Sheeren | 50 California St., 22nd Fl. |
| T.B.A. No. 24079313 | San Francisco, California  94111 |
| So. Dist. Bar No. 1339705 | Telephone: (415) 875-6600 |
| GIBBS & BRUNS, L.L.P. | Facsimile: (415) 875-6700 |
| 1100 Louisiana, Suite 5300 | |
| Houston, Texas  77002 | Amit B. Patel* |
| Telephone: (713) 650-8805 | QUINN EMANUEL URQUHART |
| Facsimile: (713) 750-0903 | & SULLIVAN, LLP |
| | 500 West Madison Street, Suite 500 |
| | Chicago, Illinois  60661 |
| | Telephone: (312) 705-7400 |
| | Facsimile: (312) 705-7401 |


*pro hac vice*

**Certificate of Service**

I certify that on October 17, 2014, the foregoing document was served by the Court's Electronic Case Filing System on all counsel of record.

*/s/ Stephen A. Swedlow*
Stephen A. Swedlow