**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **GREATER HOUSTON** | § | |
| **TRANSPORTATION COMPANY, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:14-0941** |
| | § | |
| **UBER TECHNOLOGIES, INC. and** | § | |
| **LYFT INC.,** | § | |
| | § | |
| **Defendants.** | § | |

**O R D E R**

Pending before the Court are Defendant Lyft Inc. ("Lyft")'s Motion to Dismiss Plaintiffs' Second Amended Complaint (**Instrument No. 87**), and Defendant Uber Technologies, Inc. ("Uber")'s Motion to Dismiss Second Amended Complaint. (**Instrument No. 88**).

**I. FACTUAL SUMMARY & PROCEDURAL POSTURE**

**A. Statement of the Case**

This is a suit for tortious interference with business relations, unfair competition, and false advertising under the Lanham Act, 15 U.S.C. § 1125(a), brought by taxicab permit-holders in Houston and San Antonio against Uber and Lyft. Uber and Lyft are self-described mobile-based transportation network companies ("TNCs"), which enable customers to use smartphone apps to connect with third party drivers for transportation. Plaintiffs are taxicab permit-holders in Houston and San Antonio, Texas, who claim that Uber and Lyft are unfairly competing with the taxicab industry by failing to comply with local regulations and misrepresenting the nature of their services to consumers. Defendants now move to dismiss Plaintiffs' claims, challenging this suit as an impermissible attempt by private parties to enforce local ordinances.

**B. Factual Background**

<u>1. Taxis and Taxi Regulation in Houston and San Antonio</u>

Plaintiffs, Greater Houston Transportation Authority ("GHTC"), Fiesta Cab Company ("Fiesta"), Houston Transportation Services, LLC ("HTS"), National Cab Co., Inc. ("National"), Pasadena Taxi Co., Inc. ("Pasadena"), Dawit Sahle ("Sahle"), Mersha Ayele ("Ayele"), Mohamed Didi ("Didi"), Greater San Antonio Transportation Company ("GSATC"), and Enterprise Transportation Inc. ("Enterprise") (collectively "Plaintiffs"), are licensed taxi operators in Houston and San Antonio. (Instrument No. 86 at 1-5). As in most markets, Plaintiffs' taxis can be hailed by customers on the street or requested via telephone or internet, to provide transportation to a desired location for a published rate. (*Id.* at 5). Many of the Plaintiffs also offer smartphone apps, which allow customers to locate, schedule, and track their vehicle service. (*Id.*).

In order to operate a taxi in Houston or San Antonio, Plaintiffs are required to comply with certain regulations. Municipalities are required by Texas law to license, control, and otherwise regulate taxi transportation service. Tex. Loc. Gov't Code Ann. § 215.004(a) (West, Westlaw through 2013 Third Called Session of the 83rd Legislature).

Vehicles for hire in Houston are regulated by Chapter 46 of the Houston Code of Ordinances ("HCO"). Prior to the amendments to the HCO, made on August 9, 2014, vehicle for hire was defined as:

> A taxicab, pedicab, sightseeing and charter vehicle, chauffeured limousine, school vehicle, jitney, or low-speed shuttle used for the provision of transportation services for hire to the general public.

Houston, Tex., Code of Ordinances ch. 46, art. I, § 46-1 (2013) (amended 2014). Chapter 46 of the HCO provides that taxicabs must be licensed to operate in the city of Houston. Houston,

Tex., Code of Ordinances ch. 46, art. II, § 46-62 (2015). Furthermore, Chapter 46 imposes significant additional requirements on taxicab operators related to medical exams, criminal history checks, mechanical upkeep of automobiles, compliance with established taxi rates, and insurance. *Id.* art. I, §§ 46-6, -7, art. II, §§ 46-20, -31, -67. With regard to insurance, taxicabs are required to have "commercial auto liability coverage in no less than the minimum coverage amounts specified in the Texas Motor Vehicle Safety Responsibility Act[.]" *Id.* art. II, § 46-67. Vehicles for hire are also forbidden from refusing service or charging additional fees to passengers based on race, color, religion, sex, national origin, age, or disability. *Id.* art. I, § 46-2.

Vehicles for hire are regulated in San Antonio by Chapter 33 of the San Antonio City Code of Ordinances ("SACCO"). The SACCO provides that ground transportation services and any other vehicle for hire must obtain a permit in order to operate in the city of San Antonio. San Antonio, Tex., City Code of Ordinances ch. 33, art. I, § 33-006 (2015). As in Houston, San Antonio requires that taxicabs follow numerous additional regulations, including following established rates, and requires that all vehicles for hire have insurance issued by an insurance company with a minimum A.M. Best rating of B+. *Id.* art. I, § 33-018, art. VIII, § 33-981. The SACCO also, like Houston, forbids discrimination in the provision of transportation services based on, among other things, race or disability. *Id.* art. I, § 33-030(b).

### 2. The Emergence of Transportation Network Companies

Defendants Uber and Lyft describe themselves as transportation network companies ("TNCs"). Plaintiffs claim they began operating in Houston on or about February 20, 2014, and in San Antonio, on or about March 24 and 28, 2014. (Instrument No. 86 at 25-26).

3

Uber is a software company based in San Francisco, California. (*Id.* at 4). Unlike traditional ground transportation services, Uber does not own vehicles or employ drivers. (Instrument No. 10 at 5). Instead, Uber offers a smartphone app, which allows a passenger to request paid transportation from third-party transportation providers. (*Id.* at 5).

Lyft, also a software company based in San Francisco, describes itself as a mobile-based ridesharing platform. (Instrument No. 9 at 8). Passengers who download Lyft's smartphone app can connect with other community members and get a ride to a desired location. (*Id.*). Although Lyft operates a paid service in other cities, in Houston and San Antonio, Lyft represents that it operates on donations alone. (*Id.*). Lyft provides a suggested donation to passengers, but claims that the decision to donate to the driver belongs entirely to the passenger. (*Id.*).

The parties generally agree about the nature of the service provided by Uber and Lyft. Plaintiffs, however, disagree with Defendants' characterizations of their companies as "ridesharing" operations and with Lyft's claimed "donations-based" model. Furthermore, the parties disagree about Defendants' safety, insurance coverage, and their compliance or need to comply with local ordinances related to vehicles for hire.

According to Plaintiffs, as of April 2, 2014, Uber and Lyft had been cited a total of 26 times by the Houston Administration and Regulatory Affairs Department (the "ARA") for failure to register as a "mobile dispatch service" under the since repealed Section 46-11.1 of the HCO. (Instrument No. 86 at 6, 25-26). Plaintiffs claim that Defendants have also been cited at least 10 times in San Antonio for failure to comply with Chapter 33 of SACCO. (*Id.* at 26-27). Plaintiffs further claim that on March 26, 2014, the San Antonio Chief of Police sent a cease-and-desist

letter to Lyft, informing them that they needed to obtain a permit through the Ground Transportation Unit. (*Id*. at 26).

The emergence of TNCs ultimately forced Houston and San Antonio to adapt their city codes' provisions on vehicles for hire. On August 9, 2014, Houston enacted Ordinance No. 2014-754, which amended Chapter 46 of the HCO. (Instrument No. 88-2). The ordinance created a new classification for TNCs and provided permitting and other regulations for such entities. Houston, Tex., Code of Ordinances ch. 46, art. IX, § 46-503 (2015). Following this action, Lyft in fact suspended operations in Houston. (Instrument No. 90 at 6). On December 11, 2014, San Antonio's City Council adopted similar amendments to Chapter 33 of the SACCO. Ordinance No. 2013-12-11-1002 included numerous amendments to the SACCO provisions on vehicles for hire, most notably adding provisions for TNCs. *See* San Antonio, Tex. City Code of Ordinances ch. 33, art. IX (2015).

## C. Procedural Posture

On April 8, 2014, Plaintiffs filed a complaint and application for temporary restraining order, preliminary injunction, and permanent injunction against Defendants in the United States District Court for the Southern District of Texas. (Instrument No. 1).[1] Plaintiffs sought declaratory judgment that Defendants violated the relevant city ordinances in Houston and San Antonio. (*Id*. at 36-37). Plaintiffs further brought a Texas state claim of unfair competition and claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, and the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), related to alleged mail fraud and false advertising. (*Id*. at 37-38). Plaintiffs claimed that by avoiding permitting fees, Defendants had obtained illicit profits that otherwise would have gone to Plaintiffs. (*Id*. at 35-36).

---

[1] The initial complaint and first amended complaint in this action included additional individual plaintiffs and defendants who have since been dismissed. (Instrument Nos. 1; 39; 74; 78; 79).

On April 21, 2014, the Court held a hearing on Plaintiffs' motion for a temporary restraining order. The Court denied Plaintiffs' motion, citing concerns about the then pending amendments to the HCO, Plaintiffs standing to enforce the cities' ordinance, and the likelihood of permanent injury.

On May 5, 2014, Uber and Lyft each filed motions to dismiss all of Plaintiffs' claims. (Instrument Nos. 28; 29; 36). Plaintiffs filed an amended complaint on May 12, 2014, and the Court terminated both motions to dismiss. (Instrument No. 39).

On July 10, 2014, Uber and Lyft each filed new motions to dismiss all claims in Plaintiffs' first amended complaint. (Instrument Nos. 50; 51). On August 9, 2014, Houston amended Chapter 46 of the HCO as described above, and the Court denied Defendants' motions to dismiss without prejudice on October 2, 2014. (Instrument No. 83).

On October 3, 2014, Plaintiffs filed a second amended complaint with leave of the Court. (Instrument No. 86). Plaintiffs now allege that Defendants violated the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), by using misleading terminology to describe their businesses, and by misrepresenting their insurance coverage and compliance with local ordinances. Plaintiffs further allege that Defendants have tortiously interfered with Plaintiffs' business relations by soliciting independent contract drivers to drive for their allegedly unlawful operations, rather than Plaintiffs. Plaintiffs also state a Texas common law claim of unfair competition based on this conduct and seek a permanent injunction pursuant to 15 U.S.C. § 1116(a).

On October 17, 2014, Uber and Lyft filed motions to dismiss all claims in Plaintiffs' second amended complaint. (Instrument Nos. 87; 88). On the same day, Uber filed a request that the Court take judicial notice of the recently published Houston city ordinance amending Chapter

46 of the HCO, as well as Uber's insurance policy. (Instrument No. 89). On November 7, 2014, Plaintiffs filed responses to Defendants' motions to dismiss. (Instrument Nos. 90; 91). Defendants filed replies on November 12, 2014. (Instrument Nos. 92; 93).

## II. LEGAL STANDARD: MOTION TO DISMISS

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not contain "detailed factual allegations," but it must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Likewise, a complaint that articulates "naked assertions devoid of further factual enhancement" is similarly insufficient to satisfy the pleading requirements of Rule 8. *Iqbal*, 556 U.S. at 678 (internal punctuation omitted).

When a complaint does not meet the pleading requirements of Rule 8, Rule 12(b)(6) authorizes dismissal of a civil action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must articulate "the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Stated otherwise, in order to withstand a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). A claim for

relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010). A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678. This "plausibility standard is not akin to a probability requirement, but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (internal quotations omitted). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Twombly*, 550 U.S. at 557.

Under this rubric, dismissal is proper only if the plaintiff's complaint: (1) does not include a cognizable legal theory, *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), or (2) includes a cognizable legal theory but fails to plead enough facts to state a claim to relief that is plausible on its face, *Pleasant*, 663 F.3d at 775, *see also Frith v. Guardian Life Ins. Co.*, 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998) (Gilmore, J.) (holding that dismissal pursuant to Rule 12(b)(6) "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory").

 When ruling on a 12(b)(6) motion, the Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[2] *Randall D. Wolcott, M.D., P.A. v. Sebelius,* 635 F.3d 757, 763 (5th Cir. 2011) (internal citations and quotations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).  The Court does not resolve any disputed fact issues. *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999). Instead, the

---

[2] Matters of which a court may take judicial notice include, for example, matters of public record. *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006).

Court assumes all well-pleaded facts contained in the complaint are true. *Wolcott*, 635 F.3d at 763. The Court will not, however, "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *In re Great Lakes Dredge & Dock Co. LLC,* 624 F.3d 201, 210 (5th Cir. 2010). Similarly, legal conclusions masquerading as factual conclusions need not be treated as true. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995), *see also Iqbal*, 556 U.S. at 678. Although all well-pleaded facts are viewed in the light most favorable to the plaintiff, *Turner*, 663 F.3d at 775; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009), the Court "will not strain to find inferences favorable to the plaintiff." *Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 338 (5th Cir. 2008) (internal citations and quotations omitted). Therefore, "to avoid a dismissal for failure to state a claim, a plaintiff must plead specific facts." *Dorsey*, 540 F.3d at 338.

That said, "motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc*., 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted). Given  the harshness of dismissal, the Court will generally "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 329 (5th Cir. 2002), *see also United States ex rel. Adrian v. Regents of the Univ. of Cal*., 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given.") (internal citations omitted).

Uber has requested that the Court take judicial notice of the new Chapter 46 of the HCO and Uber's insurance policy, held through James River Insurance. (Instrument No. 89). The

Court can properly take judicial notice of city ordinances. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Ramos v. City of Laredo*, No. CIV.A. 5-09-127, 2011 WL 649675, at *1 (S.D. Tex. Feb. 9, 2011). The Court may also take judicial notice even when no request has been made by the parties. *See* Fed. R. Evid. 201(c)(1), *see also Locke v. City of Corpus Christi*, No. CIV.A. 06-305, 2006 WL 2670982, at *1 n.3 (S.D. Tex. Sept. 18, 2006). Accordingly, the Court takes judicial notice of the new Chapter 46 of the HCO, as well as the amendments to Chapter 33 of the SACCO. Furthermore, Uber's insurance policy is incorporated into the complaint by reference. *See Wolcott,* 635 F.3d at 763.

### III. LAW & ANALYSIS: LANHAM ACT

Defendants first move to dismiss Plaintiffs' claims of false advertising under the Lanham Act. The basis for Plaintiffs' federal claim of false advertising is Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Section 43(a) provides in relevant part that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . .
>
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). The Fifth Circuit has explained that this section of the Lanham Act provides "protection against a myriad of deceptive commercial practices, including false advertising or promotion." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 494-95 (5th Cir. 2000).

To make out a prima facie case of false advertising under Section 43(a), the plaintiff must establish five elements:

(1) A false or misleading statement of fact about a product;

(2) Such statement either deceived or had the capacity to deceive a substantial segment of potential consumers;

(3) The deception was material, in that it is likely to influence the consumer's purchasing decision;

(4) The product is in interstate commerce; and

(5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

*IQ Products Co. v. Pennzoil Products Co.*, 305 F.3d 368, 375 (5th Cir. 2002). "The failure to prove the existence of any element of the prima facie case is fatal to the plaintiff's claim." *Pizza Hut*, 227 F.3d at 495 (citations omitted).

The parties dispute whether Plaintiffs have adequately pleaded that any of Uber's or Lyft's purported representations were false or misleading and, further, whether any of these statements proximately caused damages to Plaintiffs.

**A. Proximate Cause**

The Court begins with the issue of proximate cause, because it relates to Plaintiffs' "statutory standing" to bring this cause of action under the Lanham Act.

In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), the Supreme Court laid out a two part test for "statutory standing" under the Lanham Act. Although recognizing that "statutory standing" is something of a misnomer, the Supreme Court recognized that whether the plaintiff is authorized to sue under the statute is different in kind from whether the plaintiff has Article III standing or prudential standing. *See id.* at 1386-88. "To invoke the

Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id.* at 1395. The Court held that "a direct application of the zone-of-interest test and the proximate-cause requirement supplies the relevant limits on who may sue." *Id.* at 1391.

The first part of this "standing" test concerns "the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970). Relying on the text of the Lanham Act, the Supreme Court concluded that "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark*, 134 S. Ct. at 1390. Consumers or businesses who are misled into purchasing an inferior product are generally not considered within the zone of interest. *Id.* at 1390.

The second part of this test requires that injuries be proximately caused by violations of the statute. The question presented in a proximate cause analysis "is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Id.* at 1390. Ordinarily, harms derivative of "misfortunes visited upon a third person" are too remote to have been proximately caused by a defendant. *Id.* at 1390-91 (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268-69 (1992)). However, because "the Lanham Act authorized suit only for commercial injuries, the intervening step of consumer deception is not fatal to the showing of proximate causation required by the statute." *Lexmark*, 134 S. Ct. at 1391. Therefore a "plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly

from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1391. Although the classic false advertising case involves a party inducing customers to switch from a competitor by making false statements about its or the competitor's goods, this is not the only cognizable injury under Section 1125(a). *Id.* at 1393.

Uber and Lyft do not dispute that Plaintiffs are within the "zone of interest" of the Lanham Act. Rather, Defendants argue that Plaintiffs have failed to properly allege proximate cause because: (1) Plaintiffs failed to allege and cannot show that customers would have been influenced by most of the alleged misrepresentations, (2) Plaintiffs have not pleaded how their loss of business was the result of Defendants' alleged misrepresentations as opposed to less nefarious market factors, and (3) showing that a direct correlation between Plaintiffs' loss of business and Defendants' alleged misrepresentations would involve an impermissible amount of speculation.

Plaintiffs have pleaded that Defendants made numerous false or misleading statements to customers. Specifically, Plaintiffs claim that Defendants have misrepresented the legality of their operations; misrepresented the nature of their service by using terms like "ridesharing," "partners," and "donations;" and misrepresented the scope of their insurance coverage. (Instrument No. 86). Plaintiffs have further alleged that both Uber and Lyft have compared themselves to traditional taxi companies with regard to insurance coverage and general safety. (*Id.* at 21, 29-30). While Plaintiffs have not offered the precise amount of business they have lost, they have alleged that Defendants' misrepresentations "sway consumers of vehicle-for-hire services to use their services, resulting in damage to competing transportation services, such as

13

Plaintiffs." (*Id*. at 27). Plaintiffs seek recovery of all of Defendants' profits in Houston and San Antonio, indicating a belief that every Uber and Lyft customer was effectively taken from Plaintiffs through false advertising. (*Id*. at 36). Plaintiffs need not prove that their harms were not wholly or in part the result of natural market factors to survive a motion to dismiss. It is sufficient that they pleaded that customers were induced by false advertising to offer their business to Plaintiffs' competitors instead of Plaintiffs. *See Lexmark*, 134 S. Ct. at 1391. The Northern District of Illinois recently applied the holding in the *Lexmark* decision to a similar case involving Uber and numerous Chicago taxi companies. *See Yellow Grp. LLC v. Uber Technologies Inc.*, No. 12 C 7967, 2014 WL 3396055, at *3 (N.D. Ill. July 10, 2014) (holding at the motion to dismiss stage that "the Court is satisfied that the Taxi Affiliation Plaintiffs and Your Private Limousine have plausibly alleged that Uber's deceptive advertising has caused customers to refrain from using their dispatch services."); *see also Bern Unlimited, Inc. v. Burton Corp.*, 25 F. Supp. 3d 170, 184 (D. Mass. 2014) (finding that allegations that a competitor's false advertising resulted in increased sales for the competitor and decreased sales for the counter-plaintiff were sufficient to survive a motion to dismiss). As in the *Lexmark* case, this Court finds that Plaintiffs have alleged injuries to "a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *See Lexmark*, 134 S. Ct. at 1395.

Accordingly, the Court finds that Plaintiffs have adequately pleaded facts that support a theory that Defendants' actions are a proximate cause of Plaintiffs' injuries and establish standing to bring a cause of action under the Lanham Act.

14

### B. False or Misleading Statements

The Court next considers whether Plaintiffs have adequately pleaded that statements made by Uber and Lyft were false or misleading.

There are two types of actionable statements under the Lanham Act: those that are literally false and those that, although not literally false, are likely to mislead and confuse consumers. *Pizza Hut*, 227 F.3d at 495 (citing *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1387 (5th Cir. 1996)). Plaintiffs arguing that the statements were merely misleading "must also introduce evidence of the statement's impact on consumers, referred to as materiality." *Pizza Hut*, 227 F.3d at 495. However, "when the statements . . . are shown to be literally false, the plaintiff need not introduce evidence on the issue of the impact the statements had on consumers. . . . In such a circumstance, the court will assume that the statements actually misled consumers." *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001) (citing *Pizza Hut*, 227 F.3d at 497).

Throughout the complaint, Plaintiffs level numerous accusations against Uber and Lyft, which Plaintiffs claim amount to unfair competition. Many of these allegations relate generally to Plaintiffs' belief that Uber and Lyft are operating unlawfully in Houston and San Antonio, and that they have marketed themselves in such a way as to skirt certain regulations. For the purposes of Plaintiffs' Lanham Act claims, however, the Court is not concerned with the legality of Uber's or Lyft's operation, or with misrepresentations they may have made to regulatory authorities. Rather, the Court is confined to consideration of those statements which Plaintiffs have claimed were directed at or deceived consumers. *See IQ Products*, 305 F.3d at 375.

<u>1. Uber</u>

The Court begins with an examination of the alleged misrepresentations made by Uber in violation of the Lanham Act.

*a. Compliance with Local Regulations*

Many of Uber's alleged misrepresentations to the public involve statements as to the legality of the Uber service. The alleged misrepresentations in this case are Uber's claims on its website that "every driver meets all local regulations," and the assurance that the service is "LICENSED & INSURED – From insurance to background checks, every driver meets all local regulations." (Instrument No. 86 at 25). According to Plaintiffs, Uber wrote a policy paper in 2013, disclosing its intention to enter the "ridesharing" market in order to compete directly with startups like Lyft despite questioning the legality of this model. (*Id.* at 24, 120-25).

Plaintiffs first allege that Uber has misrepresented itself to the public by not obtaining the proper permits and licenses to operate in Houston and San Antonio. (*Id.* at 25). Plaintiffs claim that Uber has been cited on numerous occasions in Houston and San Antonio, and received a cease-and-desist letter from the San Antonio Chief of Police in March 2014. (*Id.* at 7-8, 26). Although Plaintiffs admit that Uber's non-compliance with the new Houston ordinance "remains to be seen," they proceed to allege that Uber has failed to comply with the new Houston ordinances related to permits, applications, insurance, licensed drivers, vehicle requirements, and operating requirements. (*Id.* at 7, 26). Plaintiffs further allege that Uber has failed to comply with San Antonio requirements for permit-holders related to insurance, established fare prices, and maintenance of vehicles of a certain age. (*Id.* at 15).

According to Plaintiffs, Uber also engages in illegal discrimination by red-lining, in violation of anti-discrimination ordinances in both Houston and San Antonio. (*Id*. at 9-16). Red-lining is the practice of denying or charging more for services in particular areas, often determined by race or socioeconomic status. (*Id*. at 10). Plaintiffs claim that Uber incentivizes its drivers to service primarily affluent white neighborhoods. (*Id*. at 9-16). This is a practice purportedly implemented in cities across the country. (*Id*. at 12-14).

Uber argues that this claim must be dismissed because it is effectively an attempt to enforce compliance with local ordinances. In 1996, the D.C. Circuit addressed this issue in *Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484 (D.C. Cir. 1996). The plaintiff in that case operated a point-to-point limousine transportation service and sued local cab companies for operating competing limousine services without properly registering. *Id*. at 485-86. The plaintiff claimed that the defendants violated the Lanham Act by misrepresenting to the public that they were authorized to provide limousine services. *Id*. at 488. The district court dismissed the plaintiff's Lanham Act claims and the plaintiff appealed. *Id*. at 486. The D.C. Circuit affirmed the dismissal, holding that the plaintiff could not use the Lanham Act to enforce its own preferred interpretation of a local ordinance. *Id*. at 488-90. The D.C. Circuit noted that entertaining claims like the plaintiff's would transform "the Lanham Act into a handy device to reach and decide all sorts of local law questions." *Id*. at 490. The court reasoned that it could not hear the claim without a clear and unambiguous statement from the Taxicab Commission that the defendants were violating the local ordinance. *Id*. at 490.

The Fifth Circuit has followed the reasoning of the D.C. Circuit on this issue. In 2002, the Fifth Circuit decided *IQ Products Co. v. Pennzoil Products Co.*, 305 F.3d 368. In *IQ Products*,

the plaintiff brought a Lanham Act claim, asserting that a competing tire inflator company failed to label the product as "flammable" in violation of federal law. *Id*. at 370-71. Specifically, the plaintiff argued that the defendant violated the Federal Hazardous Substances Act ("FHSA"), the federal statute which regulates labeling, and which is enforced by the Consumer Product Safety Commission ("CPSC"). *Id*. at 372-73. Citing to *Dial A Car*, the Fifth Circuit agreed with the district court that the plaintiff was "impermissibly attempting to circumvent the FHSA by converting the Lanham Act into a vehicle to enforce the FHSA, which bars private actions, and to usurp the regulatory function of the CPSC[.]" *Id*. at 373-74.

Numerous district courts have addressed the applicability of *Dial A Car* in cases brought against Uber by cab companies. *See Manzo v. Uber Techs., Inc.*, No. 13 C 2407, 2014 WL 3495401 (N.D. Ill. July 14, 2014); *Yellow Grp.*, 2014 WL 3396055; *Boston Cab Dispatch, Inc. v. Uber Techs., Inc.*, No. CIV.A. 13-10769-NMG, 2014 WL 1338148 (D. Mass. Mar. 27, 2014). In each case, the court distinguished Lanham Act claims based on misrepresentations about legality from claims based on other misrepresentations. *See e.g. Manzo*, 2014 WL 3495401, at *5 (dismissing claims premised on violations of the Chicago Municipal Code under *Dial A Car*, but holding that *Dial A Car* does not apply to misrepresentations about livery rates). Consistent with these holdings, the Court finds that Plaintiffs' Lanham Act claims based on Uber's purported red-lining, failure to get properly licensed, and other failures to comply with local ordinances or codes are attempts to use the Lanham Act to enforce Plaintiffs' preferred interpretation of local ordinances. *See Dial A Car*, 82 F.3d at 488. The alleged citations from the cities of Houston and San Antonio, and the cease-and-desist letters from the San Antonio chief of police, do not amount to "clear and unambiguous statements" from the cities' regulatory agencies that

Defendants are in violation of local ordinances. *See id.* at 489. The citations and cease-and-desist letters from the cities of Houston and San Antonio predate the recent amendments to the applicable provisions of the HCO and the SACCO. *See* (Instrument No. 86 at 26-27). The new ordinances are subject to multiple interpretations and the Court cannot permit Plaintiffs to enforce their "preferred interpretation" of the ordinances in federal court. *See Dial A Car*, 82 F.3d at 488.

Accordingly, the Court finds that Plaintiffs have failed to plead a cognizable cause of action that Uber's representations that they "meet all local regulations" are false or misleading. *See Iqbal*, 556 U.S. at 678; *Dial A Car*, 82 F.3d at 488. Uber's motion to dismiss Plaintiffs' Lanham Act claims based on those representations is GRANTED. (Instrument No. 88).

### b. *"Ridesharing"*

Plaintiffs also argue that Uber has misrepresented itself to the public as a "ridesharing" service. According to Plaintiffs, Uber has represented itself as a "ridesharing" operation in numerous publications and through internet media. (Instrument No. 86 at 17-19). The HCO distinguishes ridesharing from "for hire" transportation as follows:

> *For hire* means providing, or offering to provide, a transportation service in exchange for compensation. The term expressly excludes ride sharing. . . .
>
> *Ridesharing*, when describing conduct, means the travelling of two or more persons by any mode of private passenger vehicle, including, but not limited to, carpooling, vanpooling, buspooling, to any location incidental to another purpose of the driver, for which compensation is not accepted, collected, encouraged, promoted, or requested.

Houston, Tex., Code of Ordinances ch. 46, art. I, § 46-1 (2015). The American Heritage Dictionary defines "ridesharing" as the "act or an instance of sharing motor vehicle transportation with another or others, especially among commuters." *See* (Instrument No. 86 at

19

17) (quoting The American Heritage Dictionary of the English Language (5th ed. 2013)). Plaintiffs rely on these two definitions to support their contention that Uber misled consumers by referring to its service as "ridesharing." According to Plaintiffs, because Uber advertises and charges fares to its customers, the term "ridesharing" is literally false and misleading to consumers. (Instrument No. 86 at 18).

Insofar as Plaintiffs attempt to rely on the HCO's definition of ridesharing for this claim, the Court finds that the holding in *Dial A Car* also prevents Plaintiffs from pursuing this cause of action. A claim based on Plaintiffs' interpretation of this HCO provision would amount to the same attempt to enforce a local ordinance as described above. *See Dial A Car*, 82 F.3d at 488. Furthermore, the Court agrees with Uber that there is no plausible misrepresentation to support a Lanham Act claim with respect to "ridesharing." When considering a motion to dismiss, the Court assumes all well-pleaded facts as true. *See Wolcott*, 635 F.3d at 763. A claim for relief is implausible, however, when facts permit the Court only to infer the mere possibility of misconduct. *See Iqbal*, 556 U.S. at 678. Furthermore, the Court does not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Great Lakes Dredge*, 624 F.3d at 210. The Court need not accept as true Plaintiffs' conclusory allegation that Uber's use of the term "ridesharing" was false or misleading. *See id*. Plaintiffs have only alleged that Uber's service is distinct from the HCO's definition of "ridesharing," but not the dictionary definition they themselves provided. The dictionary definition provided does not exclude ridesharing for a fee. Therefore, Plaintiffs have not pleaded a literally false statement. *See Logan*, 263 F.3d at 462. Furthermore, if the statements are not literally false, Plaintiffs must allege that they are both misleading and deceived or had the capacity to deceive consumers. *Pizza Hut*, 227

20

F.3d at 495. Plaintiffs, however, admit that Uber's website openly provides base fares and other information regarding the fares for Uber customers. (Instrument No. 86 at 18). Therefore, to find that Uber's references to "ridesharing" are misleading, one would have to presume a customer who believes that "ridesharing" excludes fee-based arrangements, but is careless enough to disregard the information actually provided by Uber about fees. These facts permit the Court only to infer the mere possibility of misconduct and therefore do not support a plausible claim for relief. *See Iqbal*, 556 U.S. at 678.

Accordingly, the Court finds that Plaintiffs have failed to plead a cognizable cause of action that Uber's use of the term "ridesharing" is false or misleading. *See id* at 679; *Pizza Hut*, 227 F.3d at 495. Uber's motion to dismiss Plaintiffs' Lanham Act claims based on those representations is GRANTED. (Instrument No. 88).

*c. "Partners"*

Plaintiffs also claim that Uber represents on its website that its drivers are "partners," "driver partners," or "partner drivers" of the Uber company. (Instrument No. 86 at 20). According to Plaintiffs, the "partner" classification is inconsistent with Uber's Terms of Service, which provide that drivers are "third party transportation providers." (*Id*. at 21). Because Plaintiffs claim that these terms are mutually exclusive, they conclude that one of these designations is misleading to the consumer. (*Id*. at 21). Plaintiffs further argue that Uber has misled consumers by quoting a driver on its website who claimed "partnering with uberX is a safer alternative to taxis . . ." (*Id*. at 21).

Plaintiffs' complaint fails to explain how the terms "partner" and "third party transportation provider" are inconsistent. Plaintiffs offer no legal or dictionary definition of

"partner" and do not allege that consumers would expect a different arrangement with a "partner" than they would with a "third party transportation provider." Under Texas law a "partnership" is "an association of two or more persons to carry on a business for profit as owners . . ." Tex. Bus. Orgs. Code Ann. § 152.051 (West, Westlaw through 2013 Third Called Session of the 83rd Legislature). Webster's Dictionary defines a partner as "a person who takes part in some activity in common with another or others." Webster's New World College Dictionary 1050 (4th ed. 2008). Neither definition is necessarily inconsistent with the term "third party transportation provider," nor have Plaintiffs alleged that consumers would rely on one of these definitions and thus be misled by the different characterizations of drivers in Uber's promotional materials. *See Pizza Hut*, 227 F.3d at 495.

The statement that "partnering with uberX is a safer alternative to taxis" is different in kind from Uber's mere use of the term "partner." While statements that a product is better than the competition are typically deemed to be nonactionable puffery, statements as to the comparative safety of a product are specific and measurable, and thus frequently considered actionable. *Compare Pizza Hut*, 227 F.3d at 496-97 (holding that claimed superiority of a product is vague and clearly represents an opinion, and is therefore nonactionable puffery), *with Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 708 F. Supp. 2d 1209, 1243 (D.N.M. 2010) (noting that claims that a product is "safer" is measurable and specific, and therefore not mere puffery), *and Process Controls Int'l, Inc. v. Emerson Process Mgmt.*, 753 F. Supp. 2d 912, 930 (E.D. Mo. 2010) (holding that representations of relative safety are "capable of being proved false" and are thus not mere puffery). Nevertheless, Plaintiffs have failed to plead that Uber's

service is not safer than taxi service and, therefore, has not sufficiently pleaded that this claim is untrue or misleading. *See Pizza Hut*, 227 F.3d at 495.

Accordingly, the Court finds that Plaintiffs have failed to plead a cognizable cause of action that Uber's use of the term "partner" is false or misleading. *See Iqbal*, 556 U.S. at 679; *Pizza Hut*, 227 F.3d at 495. Uber's motion to dismiss Plaintiffs' Lanham Act claims based on those representations is GRANTED. (Instrument No. 88).

### d. Insurance

Plaintiffs also claim that Uber has violated Section 43(a) of the Lanham Act by misrepresenting the scope of its insurance coverage to the public. According to Plaintiffs, Uber represents on its website that:

> At a minimum, there will be a $1,000,000 per-incident insurance policy applicable to ridesharing trips. This insurance applies to any ridesharing trip requested through the Uber technology platform.

(Instrument No. 86 at 27). Plaintiffs claim that Uber actually maintains an "excess and surplus lines policy," rather than a more carefully regulated taxi/livery or commercial auto insurance policy like those held by taxi companies. (*Id*. at 28). According to Plaintiffs, the representation suggests that Uber holds a commercial auto insurance policy, but the coverage Uber actually has is illusory. (*Id*.). The named insured on Uber's insurance policy is actually a third party subsidiary of Uber named Rasier LLC ("Rasier"). (Instrument No. 88-3 at 1). Plaintiffs claim that coverage under the policy is available only if Rasier is found liable for injuries sustained in the accident. (Instrument No. 86 at 29). Plaintiffs also claim that Uber misleads customers about insurance coverage by emphasizing that the "vast majority of personal insurance policies cover" drivers between trips. (*Id*. at 29). Uber also claims that these personal policies fill any potential "insurance gaps" in Uber's commercial policy. (*Id*. at 29; 182). According to Plaintiffs, however,

23

most personal automobile insurance policies exclude coverage for commercial operations. (*Id*.). Despite these purported deficiencies, Plaintiffs states that Uber claims to have "best-in-class commercial insurance," with "almost 20x the requirements taxis have in Houston." (*Id*. at 29-30).

Plaintiffs also claim that Uber's insurance policy is "mooted" by the broad disclaimer contained in its Terms of Service, which states:

> The company may introduce you to third party transportation providers for the purposes of providing transportation. We will not assess the suitability, legality or ability of any third party transportation providers and you expressly waive and release the company from any and all any [sic] liability, claims or damages arising from or in any way related to the third party transportation provider.

(*Id*. at 31, 147-48). According to Plaintiffs, because Uber's insurance coverage is limited to what Uber would be liable for in the case of an injury, the insurance coverage is significantly limited by this disclaimer.

Plaintiffs further claim that Uber's insurance policies offer no security for passengers because Uber lacks an "insurable interest." (*Id*. at 32). "[A]n insurable interest exists when the assured derives pecuniary benefit or advantage by the preservation and continued existence of the property or would sustain pecuniary loss from its destruction[.]" *Smith v. Eagle Star Ins. Co.*, 370 S.W.2d 448, 450 (Tex. 1963) (citations omitted). According to Plaintiffs, Uber denies on its website that it provides transportation services, and instead claims that "the use of the service or application is entirely the responsibility of the third party provider who ultimately provides such transportation services." (Instrument No. 86 at 32-33, 127-28). Because of this disclaimer, Plaintiffs argue Uber lacks the requisite insurable interest in the operation for recovery under Texas law. (*Id*. at 32).

Uber argues that none of its representations about its insurance coverage are false or misleading. First, Uber notes that its website provides "there *will be* a $1,000,000 per-incident insurance policy." (Instrument No. 88 at 18). Because "will be" implies present intent for a future action, Uber argues it cannot be literally false. Furthermore, Uber asserts that none of its materials claim that Uber carries *commercial* auto insurance, and therefore, it has not actually misrepresented its non-commercial insurance policy. (*Id*. at 19). According to Uber, drivers are always covered by either their own personal insurance or Uber's insurance, regardless of whether they are driving a passenger or are between passengers. (*Id*. at 19-20). Uber also denies that it lacks an insurable interest or that its disclaimers would limit coverage in the way claimed by Plaintiffs. (*Id*. at 20-21).

Uber's arguments speak primarily to whether its representations are literally false. Based on Uber's claims that it carries insurance with "almost 20x the requirements taxis have in Houston," however, the public could be led to believe that the insurance policy is of the same type as the cab companies'. This is misleading in part, because the type of insurance policy held by Uber is not the same as that held by cab companies. *See* (Instrument No. 86 at 28). Plaintiffs have adequately pleaded that there could be deficiencies in this insurance coverage, which would render Uber's statements materially misleading. *See IQ Products*, 305 F.3d at 375. Determination of the scope and extent of Uber's insurance coverage is more appropriate at the summary judgment stage at trial. *See Decorative Ctr. of Houston, L.P. v. Direct Response Publ'ns, Inc.*, 208 F. Supp. 2d 719, 728 (S.D. Tex. 2002) (declining to grant a motion to dismiss on a Lanham Act false advertising claim, where it was feasible that the consumer could have been confused or misled by the representations in question), *see also Better Bus. Bureau of*

*Metro. Houston, Inc. v. Med. Dirs, Inc.*, 681 F.2d 397, 400 (5th Cir. 1982) (holding that the determination of whether a representation "raises a likelihood of confusion" under Section 43(a) of the Lanham Act, is a question of fact). Whether these statements are misleading will depend on numerous questions of law and fact related to the insurance coverage and the likely public perception of these statements, which requires consideration of evidence outside of those pleadings, attachments, and incorporated documents that the Court can consider at this stage. *See Wolcott*, 635 F.3d at 763.

Accordingly, the Court finds that Plaintiffs have adequately pleaded that Uber's statements regarding insurance could have been false or misleading. *See Iqbal*, 556 U.S. at 679; *Pizza Hut*, 227 F.3d at 495. Uber's motion to dismiss Plaintiffs' Lanham Act claims based on those representations is DENIED. (Instrument No. 88).

<u>2. Lyft</u>

The Court next considers the alleged misrepresentations made by Lyft, many of which are the same as or similar to those made by Uber.

*a. Compliance with Local Regulations*

Plaintiffs first allege that Lyft misrepresents to the public that it operates lawfully in Houston and San Antonio. According to Plaintiffs, Lyft's Terms of Service provide that its drivers have "all appropriate licenses, approvals, and authority to provide transportation to third parties in all jurisdictions in which such Driver uses the Services." (Instrument No. 86 at 25, 198). Plaintiffs claim that Lyft, like Uber, is or was operating in Houston and San Antonio without obtaining the proper permits, and otherwise violated the cities' respective municipal

codes. (*Id*. at 25-26). Plaintiffs further claim that Lyft has been cited for this conduct on numerous occasions in both cities. (*Id*.).

The Court finds, for the same reasons stated above, that *Dial A Car* precludes these types of Lanham Act claims. Plaintiffs are attempting to use the Lanham Act to enforce their preferred interpretation of local ordinances. *See Dial A Car*, 82 F.3d at 488.

Accordingly, the Court finds that Plaintiffs have failed to plead a cognizable cause of action that Lyft's representations about the legality of its operations are false or misleading. *See Iqbal*, 556 U.S. at 678; *Dial A Car*, 82 F.3d at 488. Lyft's motion to dismiss Plaintiffs' Lanham Act claims based on those representations is GRANTED. (Instrument No. 87).

*b. "Ridesharing"*

Plaintiffs also argue that Lyft has misrepresented itself to the public as a "ridesharing" service. According to Plaintiffs, Lyft describes its service as "on-demand ridesharing" or "an on-demand ride share platform." (Instrument No. 86 at 19). Relying on the same definitions of "ridesharing" from the HCO and American Heritage Dictionary discussed above, Plaintiffs argue that Lyft is not in fact a ridesharing enterprise because it charges fees. (*Id*. at 19-20).

The Court finds, for the same reasons stated above, that Plaintiffs have failed to state a claim. Insofar as Plaintiffs attempt to rely on the HCO's definition of ridesharing for this claim, it is an impermissible attempt to use the Lanham Act to enforce local ordinances. *See Dial A Car*, 82 F.3d at 488. Furthermore, Plaintiffs have not plausibly stated how use of the term "ridesharing" is misleading to consumers with respect to Lyft's payment model. *See Pizza Hut*, 227 F.3d at 495.

Accordingly, the Court finds that Plaintiffs have failed to plead that Lyft's use of the term "ridesharing" is false or misleading. *See Iqbal*, 556 U.S. at 678; *Pizza Hut*, 227 F.3d at 495. Lyft's motion to dismiss Plaintiffs' Lanham Act claims based on those representations is GRANTED. (Instrument No. 87).

*c. Insurance*

Plaintiffs also claim that Lyft has violated Section 43(a) of the Lanham Act by misrepresenting the scope of its insurance coverage to the public. According to Plaintiffs, Lyft claims on its website: "From background checks to our first-of-its-kind $1,000,000 liability insurance, we go above and beyond to create a more safe community." (Instrument No. 86 at 30). Plaintiffs further claim that Lyft "routinely compares its alleged insurance to that of taxicabs, claiming to have more coverage of course." (*Id*.). Plaintiffs identify largely the same concerns with Lyft's coverage as it did with Uber's, namely that Lyft lacks commercial auto insurance like cab companies, that Lyft's liability disclaimers could impact insurance coverage, and that Lyft lacks an insurable interest. (*Id*. at 30-32).

While Plaintiffs' allegations against Lyft are not quite as explicit as those against Uber, it has similarly claimed that Lyft represents to the public that it carries insurance and openly compares that insurance to that of cabs. (*Id*. at 30). The Court finds, for the same reasons stated above, that Plaintiffs have stated a claim under Section 43(a) of the Lanham Act. Whether Lyft's statements are misleading depends on numerous questions of law and fact related to the insurance coverage and the likely public perception of these statements, which requires consideration of evidence outside of those pleadings, attachments, and incorporated documents that the Court can consider at this stage. *See Wolcott*, 635 F.3d at 763. This is more properly

28

considered at the summary judgment stage or at trial. *See Decorative Ctr.*, 208 F. Supp. 2d at 728.

Accordingly, the Court finds that Plaintiffs have adequately pleaded that Lyft's statements regarding insurance could have been false or misleading under the Lanham Act. *See Iqbal*, 556 U.S. at 679; *Pizza Hut*, 227 F.3d at 495. Lyft's motion to dismiss Plaintiffs' Lanham Act claims based on those representations is DENIED. (Instrument No. 88).

*d. "Donations"*

Plaintiffs also argue that Lyft misrepresents its payment model by claiming on its website that drivers collect only "donations" in Houston and San Antonio. According to Plaintiffs, Lyft's website indicates that in some cities it charges a set amount for rides, while in other cities, like Houston and San Antonio, the passenger has the discretion to leave a donation. (Instrument No. 86 at 22). Plaintiffs claim that the city-specific webpages clarify that a "suggested donation" is calculated based on a "base charge," "cancel penalty," "cost minimum," "cost per mile," and "cost per minute." (*Id.*). Plaintiffs further claim that Lyft automatically charges the full "suggested donation," to riders, unless the rider affirmatively opts out. (*Id.*). According to Plaintiffs, the pressure to donate is exacerbated by Lyft drivers' ability to screen passengers based on whether they have made donations, and the mobile app's warning to users that they are more likely to obtain a ride if they consistently make donations. (*Id.*).

Lyft counters that nothing alleged by Plaintiffs renders its donation-based model false or misleading. Plaintiffs have, however, adequately pleaded that Lyft's materials could lead a customer to believe that the service is strictly donation-based, but that the Lyft app automatically charges less savvy customers for the service and effectively requires payment if customers wish

29

to actually be picked up by drivers. Courts have found violations of the Lanham Act where a business advertises a product or service as free, but charges hidden fees or requires that the customer cancel service to avoid being charged. *See, e.g., Rent-A-Ctr. W., Inc. v. Aaron Rents, Inc.*, No. CIV.A. 3:03-CV-1595-K, 2004 WL 813225, at *3 (N.D. Tex. Apr. 14, 2004) (finding that ads claiming "Free Service Included!" were false and misleading, because customers were required to pay separate service fees). Whether Lyft's statements are false or misleading depends on numerous questions of law and fact, which require consideration of evidence outside of those pleadings, attachments, and incorporated documents that the Court can consider at this stage. *See Wolcott*, 635 F.3d at 763. This claim is more properly considered at the summary judgment stage or at trial. *See Decorative Ctr.*, 208 F. Supp. 2d at 728.

Accordingly, the Court finds that Plaintiffs have adequately pleaded that Lyft's statements regarding its donation-based model could have been false or misleading. *See Iqbal*, 556 U.S. at 679; *Pizza Hut*, 227 F.3d at 495. Lyft's motion to dismiss Plaintiffs' Lanham Act claims based on those representations is DENIED. (Instrument No. 88).

## IV. LAW & ANALYSIS: TORTIOUS INTERFERENCE

Defendants next move to dismiss Plaintiffs' Texas common law claims of tortious interference with existing contracts and prospective business relations.[3]

### A. Interference with Existing Contract

Under Texas law, to state a claim for tortious interference with an existing contract, a plaintiff must allege:

---

[3] Lyft has argued that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(c)(3). (Instrument No. 87 at 19). This argument was based on a presumption that the Court would dismiss Plaintiffs' Lanham Act claims. *See Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) ("When a Court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims."). Because the Court has not dismissed Plaintiffs' Lanham Act claims, Lyft's request is inapposite and need not be considered.

(1) the existence of a contract subject to interference;

(2) willful and intentional interference;

(3) interference that proximately caused damage; and

(4) actual damage or loss.

*Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex. 1998). The first element requires that a valid contract exist, but that contract need not be enforceable. *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 664 (Tex. 1990), *superseded on other grounds by statute as recognized in Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909 (Tex. 2013). A defendant must also have actual knowledge of the contract, or knowledge of facts and circumstances that would lead a reasonable person to believe there was a contract. *Steinmetz & Assocs, Inc. v. Crow*, 700 S.W.2d 276, 277 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.). Plaintiffs must also show that the defendant intended to interfere with the contract, or that the defendant believed that a breach of contract was substantially certain to result. *Sw. Bell Tel. Co. v. John Carlo Texas, Inc.*, 843 S.W.2d 470, 472 (Tex. 1992). Merely entering into a contract with knowledge of a party's obligations is not an intentional interference; the defendant must induce or persuade the party to breach. *See Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 861 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d 721, 731 (Tex. App.—Austin 2000, pet. denied).

Plaintiffs claim that Defendants have solicited independent contract drivers to drive for Uber and Lyft, and in so doing induced them to breach contracts with Plaintiffs. According to Plaintiffs, Defendants are aware of Houston's and San Antonio's regulations and are aware of Plaintiffs' compliance with these regulations, and therefore have knowledge of Plaintiffs' relationships with independent drivers. Plaintiffs have, however, failed to properly allege an

actual existing contract between Plaintiffs and any independent drivers. *See M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 774 (S.D. Tex. 2010) (holding that tortious interference claim was deficient because it failed to allege a specific contract that was the subject of the interference). Furthermore, Plaintiffs have not properly alleged that Uber or Lyft were aware of any such contracts. Plaintiffs' claim that because Defendants knew that Plaintiffs operated in these cities, they knew of the nature of their business relations with individual drivers, is entirely conclusory. *See Great Lakes Dredge*, 624 F.3d at 210. Knowledge of Plaintiffs' business and of the existence of individual drivers does not demonstrate knowledge of individual contracts. Furthermore, Plaintiffs have not alleged that Defendants intended to interfere with Plaintiffs' existing business. Plaintiffs allege that "Defendants were certain, or substantially certain, that interference with the Plaintiffs' independent-contract driver relationships would occur if they unlawfully entered the market." (Instrument No. 86 at 37-38). This says nothing, however, of Defendants' intentional interference. Plaintiffs have not alleged that Defendants induced or persuaded any specific drivers to breach contracts. *See John Paul Mitchell*, 17 S.W.3d at 731.

Accordingly, the Court finds that Plaintiffs have not adequately pleaded that Defendants, with knowledge of Plaintiffs' business relationships with drivers, intentionally induced those drivers to work for them and breach contracts with Plaintiffs. *See Iqbal*, 556 U.S. at 679; *Powell*, 985 S.W.2d at 456. Defendants' motions to dismiss Plaintiffs' tortious interference with existing contracts are GRANTED. (Instrument Nos. 87; 88).

### B. Interference with Prospective Business Relations

Defendants also move to dismiss Plaintiffs' claims of tortious interference with prospective business relations. Under Texas law, to state a claim for tortious interference with prospective business relations, a plaintiff must allege:

(1) a reasonable probability that the parties would have entered into a business relationship;

(2) an intentional, malicious intervention or an independently tortious or unlawful act performed by the defendant with a conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially likely to occur as a result of its conduct;

(3) a lack of privilege or justification for the defendant's actions; and

(4) actual harm or damages suffered by the plaintiff as a result of the defendant's interference, i.e., that the defendant's actions prevented the relationship from occurring.

*Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 590 (Tex. App.—Austin 2007, pet. denied). To show that a defendant's interference was intentional, a plaintiff must show that the defendant had actual knowledge of the prospective business relations. *Texas Oil Co. v. Tenneco Inc.*, 917 S.W.2d 826, 834 (Tex. App.—Houston [14th Dist.] 1994) *rev'd on other grounds*, 958 S.W.2d 178 (Tex. 1997). Furthermore, as in the case of interference with an existing contract, interference with prospective business relations is intentional if the defendant intended to interfere or was substantially certain that interference would result, but not if the interference was incidental. *Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001).

Unlike tortious interference with an existing contract, tortious interference with prospective business relations requires that the plaintiff show independently tortious or unlawful conduct by the defendant. *See Texas Disposal*, 219 S.W.3d at 590. In this context, independently

tortious or unlawful means that the "defendant's conduct would be actionable under a recognized tort." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). The plaintiff is not required to prove the independent tort, but rather must establish that the defendant's conduct would be actionable under a recognized tort. *Id*.

Plaintiffs' claims for interference with prospective business relations are largely the same as those for interference with existing contracts. Plaintiffs claim that Defendants solicited independent drivers, despite a reasonable probability that Plaintiffs had already entered into contracts and would enter into future contracts and business relationships with these drivers. Additionally, Plaintiffs claim that "Defendants' conduct is per se unlawful because they are in violation of the Regulatory Framework and operate in defiance of applicable Houston and San Antonio ordinances." (Instrument No. 86 at 38). For the same reasons discussed above, the Court finds that Plaintiffs fail to adequately plead that any interference was intentional. *See Bradford*, 48 S.W.3d at 757. Furthermore, Plaintiffs have not pleaded independently tortious conduct performed with a desire to interfere. The alleged violations of Houston and San Antonio ordinances are not actionable. *See Sturges*, 52 S.W.3d at 726.

Accordingly, because Plaintiffs have not adequately pleaded that Defendants engaged in intentional or tortious acts in order to interfere with known prospective business relationships of Plaintiffs, s*ee Iqbal*, 556 U.S. at 679; *Texas Disposal*, 219 S.W.3d at 590, Defendants' motions to dismiss Plaintiffs' tortious interference with prospective business relationships are GRANTED. (Instrument Nos. 87; 88).

## V. LAW & ANALYSIS: UNFAIR COMPETITION

Defendants next move to dismiss Plaintiffs' Texas common law claim of unfair competition.

"Unfair competition under Texas law is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (citations omitted). Liability for unfair competition must be premised on some "independent substantive tort or other illegal conduct." *Schoelkopf v. Pledger*, 778 S.W.2d 897, 904-05 (Tex. App.—Dallas 1989, writ denied). "Although the illegal act need not necessarily violate criminal law, it must at least be an independent tort." *Taylor Pub.*, 216 F.3d at 486.

The parties only dispute whether Plaintiffs have alleged additional substantive torts or illegal conduct to support this claim. Plaintiffs cannot base their unfair competition claim on violations of a local ordinance, because that conduct is not criminal or an independent tort. *See id.* at 486. Furthermore, the Court has already dismissed Plaintiffs' tortious interference claims and those Lanham Act claims based on failure to comply with local regulations or use of the terms "ridesharing" or "partner." The Court has declined, however, to dismiss Plaintiffs' Lanham Act claims based on Uber's and Lyft's representations about insurance and Lyft's claimed donation-based model. Therefore, those particular unfair competition claims are properly premised on independent substantive torts. *See Schoelkopf*, 778 S.W.2d at 904-05.

Accordingly, the Court finds that Plaintiffs have adequately pleaded common law claims of unfair competition against Uber and Lyft. *See Iqbal*, 556 U.S. at 679; *Schoelkopf*, 778 S.W.2d

at 904-05. Therefore, Defendants' motions to dismiss Plaintiffs' unfair competition claims are GRANTED in part and DENIED in part. (Instrument Nos. 87; 88).

## VI. LAW & ANALYSIS: PERMANENT INJUNCTION

Defendants next move to dismiss Plaintiffs' request for a permanent injunction.

15 U.S.C. § 1116 authorizes district courts to grant permanent injunctions, "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C.A, § 1116(a)(West). To obtain an injunction, a plaintiff must establish:

(1) that it has suffered an irreparable injury;

(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Whether or not to grant an injunction is within the sound discretion of the trial court. *Frostie Co. v. Dr. Pepper Co.*, 361 F.2d 124, 126-27 (5th Cir. 1966).

Plaintiffs do not allege in their complaint that they have been or will be irreparably injured by Defendants' actions. The parties, however, dispute whether it is appropriate to presume irreparable injury in this case.

The Second Circuit held in *McNeilab, Inc. v. Am. Home Products Corp.*, 848 F.2d 34, 38 (2d Cir. 1988), that misleading comparisons between competing products necessarily diminishes the product's value in the minds of the consumer, and therefore creates a presumption of irreparable injury. The rule stated in *McNeilab* has been followed within the Fifth Circuit. *See, e.g., Rent-A-Ctr.*, 2004 WL 813225, at *5.

36

In 2006, the Supreme Court held in *eBay* that a finding of patent infringement does not automatically entitle a patentee to an injunction, but rather, that the traditional equitable four-factor test should always be applied. 547 U.S. at 393-94. The Court's decision in *eBay* cast "doubt on prior case law suggesting that trademark or trade dress infringement constitutes irreparable injury as a matter of law." *Clearline Techs. Ltd v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 715 (S.D. Tex. 2013). Numerous circuit courts have questioned the presumption of irreparable injury in Lanham Act cases in light of the *eBay* decision. *See Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) *cert. denied,* 135 S. Ct. 57 (2014); *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 34 (1st Cir. 2011); *North Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1228 (11th Cir. 2008).

The Fifth Circuit has signaled that presumptions of irreparable injury are still appropriate following the Supreme Court's *eBay* decision. In 2013, the Fifth Circuit held in *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626-27 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 88 (2013), that the irreparable injury element from *eBay* is presumed when a plaintiff shows a "likelihood of confusion" for the purposes of a Lanham Act claim. There is no clear directive from the Supreme Court that a district court cannot presume irreparable injury in a Lanham Act case where a defendant directly compares itself to the competitor. Following Fifth Circuit precedent on this issue, the Court finds that Plaintiffs have adequately pleaded the requirements for permanent injunctive relief. *See eBay*, 547 U.S. at 391; *Abraham*, 708 F.3d at 626-27; *Lormand*, 565 F.3d at 232. The Court's decision is, however, limited to the specific question of whether irreparable injury can be proved in Plaintiffs' surviving Lanham Act claims based on alleged comparative misrepresentations by Defendants.

Accordingly, Defendants' motions to dismiss Plaintiffs' request for a permanent injunction are DENIED. (Instrument Nos. 87; 88).

## VII. LAW & ANALYSIS: *BURFORD* ABSTENTION

Defendants have both asked the Court to abstain from deciding this case under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The Fifth Circuit has held that *Burford* abstention is appropriate "where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993) (quoting *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989)). In making this determination, the Court may consider: "1) whether the cause of action arises under federal or state law, 2) whether the case requires inquiry into unsettled issues of state law, 3) the importance of the state interest involved, 4) the state's need for coherent policy in that area, and 5) the presence of a special state forum for judicial review." *Wilson*, 8 F.3d at 314 (citations omitted).

The Court has already dismissed all of Plaintiffs' claims based on violations of local Houston and San Antonio ordinances, pursuant to *Dial A Car*, 82 F.3d 484. Therefore, the Court finds that there is no risk of disrupting "state efforts to establish a coherent policy," on this issue. *See Wilson*, 8 F.3d at 314.

Accordingly, Defendants' request for *Burford* abstention is DENIED. (Instrument Nos. 87; 88).

## VIII. CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED THAT Defendant Lyft's motion to dismiss (**Instrument No. 87**) is **GRANTED in part** and **DENIED in part**. IT IS FURTHER ORDERED THAT Defendant Uber's motion to dismiss (**Instrument No. 88**) is **GRANTED in part** and **DENIED in part**.

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the 10th day of March, 2015, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**