United States District Court
Southern District of Texas
**ENTERED**
December 18, 2015
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| GREATER HOUSTON | § | |
| TRANSPORTATION COMPANY, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:14-0941 |
| | § | |
| UBER TECHNOLOGIES, INC. | § | |
| | § | |
| | § | |
| Defendant. | § | |

## O R D E R

Pending before the Court are Defendant Uber Technologies, Inc. ("Uber")'s Motion to Dismiss Plaintiffs' Third Amended Complaint (**Instrument No. 112**) and Uber's Motion for Summary Judgment (**Instrument No. 129**).

## I. FACTUAL SUMMARY & PROCEDURAL POSTURE

### A. Statement of the Case

This is a suit for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), brought by taxicab permit-holders in Houston and San Antonio, Texas, against Uber. Uber is a self-described mobile-based transportation network company ("TNC") based in San Francisco, California, which enables customers to use smartphone apps to connect with third party drivers for transportation. Plaintiffs are taxicab permit-holders in Houston and San Antonio, who claim that Uber is unfairly competing with the taxicab industry by misrepresenting the safety of its services to consumers. Defendant now moves to dismiss all of Plaintiffs' claims in the Third Amended Complaint. Defendant argues that all of the alleged misrepresentations are mere puffery, not statements meant for the general public to rely upon, and that many of the

challenged statements are not commercial speech regulated by the Lanham Act. Defendant further moves for summary judgment on Plaintiffs' claims, alleging that Uber's statements were not false or misleading, and that Plaintiffs have failed to adduce evidence that consumers were deceived by Uber's alleged misrepresentations.

### B. Factual Background

Plaintiffs, Greater Houston Transportation Company ("GHTC"), Fiesta Cab Company ("Fiesta"), Pasadena Taxi Co., Inc. ("Pasadena"), Dawit Sahle ("Sahle"), Mersha Ayele ("Ayele"), Mohammed Didi ("Didi"), Greater San Antonio Transportation Company ("GSATC"), and Enterprise Transportation Inc. ("Enterprise") (collectively, "Plaintiffs"), are licensed taxi operators in Houston and San Antonio. (Instrument No. 86 at 1-5). As in most markets, Plaintiffs' taxis can be hailed by customers on the street or requested by phone or on-line, to provide transportation to a desired location for a published rate. (Instrument No. 86 at 5). Many of the Plaintiffs also offer smartphone apps, which allow customers to locate, schedule, and track their vehicle service. (Instrument No. 86 at 5).

In order to operate a taxi in Houston or San Antonio, Plaintiffs are required to comply with certain regulations. Municipalities are authorized by Texas law to license, control, and otherwise regulate taxi transportation service. TEXAS LOC. GOV'T CODE ANN. § 215.004(a) (West 2015). Unlike traditional ground transportation services, Uber does not own vehicles or employ drivers. (Instrument No. 10 at 5). Instead, Uber only offers a smartphone app, which allows a passenger to request paid transportation from third-party transportation providers. (Instrument No. 10 at 5).

Plaintiffs claim Uber began operating in Houston on or about February 20, 2014, and in San Antonio, on or about March 24, 2014. (Instrument No. 86 at 6, 25-26). Plaintiffs have

alleged that during and since that period of time, Uber has been advertising and promoting the safety of Uber rides as compared to taxis, and boasting of the superiority of its background check process as compared to taxi cabs. (Instruments No. 107 at 7; No. 143). On April 1, 2015, one of Houston's Uber drivers was arrested for allegedly sexually assaulting a passenger. (Instrument No. 107-15). The Uber driver had passed an Uber background check despite having a criminal record. (Instrument No. 107-15).

### C. Procedural Posture

On April 8, 2014, Plaintiffs filed a complaint and application for temporary restraining order, preliminary injunction, and permanent injunction in the United States District Court for the Southern District of Texas against Defendants Uber and another TNC called Lyft, which was then operating in Houston and San Antonio. (Instrument No. 1).[1] Plaintiffs sought declaratory judgment that Defendants violated the relevant city ordinances in Houston and San Antonio. (Instrument No. 1 at 36-37). Plaintiffs further brought a Texas state claim of unfair competition and claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, and the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), related to alleged mail fraud and false advertising. (Instrument No. 1 at 37-38). Plaintiffs claimed that by avoiding permitting fees, Defendants had obtained illicit profits, that otherwise would have gone to Plaintiffs. (Instrument No. 1 at 35-36). Plaintiffs further alleged that Defendant's gained an unfair advantage as compared to the regulated taxi business, because they failed to carry the insurance required of taxicab operators. (Instrument No. 1 at 17-18).

On April 21, 2014, the Court held a hearing on Plaintiffs' motion for a temporary restraining order. The Court denied Plaintiffs' motion for a temporary restraining order. (Court's

---

[1] The initial complaint and first amended complaint in this action included additional individual plaintiffs and defendants who have since been dismissed. (Instruments No. 1; No. 39; No. 74; No. 78; No. 79; No. 120; No. 128; No. 137).

Minute Entry, April 21, 2014 Hearing). The Court scheduled a preliminary injunction hearing for a future date, but the parties later agreed to cancel the preliminary injunction hearing. (Instrument No. 67). Plaintiffs reserved the right to seek injunctive relief in the future. (Instruments No. 60; No. 63).

On May 5, 2014, Uber and Lyft each filed motions to dismiss all of Plaintiffs' claims. (Instruments No. 28; No. 29; No. 36). Plaintiffs filed an amended complaint on May 12, 2014, and the Court terminated the motions to dismiss. (Instrument No. 39).

On July 10, 2014, Uber and Lyft each filed new motions to dismiss all claims in Plaintiffs' first amended complaint. (Instruments No. 50; No. 51). On August 9, 2014, the City of Houston enacted City Ordinance No. 2014-754, which amended Chapter 46 of the Houston Code of Ordinances ("HCO"). (Instrument No. 88-2). The ordinance created a new classification for TNCs and provided permitting and other regulations for such entities. HOUSTON, TEX., ORDINANCES, ch. 46, art I, § 46-503 (2014). Following this action, Lyft in fact suspended operations in Houston. (Instrument No. 90 at 6). On December 11, 2014, San Antonio's City Council adopted similar amendments to Chapter 33 of the San Antonio City Code of Ordinances ("SACCO"). (Instrument No. 95 at 5). Ordinance Number 2013-12-11-1002 included numerous amendments to the SACCO provisions on vehicles for hire, most notably adding provisions for TNCs. *See* SAN ANTONIO, TEX. REV. ORDINANCES, ch. 33, art IX. On October 2, 2014, the Court denied Defendants' motions to dismiss as moot, as Plaintiffs' had indicated they would be filing a second amended complaint as a result of the changes to the city ordinances. (Instrument No. 83). On October 3, 2014, the Court granted Plaintiffs' motion for leave to file a second amended complaint. (Instrument No. 85).

On October 3, 2014, Plaintiffs filed a second amended complaint. (Instrument No. 86). Plaintiffs alleged that Defendants violated the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), by using misleading terminology to describe its businesses, and by misrepresenting its insurance coverage and compliance with local ordinances regulating vehicles for hire. (Instrument No. 86). Plaintiffs further alleged that Defendants had tortiously interfered with Plaintiffs' business relations by soliciting independent contract drivers to drive for its allegedly unlawful operations, rather than Plaintiffs. (Instrument No. 86).   Plaintiffs also pleaded a Texas common law claim of unfair competition, based on this conduct, and sought a permanent injunction pursuant to 15 U.S.C. § 1116(a). (Instrument No. 86).

On October 17, 2014, Uber and Lyft filed motions to dismiss all claims in Plaintiffs' second amended complaint. (Instruments No. 87; No. 88). On November 7, 2014, Plaintiffs filed responses to Defendants' motions to dismiss. (Instruments No. 90; No. 91). Defendants filed replies on November 12, 2014. (Instruments No. 92; No. 93).

On March 10, 2015, the Court dismissed all of Plaintiffs' claims other than the Lanham Act and state common law claims based on Uber's and Lyft's alleged misrepresentations regarding insurance coverage. (Instrument No. 96). On May 13, 2015, Plaintiffs filed a Third Amended Complaint asserting only claims based on Uber's and Lyft's alleged misrepresentations relating to safety, background checks, and insurance coverage. (Instrument No. 107). On June 10, 2015, Defendant filed the pending Motion to Dismiss the Third Amended Complaint, arguing that Uber's statements about the safety of its service are non-actionable advertising puffery. (Instrument No. 112). On July 1, 2015, Plaintiffs filed a Response in Opposition to the Motion to Dismiss. (Instruments No. 117; No. 118). On July 2, 2015, the Court granted the Plaintiff National Cab Co., Inc.'s motion to dismiss its claims against Uber.

(Instrument No. 120). During a July 28, 2015 deposition, the parties stipulated that Plaintiffs' claims regarding insurance misrepresentations would be dismissed, unless they pertained directly to Plaintiff's claim of safety misrepresentations. (Instrument No. 135 at 5-6). On August 31, 2015, the Court granted Plaintiffs' Motion to Dismiss its claims again Defendant Lyft. (Instrument No. 128).

On September 1, 2015, Defendant Uber filed the pending Motion for Summary Judgment arguing that Plaintiffs had failed to prove all the elements of their Lanham Act claim. (Instrument No. 129). On September 17, 2015, the Court granted Plaintiff Houston Transportation Services, LLC's motion to dismiss its claims against Uber. (Instrument No. 137). On September 22, 2015, Plaintiffs filed a Response in Opposition to the Motion for Summary Judgment. (Instrument No. 143). In the Response, Plaintiffs stipulated that they would no longer pursue claims relating to the alleged representations regarding insurance. (Instrument No. 143 at 7, fn.1). Plaintiffs stipulated that the need to pursue relief regarding insurance misrepresentations was obviated by the Texas Legislature having passed a law mandating insurance requirements for TNCs like Uber. (Instrument No. 143 at 7, fn.1); Act of May 26, 2015, H.B. 1733, Ch. 742 Tex. Sess. Law Serv. (West 2015). The parties have further stipulated that any alleged representations related to insurance are not dismissed to the extent they are relevant to the alleged safety misrepresentations. (Instrument No. 160). Plaintiffs' claims in the Third Amended Complaint based on Uber's alleged representations related to safety and background checks were not dismissed by the parties' stipulation. (Instruments No. 107; No. 112; No. 129, No. 143; No. 160).

Now pending before this Court is Defendant's Motion to Dismiss Plaintiffs' claim of false advertising under Section 43(a) of the Lanham Act and Plaintiffs' Texas common law claim

of unfair competition. (Instrument No. 112). Also pending is Defendant's Motion for Summary Judgment on the Plaintiffs' Lanham Act claim, Plaintiffs' Texas common law claim of unfair competition, and Plaintiffs' request for permanent injunctive relief. (Instrument No. 129).

## II. MOTION TO DISMISS

### A. Legal Standard

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint need not contain "detailed factual allegations," but it must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Likewise, a complaint that articulates "naked assertions devoid of further factual enhancement" is similarly insufficient to satisfy the pleading requirements of Rule 8. *Iqbal*, 556 U.S. at 678 (internal punctuation omitted).

When a complaint does not meet the pleading requirements, Rule 12(b)(6) authorizes dismissal of a civil action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, the complaint must articulate "the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). Stated otherwise, in order to withstand a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). A claim for relief is plausible on its face "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010). A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678. This "plausibility standard is not akin to a probability requirement, but asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Twombly*, 550 U.S. at 557.

Under this rubric, dismissal is proper only if the plaintiff's complaint: (1) does not include a cognizable legal theory, *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), or (2) includes a cognizable legal theory but fails to plead enough facts to state a claim to relief that is plausible on its face, *Pleasant*, 663 F.3d at 775; *see also Frith v. Guardian Life Ins. Co.*, 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998) (Gilmore, J.) (holding that dismissal pursuant to Rule 12(b)(6) "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory").

When ruling on a 12(b)(6) motion, the Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[2] *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations and quotations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court does not resolve any disputed fact issues. *Davis v. Monroe City Bd. of Educ.*, 526 U.S. 629, 633 (1999). Instead, the Court assumes all well-pleaded facts contained

---

[2] Matters of which a court may take judicial notice includes, for example, matters of public record. *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006).

in the complaint are true. *Wolcott*, 635 F.3d at 763. The Court will not, however "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010). Similarly, legal conclusions masquerading as factual conclusions need not be treated as true. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995); *see also Iqbal*, 556 U.S. at 678. Although all well-pleaded facts are viewed in the light most favorable to the plaintiff, *Turner*, 663 F.3d at 775; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009), the Court "will not strain to find inferences favorable to the plaintiff." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal citations and quotations omitted). Therefore, "to avoid a dismissal for failure to state a claim, a plaintiff must plead specific facts." *Dorsey*, 540 F.3d at 338.

That said, "motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted). Given the harshness of dismissal, the Court will generally "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given.") (internal citations omitted).

### B. False Advertising under the Lanham Act

Defendant moves to dismiss Plaintiffs' claim for false advertising under the Lanham Act. (Instrument No. 112). Plaintiffs allege a federal claim of false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) which provides in relevant part that:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . .

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a) (West 2015).

The Fifth Circuit has explained that this section of the Lanham Act provides "protection against a myriad of deceptive commercial practices, including false advertising or promotion." *Pizza Hut, Inc. v. Papa John's Int'l*, 227 F.3d 489, 494-95 (5th Cir. 2000).

To make out a prima facie case of false advertising under Section 43(a), the plaintiff must establish five elements:

(1) A false or misleading statement of fact about a product;

(2) Such statement either deceived or had the capacity to deceive a substantial segment of potential consumers;

(3) The deception was material, in that it is likely to influence the consumer's purchasing decision;

(4) The product is in interstate commerce; and

(5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

*IQ Products Co. v. Pennzoil Products Co.*, 305 F.3d 368, 375 (5th Cir. 2002). "The failure to prove the existence of any element of the prima facie case is fatal to the plaintiff's claim." *Pizza Hut*, 227 F.3d at 495 (citations omitted).

Statements that a product is better than the competition are typically deemed to be non-actionable puffery; however, statements as to the comparative safety of a product are specific and measurable, and thus frequently considered actionable. *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496-97 (5th Cir. 2000) (holding that claimed superiority of a product is vague and clearly represents an opinion, and is therefore non-actionable puffery); *but see Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 708 F. Supp. 2d 1209, 1243 (D.N.M. 2010) (noting that claims that a product is "safer" is measurable and specific, and therefore not mere puffery).

The Third Amended Complaint outlines examples of Uber's alleged misrepresentations that Plaintiffs allege are actionable under the Lanham Act. (Instrument No. 107 at 7). Plaintiffs argue that Defendant has disseminated misrepresentations with regard to the safety of its services, creating an uneven playing field in the marketplace, such that consumers choose Uber's services over that of the Plaintiffs'. (Instrument No. 107 at 7). Plaintiffs further argue that Defendant's misrepresentations are particularly harmful because of Uber's specific comparisons to taxicab transportation. (Instrument No. 107 at 7).

Plaintiffs allege that Uber makes a number of representations, on its webpages, in communications with customers and in the media, designed to create the impression that Uber ensures its customers' safety. (Instrument No. 107 at 7). Plaintiffs allege that Uber has made the following types of misrepresentations: (1) Uber's representations regarding the superiority of its background checks; (2) Uber's representations about the Safe Rides Fee; (3) Uber's representations regarding safety in interactions with the media. (Instrument No. 107 at 7-21). Defendant argues that none of Uber's statements regarding safety are sufficiently "specific and measurable" to be actionable under the Lanham Act. (Instrument No. 112 at 10-14). Defendant further argues that statements made to the news media do not qualify as commercial advertising or promotion and are thereby not actionable under the Lanham Act. (Instrument No. 112 at 14).

<u>1. Uber's representations regarding the superiority of its background checks</u>

Plaintiffs contend that Uber's advertising touts rigorous background checks to which Uber drivers are subject, while simultaneously drawing comparisons to inferior background checks by taxicab companies. (Instrument No. 107 at 7-10). Defendant Uber argues that such statements are non-actionable puffery. (Instrument No. 112 at 11).

The Fifth Circuit has consistently held that a statement of fact is one can be adjudged true or false and allows for empirical verification. *Eastman Chem. Co. v. Plastipure, Inc.,* 775 F.3d 230, 235 (5th Cir. 2014) citing *Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.,* 784 F.2d 674, 679 (5th Cir. 1986). For a misrepresentation to be actionable under the Lanham Act, the statement must make a "'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" *Pizza Hut, Inc. v. Papa John's Int'l,* 227 F.3d 489, 496 (5th Cir. 2000) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 731 (9th Cir. 1999)); *see also Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1145 (9th Cir. 1997) (finding that a statement of fact is one that makes "a specific and measurable advertisement claim of product superiority"). In contrast, "[b]ald assertions of superiority" and "exaggerated, blustering, and boasting statement [s]" are non-actionable opinions. *Pizza Hut,* 227 F.3d at 496-97.

Plaintiffs' Third Amended Complaint points to a series of statements on Uber's website that Plaintiffs allege are actionable under the Lanham Act. (Instrument No. 107 at 7-10). Plaintiffs' argue that Defendant's statements on Uber's "Safety" webpage are false or misleading. (Instruments No. 107 at 7-8; No. 107-7).

Plaintiffs contend that Defendant's statement, "SAFEST RIDE ON THE ROAD - Going the Distance to Put People First" is a false and misleading statement actionable under the

Lanham Act. (Instruments No. 107 at 8; No. 107-7). Plaintiffs further point to allegedly false or misleading statements by Uber that "expand[] on this theme" (Instrument No. 107 at 8, ¶27):

> "That means setting the strictest safety standards possible, then working hard to improve them every day. The specifics vary, depending upon what local governments allow, but within each city we operate, we aim to go above and beyond local requirements to ensure your comfort and security - and what we're doing in the U.S. is an example of our standards around the world."

(Instrument No. 107-7).

The statement, "SAFEST RIDE ON THE ROAD — Going the Distance to Put People First" is a bald assertion of superiority — a general, subjective claim that lacks concrete measurability. *See Newcal Indus., Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1053 (9th Cir. 2008) (finding that in cases considering puffery, that consumer reliance will be induced by specific rather than general assertions); *see also In re Ford Motor Co. Sec. Litig., Class Action,* 381 F.3d 563, 570-71 (6th Cir. 2004) (holding that the statement that "Ford is a worldwide leader in automotive safety" is non-actionable puffery). There is no discernible way to measure whether or how Uber might be judged to be the "SAFEST RIDE ON THE ROAD," as that statement does not make a claim as to what measure of safety or what geographic scope Uber's statement applies to. Likewise, there is no objective measure that could be used to prove that Uber is in fact, "Going the Distance to Put People First." *See L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, No. 15-CV-01257-JST, 2015 WL 4397706 (N.D. Cal. July 17, 2015) (granting dismissal of plaintiff's Lanham Act claims based on advertising that was mere puffery). As such, this statement is clearly the type of "'exaggerated advertising'" slogan upon which no reasonable customer would rely. *See L.A. Taxi Coop., Inc.,* 2015 WL 4397706, at *5 citing *Southland Sod Farms,* 108 F.3d at 1145. Therefore, the Court finds that Uber's claim in the statement "SAFEST RIDE ON THE ROAD — Going the Distance to Put People First" is non-actionable puffery. *Ford Motor Co. Sec. Litig.*, 381 F.3d at 570-71.

Plaintiffs also claim that the supporting paragraph expanding on the "SAFEST RIDE ON THE ROAD" statement is false or misrepresents Uber's safety standards. (Instrument No. 107-7). However, this language clearly limits the scope of Uber's claims. (Instrument No. 107-7). For instance, "the specifics vary" disclaimer makes clear to a potential consumer that the overall safety claim is relative to the consumer's location. (Instrument No. 107-7). In addition, Uber's statement that they "aim to go above and beyond local requirements to ensure your comfort and security" contains aspirational language, which prevents a reasonable consumer from relying upon it as a statement of fact. (Instrument No. 107-7). Courts have generally held that statements containing modifiers such as "aims to" are not actionable under the Lanham Act, because they are mere puffery. *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014); *see also Rochester Laborers Pension Fund v. Monsanto Co.*, 883 F. Supp. 2d 835, 890 (E.D. Mo. 2012) (holding that defendant's statement that it was "'committed to' reaching the predicted goals" was puffery). Uber limited the scope of its statement by stating that "the specifics vary", and by using aspirational language such as "aim to." (Instrument No. 107-7). Because Defendant's statements use these limiting qualifiers, statements in that section go beyond reasonable empirical verification. *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496 (5th Cir. 2000). Therefore, when viewed as a whole, the language that Plaintiff cites as false or misleading in support of the "SAFEST RIDE ON THE ROAD" statement, are not specific or concrete enough to support a claim under the Lanham Act. *Pizza Hut*, 227 F.3d at 496.

Plaintiffs also contend that Uber's statement under the "Safety" section of its website, "Wherever you are around the world, Uber is committed to connecting you to the safest ride on the road," is false or misleading and likely to deceive consumers. (Instruments No. 107 at 8; No. 107-7). The massive scope of an advertising statement about safety that extends to anywhere

"around the world" clearly goes beyond reasonable empirical verification; the statement is not capable of being adjudged true or false. *Pizza Hut*, 227 F.3d at 496 (requiring a Lanham Act claim to be a specific and measurable claim capable of being proved false or of being reasonably interpreted as a statement of objective fact). Moreover, a reasonable consumer is unlikely to rely on that statement as more than a subjective, vague, and generalized form of boasting, due to the exaggerated scale of the assertion. *Sterling Drug, Inc. v. F. T. C.*, 741 F.2d 1146 (9th Cir. 1984). Therefore, because it is not subject to empirical verification, the Court finds that this statement by Uber is non-actionable puffery. (Instrument No. 107 at 8); *Pizza Hut*, 227 F.3d at 496.

Plaintiffs also take issue with the statement "BACKGROUND CHECKS YOU CAN TRUST" arguing that it mischaracterizes Defendant's safety protocols and misleads potential consumers. (Instruments No. 107 at 9; No. 107-7). However, this blanket generalization makes no *specific* claim about Uber's background check services. A general, subjective statement that makes no specific claim is non-actionable puffery. *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, No. 15-CV-01257-JST, 2015 WL 4397706 (N.D. Cal. July 17, 2015) (granting dismissal of plaintiff's Lanham Act claims based on advertising that was mere puffery); *Zapata v. Walgreen Co.*, No. CIV.08-5416(RHK/FLN), 2009 WL 3644897, at *3 (D. Minn. Nov. 2, 2009); *Brown v. Abbott Labs., Inc.*, No. 10 C 6674, 2011 WL 4496154, at *4 fn.3 (N.D. Ill. Sept. 27, 2011) (holding that a company's representation that consumers could "count on [its product] for nutrition you can trust" was puffery). In this case, Uber's statement does not purport to make any representations about why Uber's background checks should be trusted, and a reasonable customer would not be likely to read that statement and place their trust in that claim. *See Brown*, 2011 WL 4496154, at *6. Consequently, the Court finds that this statement also falls into the category of non-actionable puffery. (Instrument No. 107 at 8); *Pizza Hut*, 227 F.3d at 496.

Plaintiffs also contend that an October 29, 2014 post on Uber's blog by former New York City Mayor Rudolph Giuliani ("Giuliani") and his company, Giuliani Partners LLC, propagated false representations about Uber's background checks. (Instrument No. 107 at 9; No. 107-9). Defendant argues that Plaintiffs have not sufficiently plead that Giuliani's statements were misleading. (Instrument No. 112 at 11). Defendant further argues that it is not liable as a matter of law for a third party opinion attributed to Giuliani, and that any statements attributed to him or his company are mere puffery. (Instrument No. 112 at 11).

The post begins with the headline, "UBER SETTING THE STANDARD FOR SAFETY IN RIDESHARING: Posted by Rudolph Giuliani." (Instrument No. 107-9). Giuliani's blog post then states, "I am pleased to say that *in my opinion and that of my safety consulting team* at Giuliani Partners and our partners at Guidepost Solutions, Uber is setting the safety standard in the ride-sourcing industry." (Instrument No. 107-9) (emphasis added). A statement of opinion attributed to a third-party simply does not carry the risk of consumer confusion that the Lanham Act is designed to prevent. *Pizza Hut*, 227 F.3d at 496; *see Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 234 (5th Cir. 2014). In this case, the blog post merely presents the opinions of Giuliani and as such they are not actionable under the Lanham Act. *Pizza Hut*, 227 F.3d at 496 ("[G]eneral statements of opinion cannot form the basis of Lanham Act liability"). The post goes on to state, "*we believe* [Uber's background check process] represents a substantial improvement over the existing safety standards in the personal hire transportation world." (Instrument No. 107-9) (emphasis added). Setting aside the probability that a statement in a blog post written by an outside third-party would be irrelevant to most people, because the statements are couched as opinion, they are not likely to deceive in the same way as a statement of purported fact. *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185

F.3d 606, 614 (6th Cir. 1999) (holding that "a Lanham Act claim must be based upon a statement of fact, not of opinion"). Therefore, the Court finds that the statements attributed to Mr. Giuliani and his firm are non-actionable under the Lanham Act as they are explicitly delineated as statements of opinion. (Instrument No. 107-9); *Pizza Hut*, 227 F.3d at 495.

Accordingly, the Court finds that Plaintiffs have failed to plead a cognizable cause of action under the Lanham Act with regard to Uber's safety and background check representations on the "Safety" section of its website or the blog post by Rudolph Giuliani, because they are non-actionable puffery. (Instruments No. 107-7, No. 107-9); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Pizza Hut*, 227 F.3d at 495.

Plaintiffs' Third Amended Complaint also points to specific statements by Uber's Head of Communications for North America, Lane Kasselman ("Kasselman"), on Uber's website as specific and measurable misrepresentations regarding the safety of the Defendant's services. (Instrument No. 107 at 8-9).

Plaintiffs submitted an April 25, 2014 blog post by Kasselman, which included the following representations:

> All Uber ridesharing and livery partners must go through a rigorous background check. The three-step screening we've developed across the United States, which includes county, federal and multi-state checks, has set a new standard. . . . We apply this comprehensive and new industry standard consistently across all Uber products, including uberX.

> Screening for safe drivers is just the beginning of our safety efforts. Our process includes prospective and regular checks of drivers' motor vehicle records to ensure ongoing safe driving. Unlike the taxi industry, our background checking process and standards are consistent across the United States and often more rigorous than what is required to become a taxi driver.

(Instrument No. 107-8). This statement, delivered by an Uber representative, was clearly intended to lead and could lead a reasonable consumer to believe that an Uber ride is objectively

and measurably safer than a taxi ride. *See L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, No. 15-CV-01257-JST, 2015 WL 4397706 (N.D. Cal. July 17, 2015); *Pizza Hut*, 227 F.3d at 501-502 (finding that even an opinion statement can take on the characteristics of a statement of fact in the context of comparative advertising). Specifically, the comparative statement, "Unlike the taxi industry, our background checking process and standards are consistent across the United States and often more rigorous than what is required to become a taxi driver," applies objective indicia to suggest that Uber has a superior background check process. (Instrument No 107-8). This statement could be a false or misleading statement of fact if found to be an inaccurate description of Uber's background checks as compared to those performed by taxi companies. Accordingly, the Court finds that Plaintiffs have adequately pleaded that Kasselman's April 25, 2014 statement on Uber's website gives rise to a cognizable claim under the Lanham Act. (Instrument No. 107-8); *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Pizza Hut*, 227 F.3d at 495.

### 2. Safe Rides Fee

Plaintiffs further allege that Uber made actionable misrepresentations on its website, where Defendant explained the basis for the "Safe Rides Fee." (Instrument No. 107 at 9-10). The website explains that the "Safe Rides Fee" is a $1 added fee on each ride that "supports continued efforts to ensure the safest possible platform for Uber riders and drivers, including an industry-leading[3] background check process." (Instruments No. 107 at 9-10; No. 107-10). Defendant argues that statements regarding the Safe Rides Fee are not actionable because: 1) they constitute puffery, and (2) the statements are not made for the purpose of influencing consumers to buy defendant's goods or services, because the consumer is sent a link to the

---

[3] According to Plaintiff's Third Amended Complaint, Uber's website has since removed the "industry-leading" language. (Instrument No. 107 at 10).

statements *after* an Uber ride. (Instrument No. 112 at 17). The Plaintiffs point to the following

representations regarding the "Safe Rides Fee" on Uber's website:

> **What Is The Safe Rides Fee?**
>
> From the beginning, we've always been committed to connecting you with the safest rides on the road. The Safe Rides Fee is a fee added to uberX fares on behalf of drivers (who may pay this fee to Uber) in cities with uberX ridesharing. This Safe Rides Fee supports continued efforts to ensure the safest possible platform for Uber riders and drivers . . . . For complete pricing transparency, you'll see this as a separate line item on every uberX receipt.

(Instruments No. 107 at 9; No. 107-10).

By stating that a specific amount of money charged will be going towards Uber

maintaining "the safest possible platform", the statement alludes to use of those fees for concrete

efforts by the company to maintain safety standards. The "Safe Rides" statement could be

perceived by consumers to be a specific and measurable assertion of Uber's financial

commitment to use this fee for safety improvements, and thereby, potentially misleading. *Pizza

Hut*, 227 F.3d at 496-97. This statement exceeds generalized boasting about its product's

superiority. *See L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, No. 15-CV-01257-JST, 2015 WL

4397706 (N.D. Cal. July 17, 2015); *Star Child II, LLC v. Lanmar Aviation, Inc.*, No. 11–cv–

01842–AWT, 2013 WL 1103915, at *4 (D.Conn. Mar. 16, 2013) (holding that defendant's

statement that it "had implemented the most stringent safety standards is outside the ken of mere

puffery" because it "is a statement of fact"); *Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133,

1140-41 (C.D. Cal. 2005) (holding that the phrase "most stringent quality control tests. . .[is]. . .a

specific factual assertion which could be established or disproved through discovery, and hence

is not mere puffery").

Defendant takes the position that the Safe Rides Fee statements are not actionable

because they were not made for the purpose of influencing consumers to buy Defendant's

services, because consumers are sent a link to that statement *after* an Uber ride terminates. (Instrument No. 112 at 17). This argument fails, however, because the webpage would have been available to consumers either before or after an Uber ride, independent of it being linked via the consumer's post-ride receipt. (Instruments No. 107 at 12; No. 107-10). Indeed, Plaintiff states that "when customers click on this hyperlink today, they are directed to an Uber-operated internet site." (Instrument No. 107 at 12). Consumers could have visited that live web-link for as long it was posted, potentially just by browsing Uber's website. Because Uber's statement is available to the consuming public at all times, Defendant's argument that Uber's Safe Rides Fee statement is non-commercial by nature under *City of Cincinnati*, is legally and factually incorrect. *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993); (Instrument No. 112 at 17).

Accordingly, the Court finds that Plaintiffs have adequately pleaded Uber's representations regarding the Safe Rides Fee give rise to a cognizable claim under the Lanham Act. (Instruments No. 107-10); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Pizza Hut*, 227 F.3d at 495.

<u>3. Analysis of Uber's Representations in the Media</u>

Plaintiffs also allege that Uber's statements quoted in online news articles were misleading to potential consumers. (Instruments No. 107 at 10-11, 18-21; No. 107-11; No.107-12; No. 107-13; 107-17; No. 107-18; No. 107-19; No. 107-20; No. 107-21; No. 107-22). Defendant argues that false-advertising claims under the Lanham Act must be based on "commercial advertising or promotion," and contends that statements contained in news articles do not qualify as commercial advertising. (Instrument No. 112 at 7); 15 U.S.C. § 1125(a)(1)(B). Defendant further argues that even if the statements are not exempt from the Lanham Act as

noncommercial speech, that the statements are mere puffery, and non-actionable for that reason. (Instrument No. 112 at 7).

The Fifth Circuit has found that Courts "should give the terms 'advertising' and 'promotion' their 'plain and ordinary meanings.'" *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1383 (5th Cir. 1996). Statements qualify as commercial advertising or promotion only if they are: "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Berg v. Symons*, 393 F. Supp. 2d 525, 558 (S.D. Tex. 2005) (citing *Seven-Up*, 86 F.3d at 1383).

### a. Uber's Statements

Plaintiffs point to a group of statements by Uber representatives to journalists contained within news articles as false or misleading. *See* (Instrument No. 107 at 10-11, 18-21). Plaintiffs further allege that Uber has "consistently repeated" misleading statements about the quality of its background checks and commitment to safety in response to a series of incidents involving Uber drivers. (Instrument No. 107 at 18-21).

First, Plaintiff cites Uber's Senior Communications Associate, Lauren Altmin ("Altmin")'s statement on an NBC Detroit affiliate's website, in a post titled, "Local 4 Defenders: Is Uber X safe?". The article on the website republished Uber's statement as follows:

> What I can tell you is that Uber takes passenger safety very seriously. We work every day to connect riders with the safest rides on the road and go above and beyond local requirements in every city we operate. Uber only partners with drivers who pass an industry-leading screening that includes a criminal background check at the county, federal and multistate level going back as far as

the law allows. We also conduct ongoing reviews of drivers' motor vehicle records during their time as an Uber partner.

For more information on what makes Uber the safest rides on the road, please see our website…

(Instruments No. 107 at 10; No. 107-11).

Plaintiffs also point to a statement by Uber's Head of Communications for North America, Kasselman, in an April 24, 2014 article on Mashable.com entitled "Faulty Background Checks May Put Uber X Passengers at Risk, Report Says." The statement quoted in the article reads:

> Uber's industry-leading background checks help connect consumers with the safest ride on the road . . . . Our driver partner background checks are more thorough than those of taxi [sic] in most cities and include county, state and federal screens going back seven years. We continue to improve and are always working hard to tighten our policies and processes to ensure that Uber remains the safest transportation option available.

(Instruments No. 107 at 10-11; No. 107-12).

In addition, Plaintiffs take issue with a quote by Kasselman in an April 24, 2014, NBCBayArea.com news article, titled "Is Uber Keeping Riders Safe?". (Instruments No. 107 at 11, No. 107-13). In the article, Kasselman states, "We're confident that every ride on the Uber platform is safer than a taxi." (Instruments No. 107 at 11, No. 107-13). Plaintiffs also allege that a similar email response from Kasselman included in a news story on NBCLosAngeles.com, was false or misleading: "We're confident that every ride on Uber is safer than a taxi." (Instruments No. 107 at 20; No. 107-22).

Plaintiffs further allege that Defendant's public responses to driver incidents were false or misleading. (Instrument No. 107 at 18-21).

Plaintiffs argue that Uber's statement on its blog after an Uber driver struck and killed a child with his vehicle in San Francisco was false or misleading. Uber's statement read: "We are committed to improving the already best in class safety and accountability of the Uber platform, for both riders and drivers." (Instrument No. 107 at 19). However, Plaintiffs failed to submit this statement into evidence, cite to it in the record in the Third Amended Complaint, or include a link to this comment on Uber's website. (Instrument No. 107 at 19). The Court therefore does not consider Plaintiffs' claim regarding this statement as it is not properly before the Court. (Instrument No. 107 at 18).

Plaintiffs also cite a written statement by Uber's Public Policy representative Andrew Noyes ("Noyes") to NBC Bay Area News regarding the driver who had struck and killed a child in San Francisco, which reads: "Uber works with Hirease to conduct stringent background checks going back seven years, which all drivers must undergo and clear to partner with Uber. This driver had a clean background check when he became an Uber partner." (Instrument No. 107-19).

Plaintiffs' complaint further points to a statement on Uber's website which was cited in an article on ChicagoTribune.com. (Instruments No. 107 at 19; No. 107-21). Uber's statement was in response to news that an Uber driver in Chicago had been convicted of a felony offense that was not picked up by Uber's background check process. (Instrument No. 107 at 19). Plaintiffs point to Uber's response statement as false or misleading: "[W]e have already taken steps to prevent this from happening again, by expanding our background check process to set new industry-leading standards … We are sincerely sorry for this error, and want to assure all riders that we are taking the necessary steps to fix it and build the safest option for consumers." (Instruments No. 107 at 19; No. 107-21).

b. Commercial Speech in News Media

In response, Uber argues that each of its statements quoted in news articles are "inextricably intertwined with the reporters' coverage" in each article, citing *Boule v. Hutton*, 328 F.3d 84, 91 (2d Cir. 2003) (affirming dismissal of a Lanham Act claim based on the defendant's statements as quoted in a news article). (Instrument No. 112 at 8-9). Defendant further argues that the alleged statements are not "commercial speech," because commercial speech is "speech which does no more than propose a commercial transaction." *City of Cincinnati v. Disc. Network, Inc.*, 507 U.S. 410, 422 (1993). Defendant asserts that *City of Cincinnati* holds that if speech does anything beyond propose a commercial transaction, it is not commercial speech. *Id.* Applying this interpretation, Defendant argues that its statements to the media are not commercial speech, and consequently, that none of its statements in the media are actionable under the Lanham Act. (Instrument No. 112 at 9).

This area of law is currently evolving. The Second Circuit recently explored the commercial and non-commercial speech dichotomy in *Ony, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490 (2d Cir. 2013). The *Ony* Court found that publication and dissemination of a scientific study that had the effect of touting a company's product is noncommercial speech and was thereby immune from the false advertising provisions of the Lanham Act. *Id.* By analyzing the scientific statements as potentially commercial statements in the context of publication in an academic journal, the Second Circuit explored established definitions of commercial speech and opened the door to broader definitions even where the disputed statement appears in a scholarly journal, or potentially, a news article. *See id.* The Fifth Circuit recently highlighted the difficulties in separating commercial from non-commercial speech, holding that the

dissemination of an article as part of a company's marketing campaign is in fact commercial speech. *Eastman Chem. Co. v. PlastiPure, Inc.*, 775 F.3d 230, 235 (5th Cir. 2014).

In light of this jurisprudence on the application of the Lanham Act to commercial speech that is published in a traditionally non-commercial manner, Defendant's citation to *City of Cincinnati* does not reflect evolving views on commercial speech and cannot be squarely applied to the facts of this case. 507 U.S. at 422. Defendant asserts that this case stands for the premise that commercial speech is: "that which does no more than propose a commercial transaction." (Instrument No. 112 at 8-9). However, the Supreme Court's ruling was more nuanced as it held that "speech that does no more than propose a commercial transaction is protected by the First Amendment." *City of Cincinnati*, 507 U.S. at 421. The Supreme Court thereby carves out a narrower definition for protected commercial speech for First Amendment analysis, than does the emerging law sculpting a broader definition of commercial speech for the purposes of Lanham Act liability. *Ony, Inc.*, 720 F.3d at 490; *Eastman Chem. Co.*, 775 F.3d at 235.

In *Eastman Chem. Co.,* the Fifth Circuit found that statements made in commercial advertisements or promotions are actionable under the Lanham Act because the "statements [were] made to consumers…" and the "statements [were] made without the necessary context." *Eastman Chem. Co.*, 775 F.3d at 236. Here, Uber's statements and press releases in the news media can still be considered actionable commercial advertising if they meet the following factors: "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Berg v. Symons*, 393 F. Supp. 2d 525, 558 (S.D. Tex. 2005).

Plaintiffs' Third Amended Complaint asserts that Uber's statements contained in news media are actionable falsities or misrepresentations under the Lanham Act. *See* (Instrument No. 107, at 10-11, 18-21). Each of the disputed statements contained in news media is issued by an Uber representative, and directly reaches out to, or addresses, Uber customers. *See Eastman Chem. Co.*, 775 F.3d at 236. For instance, the statement on Uber's website that was quoted by the ChicagoTribune.com, which provided that Uber "want[s] to assure all riders...", was a direct quote from Uber's website written by Uber to explicitly address its customer base. (Instrument No. 107-21).

The Fifth Circuit found in *Eastman Chem. Co.* that dissemination of a media article from a company's marketing campaign can qualify as commercial speech. 775 F.3d at 236. The facts of this case fall squarely in line with the holding in *Eastman Chem. Co.* Each of Uber's statements was issued by its corporate spokesperson or on Uber's own official website as part of a concerted campaign by the company in response to incidents that had been publicized in the media. Three of the statements quoted in the media were made by Uber's Head of Communications for North America, Kasselman. (No. 107-12; No. 107-13; No 107-22). Two more were by other corporate representatives: Uber's Senior Communications Associate, Lauren Altmin and Uber's Public Policy representative Andrew Noyes. (Instruments No. 107-11; No. 107-19). One statement was published on Uber's own website, and then quoted in the media. (Instruments No. 107 at 19; No. 107-21).

As a result, this Court must evaluate whether Uber's statements, which were disseminated as part of a concerted advertising campaign, should be considered commercial speech. *See Pizza Hut*, 227 F. 3d at 499. As the Fifth Circuit held in *Pizza Hut*, individual representations can be transformed as a result of their use in connection with an overall

26

advertising campaign. *Pizza Hut*, 227 F. 3d at 499. Here, these statements form a coherent theme and deliver the message that Uber is a safe service, as part of an effort by Uber "to influence consumers to buy defendant's goods or services . . . ." *Berg*, 393 F. Supp. 2d at 558. The majority of statements were issued by corporate spokespeople, and three were made by the same spokesperson, Kasselman. Defendant's argument that these statements are not commercial under *City of Cincinnati* is inapt in this context where the defendant issued a group of internally consistent statements in a manner similar to an advertising campaign. *Eastman Chem. Co., Inc.*, 775 F.3d at 236; *see Pizza Hut*, 227 F. 3d at 499; *cf. City of Cincinnati*, 507 U.S. at 422. The evidence establishes that Uber has utilized sufficiently sophisticated advertising techniques in its communications to transform traditional news media into a method of influencing consumers. As such, Uber's communications should be considered commercial speech. *See Eastman Chem. Co.*, 775 F.3d at 236; *Berg*, 393 F. Supp. 2d at 558.

Because Uber's statements as a whole are issued with the intent to influence consumer opinion, they thereby become commercial speech even though they were contained in news media. *See Eastman Chem. Co.* 775 F.3d at 236; *Pizza Hut*, 227 F. 3d at 499; *Berg*, 393 F. Supp. 2d at 558. In the modern age of hybrid advertising and advertising in social media, Courts must remain vigilant in order to separate commercial from non-commercial speech, regardless of the form in which it was disseminated. *See* Adam D. Thierer, *Advertising, Commercial Speech, and First Amendment Parity* 5 CHARLESTON L. REV., 503, 503-518 (2011). Uber has previously argued for a paradigm shift regarding its business model: asserting that it should be viewed as a software company, not a transportation company. (Instrument No. 51 at 3). Likewise, here, the Court finds that Uber's disputed statements, although released in traditional news media, require a paradigm shift, to evaluate the statements as commercial speech because their predominant

purpose is promotional and persuasive. *Eastman Chem. Co.*, 775 F.3d at 236. The evolution in business requires us to reevaluate the use of the media as advertising to understand the commercial use and significant business benefits that many companies derive from the media in today's economy. The comments issued by Uber's communication executives demonstrate a careful, uniform, and orchestrated message designed to encourage and facilitate the commercial use of its product and service. Thus, the Court finds that the disputed statements contained in media articles are commercial speech, and are potentially actionable under the Lanham Act.

In addition, Defendant disputes that Plaintiffs' claim meets the fourth prong of the commercial advertising test for the purposes of Lanham Act liability. (Instrument No. 107 at 7). The fourth prong of that test requires that the statements were "disseminated sufficiently to the relevant purchasing public." *Berg*, 393 F. Supp. 2d at 558. For the purposes of a 12(b)(6) motion to dismiss, the Court assumes Plaintiffs' facts to be true. *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). Moreover, in this case, it is not disputed that the statements contained in news media were disseminated on the internet, to the entire country, including via popular news outlets such as Mashable.com. (Instrument No. 107 at 9). The statements were available on the internet for general public consumption, and Plaintiffs have therefore adequately pleaded that the statements were "disseminated sufficiently to the relevant purchasing public." *Berg*, 393 F. Supp. 2d at 558.

For these reasons, the Court finds that Plaintiffs have adequately pleaded that Uber's statements contained in news media are commercial advertising or promotion and thereby subject to regulation under the Lanham Act.

### c. Whether Media Statements are Mere Puffery or Actionable Statements

As previously discussed herein, the Fifth Circuit has consistently held that "[a] statement of fact is one that (1) admits of being adjudged true or false in a way that (2) admits of empirical verification." *Eastman Chem. Co.*, 775 F.3d at 235 citing *Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.,* 784 F.2d 674, 679 (5th Cir. 1986). For a misrepresentation to be actionable under the Lanham Act, the statement must make a "'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" *Pizza Hut, Inc. v. Papa John's Int'l,* 227 F.3d 489, 496 (5th Cir. 2000); *see also Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1145 (9th Cir.1997) (finding that a statement of fact is one that makes "a specific and measurable advertisement claim of product superiority"). In contrast, "[b]ald assertions of superiority" and "exaggerated, blustering, and boasting statement [s]" are non-actionable opinions. *Pizza Hut,* 227 F.3d at 496-97.

The Court must therefore analyze Uber's allegedly false or misleading statements to determine whether they were specific, measurable, and capable of being proved false, or mere puffery. *Pizza Hut,* 227 F.3d at 496. Only measurable and specific statements can give rise to a claim for false advertising under the Lanham Act. *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 708 F. Supp. 2d 1209, 1243 (D.N.M. 2010).

### i. Altmin's Statement to NBC Detroit

The Court first considers the statement of Uber's Senior Communications Associate, Lauren Altmin's ("Altmin") statement on an NBC's Detroit affiliate website. The statement reads:

> What I can tell you is that Uber takes passenger safety very seriously. We work every day to connect riders with the safest rides on the road and go above and

beyond local requirements in every city we operate. Uber only partners with drivers who pass an industry-leading screening that includes a criminal background check at the county, federal and multistate level going back as far as the law allows. We also conduct ongoing reviews of drivers' motor vehicle records during their time as an Uber partner.

For more information on what makes Uber the safest rides on the road, please see our website…

(Instruments No. 107 at 10; No. 107-11).

Uber's statement asserts that they only "partner[] with drivers who pass an industry-leading screening that includes a criminal background check at the county, federal and multistate level going back as far as the law allows." (Instrument No. 107-11). This statement contains specific, measurable and concrete factual assertions capable of being adjudged true or false. *Pizza Hut*, 227 F.3d at 496. A factfinder could determine whether Uber conducts each measure of screening that they have asserted. Altmin further asserted that Uber "conduct[s]ongoing reviews of drivers' motor vehicle records during their time as an Uber partner." (Instrument No. 107-11). This claim does not have the qualities of exaggeration, blustering or boasting that the Fifth Circuit has found to be non-actionable puffery. *See, e.g., L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, No. 15-CV-01257-JST, 2015 WL 4397706 (N.D. Cal. July 17, 2015); *Star Child II, LLC v. Lanmar Aviation, Inc.*, No. 11–cv–01842–AWT, 2013 WL 1103915, at *4 (D.Conn. Mar. 16, 2013) (holding that defendant's statement that it "had implemented the most stringent safety standards is outside the ken of mere puffery" because it "is a statement of fact"); *Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133, 1140-41 (C.D. Cal. 2005) (the phrase "most stringent quality control tests" is "a specific factual assertion which could be established or disproved through discovery, and hence is not mere puffery"). Rather, Altmin's statement allows for concrete empirical verification, because Uber either conducted the background check processes they claim, or they did not. *Pizza Hut*, 227 F.3d at 496. Accordingly, the Court finds that

Plaintiffs have adequately pleaded that Altmin's statement to NBC Detroit gives rise to a cognizable claim under the Lanham Act. (Instrument No. 107-11); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Pizza Hut*, 227 F.3d at 495.

### ii. Kasselman's Statement to Mashable.com

Next, the Court examines Kasselman's statement, in an April 24, 2014 article on Mashable.com to determine whether it is actionable under the Lanham Act. Mashable.com quoted Kasselman as follows:

> Uber's industry-leading background checks help connect consumers with the safest ride on the road . . . . Our driver partner background checks are more thorough than those of taxi [sic] in most cities and include county, state and federal screens going back seven years. We continue to improve and are always working hard to tighten our policies and processes to ensure that Uber remains the safest transportation option available.

(Instruments No. 107 at 10-11; No. 107-12).

Kasselman represents that Uber's "background checks are more thorough than those of taxi in most cities and include county, state and federal screens going back seven years." (No. 107-12). This statement allows for concrete verification, as it introduces Uber's specific procedures for background checks, and makes explicit, quantifiable comparison to taxicabs. *Pizza Hut*, 227 F.3d at 496. The media context of the statement also makes it more likely that a consumer would rely on the statement. Because Uber's statement was released to news media in response to public interest on the issue of Uber's safety, it would be more likely to be viewed as objective and verifiable information by the public. This statement, delivered by an Uber representative, could lead a reasonable consumer to believe that an Uber ride is objectively and measurably safer than a taxi ride. *See L.A. Taxi Coop., Inc.*, 2015 WL 4397706, at *5.

Accordingly, the Court finds that Plaintiffs have adequately pleaded that Kasselman's statement
to Mashable.com gives rise to a cognizable claim under the Lanham Act. (Instrument No. 107-
12); *Iqbal*, 556 U.S. at 679; *Pizza Hut*, 227 F.3d at 495.

### iii. Kasselman's Statements to NBCBayArea.com and NBCLosAngeles.com

The Court evaluates Kasselman's statements that were published on NBCBayArea.com
and NBCLosAngeles.com on April 24, 2014: "We're confident that every ride on the Uber
platform is safer than a taxi," and "We're confident that every ride on Uber is safer than a taxi."
(Instruments No. 107-13; No. 107-22).

Kasselman's statements, although slightly modified by the caveat, "we're confident", still
hold out a potentially quantifiable measure of comparison between Uber rides and taxi cab rides.
While statements that a product is better than the competition are typically deemed to be non-
actionable puffery, statements as to the comparative safety of a product are specific and
measurable, and thus frequently considered actionable. *Compare Pizza Hut*, 227 F.3d at 496-97
(holding that claimed superiority of a product is vague and clearly represents an opinion, and is
therefore non-actionable puffery), with *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 708
F. Supp. 2d 1209, 1243 (D.N.M. 2010) (noting that claims that a product is "safer" is measurable
and specific, and therefore not mere puffery), and *Process Controls Int'l, Inc. v. Emerson
Process Mgmt.*, 753 F. Supp. 2d 912, 930 (E.D. Mo. 2010) (holding that representations of
relative safety are "capable of being proved false" and are thus not mere puffery).

Here, Kasselman's statements are more akin to the language from *Guidance Endodontics,
LLC*, where the Court held that specific comparisons of safety between two products was
actionable under the Lanham Act. *Guidance Endodontics, LLC*, 708 F. Supp. 2d at 1243.

Because Kasselman's statements put at issue the question of comparative safety, a reasonable consumer might believe that Uber's superior safety is a quantifiable fact derived of studies and objective analysis. Accordingly, the Court finds that Plaintiffs have adequately pleaded that Kasselman's statements to NBCBayArea.com and NBCLosAngeles.com give rise to a cognizable claim under the Lanham Act. (Instruments No. 107-13; No. 107-22); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Pizza Hut*, 227 F.3d at 495.

### iv. Noyes' Statement to NBC Bay Area News

The Court next examines the statement of Uber's public policy representative Noyes to NBC Bay Area News, following an incident where an Uber driver had struck and killed a child with his vehicle in San Francisco. Noyes stated:

> "Uber works with Hirease to conduct stringent background checks going back seven years, which all drivers must undergo and clear to partner with Uber. This driver had a clean background check when he became an Uber partner."

(Instrument No. 107-19).

Here, the statement has two parts, both objectively verifiable, and potentially relied upon as a statement of fact by a consumer. Uber first asserts they work with a specific background check firm to conduct "stringent" checks. As previously discussed, puffery is an "exaggerated, blustering, and boasting statement [s]" that is a non-actionable opinion. *Pizza Hut*, 227 F.3d at 496-97. Noyes' statements to the media are more than general terms of product superiority. *See Gedalia v. Whole Foods Mkt. Servs., Inc.*, 53 F.Supp. 3d 943, 954 (S.D. Tex. 2014). Whether or not Uber has indeed partnered with Hirease to conduct stringent tests is a question of fact that could be weighed as such by a reasonable consumer. Likewise, Noyes' assertion that the specific driver in question had a "clean background check" when he struck and killed a child in San

Francisco, is held out as an objective and verifiable claim, upon which a reasonable consumer could rely. *Eastman Chem. Co. v. Plastipure, Inc.*,775 F.3d 230, 235 (5th Cir. 2014). Accordingly, the Court finds that Plaintiffs have adequately pleaded that Noyes' statements to NBC Bay Area News give rise to a cognizable claim under the Lanham Act. (Instrument No. 107-19); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Pizza Hut*, 227 F.3d at 495.

v. Uber's statement on ChicagoTribune.com

The Court examines a statement on Uber's website, which was republished on ChicagoTribune.com. (Instruments No. 107 at 19;  No.  107-21).  The  statement  was  issued following news that an Uber driver in Chicago had been previously convicted of a felony but had not  been  screened  out  by  Uber's  background  check  process.  Uber's  statement  on ChicagoTribune.com read:

> "[W]e have already taken steps to prevent this from happening again, by expanding our background check process to set new industry-leading standards … We are sincerely sorry for this error, and want to assure all riders that we are taking the necessary steps to  fix it and build the safest option for consumers."

(Instrument No. 107-21).

This statement has two parts. First, that Uber has "taken steps to prevent this from happening again, by expanding our background check process to set new industry-leading standards", and secondly, that Uber was " sincerely sorry for this error, and want to assure all riders that we are taking the necessary steps to fix it and build the safest option for consumers." (Instrument No. 107-21).

The first part of the statement is a factual assertion, that Uber has done something concrete in response to an error in its background process, to improve its background check

process. This is a statement of fact, specific and measurable, and capable of being proven false. *Z-TEL Communs., Inc. v. SBC Communs., Inc.*, 331 F.Supp.2d 513, 555-56 (E.D. Tex. 2004).

The second part of the statement, on the other hand, includes language that is obviously not capable of verification, such as the sincerity of Uber's apology. Because that portion of that statement begins by a vague assertion of remorse by the company, it is taken out of the realm of quantifiable representation. The rest of that statement in that same clause is not given the same verifiable weight as a statement which relies fully on fact or assertions of comparative safety. *Compare Pizza Hut*, 227 F.3d at 496-97, with *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 708 F. Supp. 2d 1209, 1243 (D.N.M. 2010).

Thus, the Court holds that the first part of that statement, that Uber has "taken steps to prevent this from happening again, by expanding our background check process to set new industry-leading standards" gives rise to a cognizable claim under the Lanham Act. (Instrument No. 107-21); *Iqbal*, 556 U.S. at 679; *Pizza Hut*, 227 F.3d at 495.

The Court further finds that the second part of the statement, Uber was "sincerely sorry for this error, and want to assure all riders that we are taking the necessary steps to fix it and build the safest option for consumers," does not have the quantifiable nature of a Lanham Act representation, and therefore, does not survive Plaintiff's Motion to Dismiss. (Instrument No. 107-21); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Pizza Hut*, 227 F.3d at 495.

### 3. Summary of Findings: Motion to Dismiss Plaintiffs' Lanham Act claim

In summary, the Court makes the following findings on Defendant's motion to dismiss:

The Court finds that Plaintiffs have failed to plead a cognizable cause of action with regard to Uber's safety and background check representations on its "Safety" webpage and with regard to the statements by Rudolph Giuliani, because they are non-actionable puffery. (Instruments No. 107-7, No. 107-9). Defendant's motion to dismiss as to these statements is GRANTED. (Instrument No. 112).

The Court also finds that Plaintiffs have adequately pleaded that Kasselman's April 25, 2014 statement on Uber's website regarding background checks gives rise to a cognizable claim under the Lanham Act. (Instrument No. 107-8). The Court further finds that Uber's representations regarding the "Safe Rides" fee give rise to a cognizable claim under the Lanham Act. (Instrument No. 107-10). Defendant's motion to dismiss Plaintiffs' Lanham Act claim based on these representations is DENIED. (Instrument No. 112).

The Court finds that the second part of the statement on Uber's website, republished on ChicagoTribune.com, stating that Uber was "sincerely sorry for this error, and want[s] to assure all riders that we are taking the necessary steps to fix it and build the safest option for consumers," is not actionable under the Lanham Act. (Instrument No. 107-21). Defendant's motion to dismiss as to this statement is GRANTED. (Instrument No. 112).

The Court further finds Plaintiffs have adequately pleaded that Uber's remaining statements to the media constitute commercial advertising or promotion and give rise to a cognizable claim under the Lanham Act. *Iqbal*, 556 U.S. at 679; *Pizza Hut*, 227 F.3d at 495; (Instruments No. 107-11; No. 107-12; No. 107-13; No. 107-19; No. 107-21; No. 107-22). Defendant's motion to dismiss Plaintiffs' Lanham Act claim based on these representations is DENIED. (Instrument No. 112).

Based on the Court's findings, Defendant Uber's motion to dismiss Plaintiffs' Lanham Act claim is GRANTED in part and DENIED in part. (Instrument No. 112).

### C. Unfair Competition

Defendant next moves to dismiss Plaintiffs' Texas common law claim of unfair competition. (Instrument No. 112 at 27).

"Unfair competition under Texas law is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (citations omitted). Liability for unfair competition must be premised on some "independent substantive tort or other illegal conduct." *Schoelkopf v. Pledger*, 778 S.W.2d 897, 904-05 (Tex. App.—Dallas 1989, write denied). "Although the illegal act need not necessarily violate criminal law, it must at least be an independent tort." *Taylor Pub.*, 216 F.3d at 486.

In this case, Plaintiffs' Lanham Act claim has partially survived Defendant's Motion to Dismiss. Based on Uber's actionable representations about the safety of its services, Plaintiffs' unfair competition claims are properly premised on independent substantive torts. *See Schoelkopf*, 778 S.W.2d at 904-05. Accordingly, the Court finds that Plaintiffs have adequately pleaded a common law claim of unfair competition against Uber. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Schoelkopf*, 778 S.W.2d at 904-05.

Therefore, Defendant's motion to dismiss Plaintiffs' unfair competition claim is DENIED. (Instrument No. 112 at 27).

### III. CONCLUSION: MOTION TO DISMISS

Based on the foregoing, IT IS HEREBY ORDERED THAT Defendant's motion to dismiss is GRANTED in part and DENIED in part. (Instrument No. 112).

### IV. MOTION FOR SUMMARY JUDGMENT

Also pending before the Court is Defendant's motion for summary judgment on Plaintiffs' federal claim of false advertising under Section 43(a) of the Lanham Act, Plaintiffs' Texas common law claim of unfair competition, and Plaintiffs' request for permanent injunctive relief. (Instrument No. 129).

#### A. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir. 2006).

The "movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 322-25(1986)). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "showing — that is, pointing out to the district court — that there is an absence

of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

After the moving party has met its burden, in order to "avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992). The party opposing summary judgment cannot merely rely on the contentions contained in the pleadings. *Little*, 37 F.3d at 1075. Rather, the "party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim," *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 457, 458 (5th Cir. 1998); *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Although the court draws all reasonable inferences in the light most favorable to the nonmoving party, *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008), the nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux*, 402 F.3d at 540 (*quoting Little*, 37 F.3d at 1075). Similarly, "unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. Am's Favorite Chicken*, 110 F.3d 295, 297 (5th Cir. 1997).

In deciding a summary judgment motion, the district court does not make credibility determinations or weigh evidence. *EEOC v. Chevron Phillips*, 570 F.3d 606, 612, fn.3 (5th Cir. 2009). Nor is the Court required to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379-80 (5th Cir. 2010); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003); *Ragas,* 136 F.3d at 458; *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (it is not necessary "that the entire record in the case ... be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"). Therefore, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

### B. False Advertising under the Lanham Act

Defendant moves for summary judgment on Plaintiffs' Lanham Act false advertising claim on grounds that Plaintiffs have failed to produce evidence to support any of its claims. (Instrument No. 129). The basis for Plaintiffs' federal claim of false advertising is Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a) (West 2015). The Fifth Circuit has held that Section 43(a) provides "protection against a myriad of deceptive commercial practices, including false advertising or promotion." *Pizza Hut, Inc. v. Papa John's Int'l*, 227 F.3d 489, 494-95 (5th Cir. 2000).

Defendant argues that Plaintiffs' Lanham Act claim should be dismissed because Plaintiffs have failed to introduce evidence on every element of their claim. (Instrument No. 129 at 4). To succeed on a claim for false advertising under the Lanham Act, a plaintiff must prove:

(1) A false or misleading statement of fact about a product;

(2) Such statement either deceived or had the capacity to deceive a substantial segment of potential consumers;

(3) The deception was material, in that it is likely to influence the consumer's purchasing decision;

(4) The product is in interstate commerce; and

(5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

*IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002). "The failure to prove the existence of any element of the prima facie case is fatal to the plaintiff's claim." *Pizza Hut*, 227 F.3d at 495 (citations omitted).

There are two types of actionable statements under the Lanham Act: those that are literally false and those that, although not literally false, are likely to mislead and confuse consumers. *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000) (citing *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1387 (5th Cir. 1996)). A party who argues that a certain statement was merely misleading "must also introduce evidence of the statement's impact on consumers, referred to as materiality." *Pizza Hut*, 227 F.3d at 495. However, "when the statements . . . are shown to be literally false, the plaintiff need not introduce evidence on the issue of the impact the statements had on consumers . . . . [i]n such a circumstance, the court will assume that the statements actually misled consumers." *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001) (citing *Pizza Hut*, 227 F.3d at 497).

Plaintiffs allege that Defendant disseminated false statements with regard to the safety of Uber's services and the comparative superiority of its background checks. (Instrument No. 107 at 7-21). The Court previously found that Plaintiffs adequately pleaded that many of Uber's statements could be false or misleading to consumers. (Instrument No. 107 at 7-21). As

Plaintiffs' Lanham Act claim survived the motion to dismiss stage, Plaintiffs' remaining claims are now subject to analysis at the summary judgment stage.

Uber urges the Court to grant summary judgment on Plaintiffs' Lanham Act claim on the grounds that Plaintiffs failed to produce evidence that Uber's statements were either literally false or misleading. (Instrument No. 129 at 7). Uber argues that Plaintiffs have no evidence that any of the statements at issue caused harm to Plaintiffs. (Instrument No. 129 at 8). Uber further alleges that Plaintiffs have failed to establish that Uber's advertised services travelled in interstate commerce. (Instrument No. 129 at 8).

Plaintiffs contend that Uber's statements on its website and to the media are literally false. (Instrument No. 143 at 3). Plaintiffs argue that Uber claims that they use "industry-leading" background checks, but do not employ fingerprinting, which makes Uber's claims of superiority literally false. (Instrument No. 143 at 3). Plaintiffs argue that fingerprinting is an "essential standard" of a thorough background check. (Instrument No. 143 at 3). Plaintiffs further argue that because Uber's statements were literally false, that harm can be presumed under the Lanham Act. (Instrument No. 143 at 4). Plaintiffs argue in the alternative that even if Plaintiffs' statements are not literally false, they are ambiguous and very likely to confuse and mislead consumers. (Instrument No. 117 at 20).

### 1. False or Misleading Statements

To succeed on a claim for false advertising under the Lanham Act, a plaintiff must prove that the defendant made a false or misleading statement of fact. 15 U.S.C. § 1125(a). The standard for proving literal falsity is rigorous. *Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1185 (8th Cir.2011). In order to be literally false, as opposed to misleading, a claim must be "false on its face." *Oreck Direct, LLC v. Dyson, Inc.*, 544 F. Supp. 2d 502, 512 (E.D. La. 2008)

(quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007)). Literal falsity under the Lanham Act means that the statement is untruthful, deceitful, or untrue. BLACK'S LAW DICTIONARY 720 (10th ed. 2014); *Pizza Hut, Inc. v. Papa John's Int'l*, 227 F.3d 489, 494-95 (5th Cir. 2000). To determine literal falsity, the initial inquiry requires a determination of what the statements at issue actually say. *Riddell, Inc. v. Schutt Sports, Inc.*, 724 F. Supp. 2d 963, 975 (W.D. Wis. 2010). Only an unambiguous message can be literally false; if the language at issue is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false. *Id.*

The Fifth Circuit has held that "when construing the allegedly false or misleading statement to determine if it is actionable under Section 43(a), the statement must be viewed in light of the overall context in which it appears." *Pizza Hut*, 227 F.3d at 496. As the Ninth Circuit explained in *Southland Sod*, "the court must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (quoting *Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.*, 580 F. Supp. 634 (S.D.N.Y. 1984). Federal Courts have held that allegedly false statements should be viewed as a whole. *FLIR Sys., Inc. v. Sierra Media, Inc.*, 903 F. Supp. 2d 1120, 1129 (D. Or. 2012); *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 157 (2d Cir. 2007) quoting *FTC v. Sterling Drug, Inc.*, 317 F.2d 669, 674 (2d Cir. 1963) ("The entire mosaic should be viewed rather than each tile separately.").

Uber contends that its statements are not literally false or misleading, because none can be proven false by empirical verification. (Instruments No. 129 at 7; No. 150 at 5). Plaintiffs argue that the determination of the falsity of the statements at issue raises a disputed issue of material fact and, as such, must be determined by the trier of fact. (Instrument No. 143 at 14).

Therefore, Plaintiffs argue that the Court should refrain from determining literal falsity of the statements, and instead reserve such determinations for the jury after a full trial on the merits. (Instrument No. 143 at 14).

In examining the totality of Uber's statements, the Court finds instructive the Fifth Circuit's holding in *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 234 (5th Cir. 2014). In that case, the Fifth Circuit affirmed the District Court's use of an amalgamated statement for jury consideration of the overall false or misleading nature of Defendant's eighteen separate statements. *Eastman Chem. Co.*, 775 F.3d at 236. In light of this guidance, the Court will examine Defendant's statements as a whole. Federal Courts regularly evaluate the overall context of allegedly false or deceptive messages in claims under Section 43(a) of the Lanham Act. *See, e.g., American Home Products Corp. v. Abbott Laboratories,* 522 F. Supp. 1035, 1040-45 (S.D.N.Y. 1981) (holding that an advertisement's literal meaning must be determined in light of context in which challenged statements made and defendant's intent in making them); *Plough, Inc. v. Johnson & Johnson Baby Prods. Co.,* 532 F. Supp. 714, 717-18 (D.Del. 1982) (in light of the context and the defendant's intent, the literal meaning of the word "sunscreen" was limited to products sought by consumers concerned with the health hazards of sun exposure; therefore, defendant's advertisement claiming that its product was the "Number One Selling Sunscreen" was not facially false).

Plaintiffs have introduced competent expert testimony and official reports that raise genuine issues of material fact regarding whether Uber's statements were either literally false or misleading. (Instrument No. 129 at 7). Here, Plaintiffs' background check expert, the former Deputy Director of the Department of Homeland Security, Alonzo Pena ("Pena") swore in his affidavit that background checks employing fingerprinting are inherently superior to background

checks that do not employ fingerprinting. (Instrument No. 145 at 1-5). This assertion, if found to be true, would directly attack the veracity of Uber's promotion of its safety and background checks as a whole, because no statement of relative safety or of the superiority of Uber's background checks could be true if a trier of fact found that Uber employs fundamentally inferior background check and safety practices.

Plaintiffs have raised disputed fact issues that Uber's assurances regarding the superiority of its background checks and safety practices must be false or misleading because Uber does not use fingerprint identification in its background check process. (Instrument No. 107 at 13, ¶46). Plaintiffs' evidence supports a finding that the question of whether Uber's safety standards comport with its statements is a disputed issue of material fact. The Pena affidavit suggests that taxi cab background checks that use fingerprints are inherently superior to Uber's background checks. (Instrument No. 145 at 1-5). Plaintiffs further cite to studies delineating inferior practices by Uber's background check service, Hirease. (Instrument 144, with attached Exhibits 1 - 27). Plaintiffs submitted a September 21, 2015 report by the Houston's Administration and Regulatory Affairs Department suggesting that Uber's background check process fails to search across all states and counties, and leaves large gaps where criminal background information would not be detected. (Instrument No. 144 at 16-18).  Moreover, the City of Houston's report found that the allegedly national background search conducted by Hirease, Uber's background check provider, does not cover Delaware, Massachusetts, South Dakota or Wyoming. (Instrument No. 144 at 16).

Plaintiffs have presented summary judgment evidence challenging the accuracy of Uber's overall message that Uber is the "safest possible platform" and that it employs rigorous background checks "often more rigorous than what is required to become a taxi driver." *See*

45

(Instruments No. 107-8; No. 107-10). The evidence presented requires a fact-intensive inquiry regarding the veracity of Defendant's statements as a whole, and clearly leaves a disputed issue of material fact that must be determined by the jury. *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1139, 1146 (9th Cir. 1997) (reversing summary judgment where a reasonable juror could conclude advertisements were literally false). The literal falsity or misleading nature of a statement is a question of fact, and summary judgment should not be granted where a reasonable jury could determine the veracity of the statements at issue. *Eastman Chemical Co.,* 775 F.3d at 238 (finding that it was a question for jury whether defendant's statements were affirmatively false in Lanham Act claim); *Mission Pharmacal Co. v. Virtus Pharmaceuticals,* LLC, 23 F. Supp.3d 748, 769 (W.D.Tex. 2014) (finding a genuine issue of material fact whether a competitor made false or misleading statements about its product); *Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 157 (2d Cir. 2007)*; Southland Sod Farms,* 108 F.3d at 1146.

Therefore, the Court finds that a disputed issue of material fact remains as to whether Uber's statements are literally false or misleading. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

### 2. Impact on Consumers/Materiality

If a trier of fact were to determine that Uber's statements were false, then "the plaintiff need not introduce evidence on the issue of the impact the statements had on consumers . . . . [i]n such a circumstance, the court will assume that the statements actually misled consumers." *Logan v. Burgers Ozark Country Cured Hams Inc.,* 263 F.3d 447, 462 (5th Cir. 2001) (citing *Pizza Hut,* 227 F.3d at 497); *see also Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 157 (2d Cir.2007) ("When an advertisement is shown to be literally or facially false, consumer

deception is presumed, and the court may grant relief without reference to the advertisement's actual impact on the buying public.").

Because the Court has found an issue of material fact with regard to whether Uber's statements are literally false or misleading in light of the evidence submitted regarding Uber's background check and safety protocols, the Court cannot thereby determine at this time whether Plaintiffs have adequately demonstrated the materiality of Uber's representations. *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001). A determination of falsity would eliminate the Plaintiffs' burden to demonstrate the materiality of Uber's statements. *Logan*, 263 F.3d at 462. Therefore, the Court must allow for a determination of the nature of Uber's statements before reaching the question of whether Plaintiffs' should be subject to the increased burden of adducing evidence of materiality. *See Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 455-56 (5th Cir. 2005).

Accordingly, the Court finds that the question of the impact of Uber's statements on consumers, and the materiality of Uber's statements, remains a disputed fact issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### 3. Whether Uber's Product is in Interstate Commerce

The Lanham Act requires that the allegedly false or misleading statements enter into or have an effect on interstate commerce. *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 588 (5th Cir. 2015); *King v. Ames*, 179 F.3d 370, 373-74 (5th Cir. 1999) ("Persons bringing an action pursuant to this provision must demonstrate that ... the defendants caused their products to enter interstate commerce"). Defendant argues that Plaintiffs have failed to establish that Uber's advertised goods or services "travelled in interstate commerce." (Instrument No. 129 at 19).

Plaintiffs have submitted evidence establishing that there is no disputed issue of fact regarding the interstate nexus of Uber's business. Plaintiffs' submitted the affidavit of John Bouloubasis ("Bouloubasis"), the President of Greater San Antonio Transportation Company and the Chief Operating Officer of Texas Taxi, Inc., the parent company of Greater Houston Transportation Company, Fiesta Cab Company, and other cab companies. (Instrument No. 144). He is familiar with Uber's business as a result of his work as a direct competitor in Houston and San Antonio. Bouloubasis states that Uber "use(s) smartphones, mobile communications, credit card processing transactions, bank to bank payments, and transfers of funds to receive payments from customers and provide payments to their employees and/or drivers." (Instrument No. 144, at 2, at ¶6). Plaintiffs also submitted evidence demonstrating Uber's allegedly false or misleading statements were published on the internet, reaching across state lines to a national and international audience, including publication on Mashable.com, NBC Detroit, NBCBayArea.com, and NBCLosAngeles.com. Thus, Plaintiffs have presented evidence which establishes that Uber operates in interstate commerce and that the allegedly false or misleading statements enter into or have an effect on interstate commerce. *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 588 (5th Cir. 2015); *King v. Ames*, 179 F.3d 370, 373–74 (5th Cir.1999); 15 U.S.C. § 1125(a) (West 2015).

Uber also submitted evidence that its business involves interstate commerce, by submitting evidence of its own interstate background checking process. *See* (Instrument No. 146). The background check reports clearly show that Uber's background checks operate to detect some criminal records from different states, and as they have frequently asserted, these background checks are an integral part of its business. (Instrument No. 146). It is inherently contradictory for Uber to tout the interstate and international nature of its business, only to then

disclaim the interstate nature of the business for the purposes of disclaiming liability under the Lanham Act. (Instrument No. 107-7) (stating "what we're doing in the U.S. is an example of our standards around the world."). Moreover, it is uncontroverted that Uber exists under the laws of the State of Delaware, with its principal place of business located in San Francisco, California, with owner-operators and customers throughout the United States and the world. *See* (Instruments No. 107 at 4; No. 112).

After considering the full record, this Court finds as a matter of law that Uber's advertised goods and services are in interstate commerce and that the allegedly false or misleading statements at issue entered into interstate commerce such as to satisfy the interstate commerce requirement of Section 43(a) of the Lanham Act. *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 588 (5th Cir. 2015); *King v. Ames,* 179 F.3d 370, 373-74 (5th Cir.1999); 15 U.S.C. § 1125(a) (West 2015).

4. Whether Plaintiffs Have Been Injured, or are Likely to be Injured, by Uber's Statements

Defendant argues that Plaintiffs have failed to demonstrate that they have been or are likely to be injured as a result of Defendant's statements. (Instrument No. 129 at 23). Plaintiffs argue that the injury element should be presumed where Defendant has made false or misleading statements. (Instrument No. 143 at 19).

Federal Courts have routinely held that injury should be presumed when a Lanham Act claim involves false or misleading comparative advertisements. *Healthpoint Ltd. v. Stratus Pharm., Inc.*, 273 F.Supp.2d 871, 885 (W.D. Tex. 2001); *Time Warner Cable, Inc. v. DirectTV, Inc.*, 497 F.3d 144 (2nd Cir. 2007); *Porous Media Corporation v. Pall Corporation* 110 F.3d 1329 (8th Cir. 1997); *McNeilab, Inc. v. American Home Prods. Co.*, 848 F.2d 34 (2nd Cir. 1988). Because the Court has found that the question of the literal falsity or allegedly misleading nature

of Uber's representations is a question of fact to be determined at trial, Plaintiffs' argument about whether injury should be presumed should be addressed after the trier of fact addresses that threshold question. The determinations of the trier of fact regarding the nature of Uber's statements directly impact the presumption of injury question. Therefore, the Court finds that there are genuine issues of material fact remaining regarding injury on the basis of Uber's statements. *See IQ Products*, 305 F.3d at 376.

In sum, there remain genuine issues of material fact regarding Plaintiffs' claim of false advertising under the Lanham Act. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).

Accordingly, Uber's motion for summary judgment on Plaintiffs' claim of false advertising under the Lanham Act is DENIED. (Instrument No. 129).

### C. Unfair Competition

Defendant next moves for summary judgment on Plaintiffs' Texas common law claim of unfair competition. (Instrument No. 129).

"Unfair competition under Texas law is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (citations omitted). Liability for unfair competition must be premised on some "independent substantive tort or other illegal conduct." *Schoelkopf v. Pledger*, 778 S.W.2d 897, 904-05 (Tex. App.--Dallas 1989, writ denied). "Although the illegal act need not necessarily violate criminal law, it must at least be an independent tort." *Taylor Pub.*, 216 F.3d at 486.

Because Plaintiffs' unfair competition claim is premised on the Court's findings on Plaintiffs' Lanham Act claim, which remains subject to determination at trial, the Court finds

that Defendant's Motion for Summary Judgment on Plaintiffs' unfair competition claim must be denied. *Celotex*, 477 U.S. at 325; *Schoelkopf*, 778 S.W.2d at 904-05.

Accordingly, Uber's motion for summary judgment on Plaintiffs' unfair competition claim is DENIED. (Instrument No. 129).

### D. Permanent Injunction

Defendant also moves for summary judgment on Plaintiffs' request for a permanent injunction. (Instrument No. 129 at 25). Plaintiffs seek to enjoin Defendant from further misrepresenting the safety of Uber. (Instrument No. 107 at 40). Defendant opposes on the basis that Plaintiffs have not demonstrated that they will suffer irreparable harm if the injunction is not granted. (Instrument No. 129 at 25).

15 U.S.C. § 1116 authorizes district courts to grant permanent injunctions, "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a) (West 2015). To obtain an injunction, a plaintiff must establish:

(1) That it has suffered an irreparable injury;

(2) That remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

(3) That, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) That the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Whether to grant an injunction is within the sound discretion of the trial court. *Frostie Co. v. Dr. Pepper Co.*, 361 F.2d 124, 126-27 (5th Cir. 1966).

In the Court's March 10, 2015 Order on Defendant's previous motion to dismiss, the Court found that that Plaintiffs had adequately pleaded the requirements for permanent injunctive relief at the motion to dismiss stage. (Instrument No. 95 at 37). *See eBay*, 547 U.S. at 391;

*Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626-27 (5th Cir. 2013); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). This Court reserved the question of whether irreparable injury could be proved in Plaintiffs' surviving Lanham Act claims based on alleged comparative misrepresentations by Defendant. (Instrument No. 95 at 37). Plaintiffs' amended complaint reiterates their claim for injunctive relief for a full and permanent injunction against Defendant enjoining them forever from the false advertising practices that they have alleged. (Instrument No. 107 at 40). Defendant argues that there is no indication that forcing Uber to modify statements on its website regarding safety or background checks would prevent any alleged harm Plaintiffs might suffer. (Instrument No. 129 at 25).

Despite the Court's prior order reserving the question of whether irreparable harm could be presumed based on Defendant's alleged comparative misrepresentations, Defendant argues that "the Court has already determined that Plaintiffs failed to establish that they would suffer irreparable harm absent an injunction." (Instruments No. 95; No. 129 at 25). This argument completely mischaracterizes the Court's prior order. The Court previously found that Plaintiffs had not pleaded irreparable injury, but also stated that the Fifth Circuit allows for a presumption of irreparable injury when a plaintiff shows a "likelihood of confusion" for the purposes of a Lanham Act claim.  (Instrument No. 95 at 37); *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626-27 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 88 (2013).

In order to obtain permanent injunctive relief under Section 43(a) of the Lanham Act, a plaintiff must demonstrate that a commercial advertisement or promotion is either literally false or that the advertisement is likely to mislead and confuse consumers. *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996). This Court has found that the question of the literal falsity, or allegedly misleading nature, of Uber's representations is a question of fact to be

determined at trial. As a result, the question of whether irreparable harm should be presumed on the basis of Defendant's representations, depends upon the determinations of the trier of fact regarding the nature of Uber's statements. *See Abraham*, 708 F.3d at 626-27. Because the Plaintiffs' claim for injunctive relief depends upon on a contested issue of material fact, Defendant's Motion for Summary Judgment on Plaintiff's request for injunctive relief is DENIED. (Instrument No. 129).

## V. CONCLUSION: MOTION FOR SUMMARY JUDGMENT

Based on the foregoing, IT IS HEREBY ORDERED THAT Defendant Uber's motion for summary judgment is DENIED. (Instrument No. 129).

## VI. FINAL CONCLUSION

Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED in part**. (**Instrument No. 112**). Defendant's Motion for Summary Judgment is **DENIED**. (**Instrument No. 129**).

The Clerk shall enter this Order and provide a copy to all parties.

SIGNED on this the 18th day of December, 2015.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**